**THIS PLAN IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THE PLAN IS SUBJECT TO CHANGE. THIS PLAN IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| WEATHERLY OIL & GAS, LLC, | § | Case No. 19-31087 (MI) |
| | § | |
| Debtor. | § | |
| | § | |

**AMENDED PLAN OF LIQUIDATION OF WEATHERLY OIL & GAS, LLC**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Matthew D. Cavenaugh (TX Bar No. 24062656)
Elizabeth C. Freeman (TX Bar No. 24009222)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
Email: efreeman@jw.com
Email: kpeguero@jw.com
Email: vpolnick@jw.com

**COUNSEL FOR THE DEBTOR AND**
**DEBTOR IN POSSESSION**

**TABLE OF CONTENTS**

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME .................. 1

    A.    Defined Terms ........................................................................................................... 1

    B.    Rules of Interpretation and Computation of Time ................................................. 12

        1.    Rules of Interpretation ................................................................................ 12

        2.    Computation of Time .................................................................................. 12

        3.    Controlling Document ................................................................................. 12

ARTICLE II CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..................................... 12

    A.    Unclassified Claims ............................................................................................... 12

        1.    Payment of Administrative Expense Claims .............................................. 12

        2.    Payment of Priority Tax Claims ................................................................. 14

        3.    Payment of DIP Facility Claims ................................................................. 15

    B.    Classification of Claims and Interests .................................................................... 15

        1.    General ........................................................................................................ 15

    C.    Treatment of Claims and Interests ......................................................................... 15

        1.    Priority Claims (Class 1) ............................................................................ 15

        2.    Other Secured Claims (Class 2) ................................................................. 16

        3.    Secured Parties Claims (Class 3) ............................................................... 16

        4.    Unsecured Claims (Class 4) ....................................................................... 16

        5.    State Environmental Claims (Class 5) ........................................................ 17

        6.    Intercompany Claims (Class 6) .................................................................. 17

        7.    Equity Interests in the Debtor (Class 7) ..................................................... 17

    D.    Reservation of Rights Regarding Claims ............................................................... 18

    E.    Postpetition Interest on Claims .............................................................................. 18

    F.    Insurance ................................................................................................................ 18

    G.    Confirmation Without Acceptance by All Impaired Classes .................................. 18

    H.    Class Without Voting Claim Holders ...................................................................... 18

ARTICLE III MEANS FOR IMPLEMENTATION OF THE PLAN .................................................................. 18

    A.    Corporate Existence ............................................................................................... 18

    B.    Dissolution Transactions ........................................................................................ 18

        1.    Dissolution Transactions Generally ........................................................... 18

        2.    Recourse Solely to Liquidation Trust Assets ............................................. 19

        3.    Creditor Compromise ................................................................................. 19

    C.    Liquidation Trust ................................................................................................... 19

        1.    Liquidation Trust Generally ....................................................................... 19

        2.    Funding of and Transfer of Assets Into the Liquidation Trust .................... 20

3.      Liquidation Trust Agreement.......................................................................... 21

4.      Reports to be Filed by the Liquidation Trustee............................................. 21

5.      Fees and Expenses of the Liquidation Trust ................................................. 21

6.      Indemnification................................................................................................ 21

7.      Tax Treatment; No Successor in Interest ..................................................... 21

8.      Settlement of Claims ..................................................................................... 22

9.      Sales of Assets by Liquidation Trust ............................................................ 23

10.     Abandonment of Assets by Liquidation Trust .............................................. 23

D.      Corporate Governance; Directors and Officers............................................................ 23

1.      Constituent Documents of the Debtor............................................................ 23

2.      Directors and Officers .................................................................................. 23

3.      Corporate Action .......................................................................................... 23

E.      No Revesting of Assets .............................................................................................. 23

F.      Creation and Maintenance of Trust Accounts ............................................................ 24

1.      Creation of Trust Accounts ........................................................................... 24

2.      Additional Funding of Trust Accounts .......................................................... 24

3.      Closure of Trust Accounts ............................................................................ 24

G.      Preservation of Causes of Action ............................................................................... 24

H.      Cancellation and Surrender of Instruments, Securities and Other Documentation ...... 24

I.      Release of Liens ........................................................................................................ 24

J.      Effectuating Documents; Further Transactions........................................................... 25

K.      Substitution in Pending Legal Actions ....................................................................... 25

ARTICLE IV      TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................... 25

A.      Assumption and Rejection of Executory Contracts and Unexpired Leases ................. 25

B.      Cure of Defaults for Executory Contracts and Unexpired Leases Assumed by the
        Liquidation Trust ....................................................................................................... 26

C.      Claims Based on Rejection of Executory Contracts and Unexpired Leases ................ 26

D.      Contracts and Leases Entered Into After the Petition Date .......................................... 27

E.      Insurance Policies ...................................................................................................... 27

F.      Reservation of Rights................................................................................................. 27

ARTICLE V PROVISIONS REGARDING DISTRIBUTIONS................................................................ 28

A.      Distributions for Claims Allowed as of the Effective Date .......................................... 28

B.      Method of Distributions to Holders of Claims ............................................................ 28

C.      Disbursing Agent ....................................................................................................... 28

1.      Powers of the Disbursing Agent ................................................................... 28

2.      Expenses Incurred on or After the Effective Date ........................................ 28

3.      No Liability.................................................................................................... 28

|   | D. | Disputed Claims Reserves | 28 |
|---|---|---|---|
|   |   | 1. Establishment of Disputed Claims Reserves | 28 |
|   |   | 2. Maintenance of Disputed Claims Reserves | 29 |
|   | E. | Investment of Trust Accounts | 29 |
|   | F. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 29 |
|   |   | 1. Delivery of Distributions | 29 |
|   |   | 2. Delivery of Distributions on Secured Parties Claims and Secured Parties Deficiency Claims | 29 |
|   |   | 3. Undeliverable Distributions Held by Disbursing Agents | 29 |
|   | G. | Distribution Record Date | 30 |
|   | H. | *De Minimis* Distributions | 30 |
|   | I. | Compliance with Tax Requirements | 30 |
|   | J. | Manner of Payment Under the Plan | 31 |
|   | K. | Time Bar to Cash Payments | 31 |
|   | L. | Setoffs | 31 |
|   | M. | Allocation Between Principal and Accrued Interest | 31 |
|   | N. | Distributions to Holders of Disputed Claims | 32 |
|   | O. | Claims Paid or Payable by Third Parties | 32 |
|   |   | 1. Claims Paid by Third Parties | 32 |
|   |   | 2. Claims Payable by Insurance | 32 |
| ARTICLE VI | | DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS | 32 |
|   | A. | Allowance of Claims | 32 |
|   | B. | Prosecution of Objections to Claims | 33 |
|   |   | 1. Authority to Prosecute and Settle Claims | 33 |
|   |   | 2. Pending Objections | 33 |
|   |   | 3. Application of Bankruptcy Rules | 33 |
|   |   | 4. Authority to Amend Schedules | 33 |
|   | C. | Estimation of Claims | 33 |
|   | D. | Claims Subject to Pending Actions | 33 |
|   | E. | Offer of Judgment | 34 |
| ARTICLE VII | | CONFIRMATION OF THE PLAN | 34 |
|   | A. | Conditions Precedent to Confirmation | 34 |
|   | B. | Conditions Precedent to the Effective Date | 34 |
|   | C. | Waiver of Conditions to Confirmation or the Effective Date | 34 |
|   | D. | Notice of Occurrence of Effective Date | 34 |
|   | E. | Effect of Nonoccurrence of Conditions to the Effective Date | 35 |
|   | F. | Nonconsensual Confirmation | 35 |

|       | G. | Effect of Confirmation | 35 |
|       |    | 1. Dissolution of Official Committees | 35 |
|       |    | 2. Comprehensive Settlement of Claims and Controversies | 35 |
|       |    | 3. Exculpation | 35 |
|       |    | 4. Releases | 36 |
|       |    | 5. Injunction | 37 |
|       | H. | Votes Solicited in Good Faith | 38 |
|       | I. | New MSA and OpCo Incentive Program | 38 |
| ARTICLE VIII | | RETENTION OF JURISDICTION | 38 |
| ARTICLE IX | | MISCELLANEOUS PROVISIONS | 40 |
|       | A. | Modification of the Plan | 40 |
|       | B. | Revocation of the Plan or Non-Occurrence of the Confirmation Date or Effective Date | 40 |
|       | C. | Reservation of Rights Regarding Certain Matters | 40 |
|       | D. | Exhibits and Schedules | 40 |
|       | E. | Severability | 40 |
|       | F. | Successors and Assigns | 40 |
|       | G. | Service of Documents | 41 |
|       |    | 1. The Debtor | 41 |
|       |    | 2. The Prepetition Agent and Secured Lenders | 41 |
|       |    | 3. WET | 41 |
|       |    | 4. The Creditors' Committee | 42 |
| ARTICLE X | | CONFIRMATION REQUEST | 42 |

## <u>TABLE OF EXHIBITS</u>

Exhibit A        Schedule of Other Secured Claims

**INTRODUCTION**

Weatherly Oil & Gas, LLC (the "Debtor"), a Delaware limited liability company, as debtor and debtor in possession in the above-captioned case proposes the following plan of liquidation (this "Plan") for the resolution of the outstanding claims against and equity interests in the Debtor.  The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.  Reference is made to the *Disclosure Statement with Respect to Plan of Liquidation of Weatherly Oil & Gas, LLC Pursuant to Chapter 11 of the Bankruptcy Code*, distributed contemporaneously with this Plan, for a discussion of the Debtor's history, business, results of operations, historical financial information, projections and properties and for a summary and analysis of this Plan.  Other agreements and documents supplement this Plan and have been or will be Filed with the Bankruptcy Court.  These supplemental agreements and documents are referenced in this Plan and the Disclosure Statement and will be available for review.

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME**

**A.     Defined Terms**

Capitalized terms used in this Plan have the meanings set forth in Section I.A.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.     "503(b)(9) Claim" means a Claim pursuant to section 503(b)(9) of the Bankruptcy Code for the value of goods received by the Debtor in the 20 days immediately prior to the Petition Date and sold to the Debtor in the ordinary course of the Debtor's business.

2.     "Administrative Expense Claim" means a Claim against the Debtor or its Estate for costs or expenses of administration of the Estate pursuant to sections 364(c)(1), 503(b), 503(c), 507(b) or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 330(a) or 331 of the Bankruptcy Code, including Professional Fee Claims; (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930; and (d) 503(b)(9) Claims.

3.     "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.  With respect to any Person that is not the Debtor, the term "Affiliate" shall apply to such Person as if the Person were the Debtor.

4.     "Allowed" means with respect to Claims:  (a) any Claim (i) for which a proof of Claim has been timely Filed on or before the applicable Bar Date (or for which a proof of Claim is not required to be Filed pursuant to the Bankruptcy Code or a Final Order) or (ii) that is identified in the Schedules as of the Effective Date as not disputed, not contingent and not unliquidated, and for which no proof of Claim has been timely Filed; provided that, in each case, any such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been Filed or such an objection has been Filed and the Claim thereafter has been Allowed by a Final Order; or (b) any Claim expressly deemed allowed by the Plan or allowed by a Final Order of the Bankruptcy Court (including pursuant to any stipulation or settlement agreement approved by the Bankruptcy Court).  Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered Allowed Claims.

5.     "Asset Sale Funding" means the $5.98 million allotted from the Group 1 Sale Proceeds, and to the extent necessary, the Group 2 Sale Proceeds, to fund the Chapter 11 Case in accordance with and subject to the DIP Budget, and any modifications made under the terms of the Final Financing Order.

6.     "Asset Sales" means the sale of any Assets.

7.      "Assets" means all of the Debtor's property, rights and interest that are property of the Estate pursuant to section 541 of the Bankruptcy Code.

8.      "Avoidance Actions" means, collectively and individually, preference actions, fraudulent conveyance actions and other claims or causes of action under sections 510, 542, 544, 547, 548, 549 and 550 of the Bankruptcy Code and other similar state law claims and causes of action.

9.      "Ballot" means the applicable form or forms of ballot(s) distributed to each holder of an impaired Claim entitled to vote on the Plan on which the holder indicates either acceptance or rejection of the Plan and (when applicable) any election for treatment of such Claim under the Plan.

10.      "Bankruptcy Code" means title 11 of the United States Code, as now in effect or hereafter amended, as applicable to the Chapter 11 Case.

11.      "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the District Court.

12.      "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

13.      "Bar Date" means the applicable bar date by which a proof of Claim or request for payment of administrative expenses must be, or must have been, Filed, as established by an order of the Bankruptcy Court, including the Confirmation Order.

14.      "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

15.      "Cargill" means Cargill, Incorporated.

16.      "Cargill Claims" means any claims evidenced by, arising under, or in connection with the ISDA Master Agreement, which shall be allowed in the amount of $3,468,756.00.

17.      "Cash" means legal tender of the United States of America and equivalents thereof.

18.      "Causes of Action" means any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, "Cause of Action" includes:  (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate or disallow Claims or Interests; (d) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any state or foreign law fraudulent transfer or similar claim.

19.      "Chapter 11 Case" means the bankruptcy case commenced in the Bankruptcy Court by the Debtor under chapter 11 of the Bankruptcy Code and administered under the caption In re Weatherly Oil & Gas, LLC, 19-31087 (MI) (Bankr. S.D. Tex.).

20.      "Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.

21.     "Claims and Noticing Agent" means Epiq Corporate Restructuring, LLC in its capacity as Bankruptcy Court-appointed claims, noticing, and solicitation agent in the Chapter 11 Case.

22.     "Class" means a class of Claims, as described in Article II of this Plan.

23.     "Company Claims" means all Causes of Action assigned to the Liquidation Trust.  For the avoidance of doubt, the Company Claims shall not include any Claim or Cause of Action against WET or its Affiliates released pursuant to the WET Settlement Order.

24.     "Company Claims Account" means the sub-account created by the Liquidation Trustee pursuant to Liquidation Trust Agreement.

25.     "Confirmation" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Case.

26.     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

27.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court on Confirmation of this Plan, as such hearing may be continued.

28.     "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code and approving the adequacy of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code.

29.     "Credit Agreement" means that certain Term Loan Agreement, dated September 18, 2017 by and between the Debtor, as borrower, and AG Energy Funding, LLC, AB Energy Opportunity Fund, L.P., and AB EOF Weatherly Co-Invest Fund, L.P., as lenders, and Angelo, Gordon Energy Servicer, LLC, as administrative agent, as may be amended, supplemented, or otherwise modified from time to time.

30.     "Creditor Compromise" means the settlement and related matters contemplated by the June 27, 2019 stipulation entered into between the Official Committee of Unsecured Creditors, the Prepetition Agent, and the Secured Lenders [ECF No. 393].

31.     "Creditors' Committee" means the statutory official committee of unsecured creditors appointed by the United States Trustee in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code [ECF No. 102].

32.     "Cure Amount Claim" means a Claim based upon the Debtor's defaults under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor under section 365 of the Bankruptcy Code to the extent such Claim is required to be cured by section 365 of the Bankruptcy Code.

33.     "D&O Liability Insurance Policies" means all insurance policies relating to the Debtor that provided directors' and officers' liability insurance coverage for the Debtor, including any and all amendments, supplements, and endorsements, and subject to all of the policies' declarations, terms, conditions and exclusions, including: (a) Policy 8250-9417 issued by Chubb; and (b) Policy No. 100005511 issued by QBE Insurance Group Ltd.

34.     "Debtor" means Weatherly Oil and Gas, LLC, a Delaware limited liability company.

35.     "DIP Agent" means Angelo, Gordon Energy Servicer, LLC as administrative agent and collateral agent under the DIP Facility.

36.     "DIP Facility" has the meaning ascribed to it in the DIP Order.

37.     "<u>DIP Facility Claims</u>" means any Claims arising under the DIP Facility (as such term is defined in the DIP Order).

38.     "<u>DIP Lenders</u>" means the lenders from time to time party to the DIP Facility.

39.     "<u>DIP Order</u>" means the *Final Order (I) Authorizing Limited Use of Cash Collateral, (II) Obtaining Post-Petition Credit Secured by Senior Liens, (III) Granting Adequate Protection, and (IV) Granting Related Relief* [ECF No. 180], as may be amended from time to time in accordance with the terms thereof.

40.     "<u>Disbursing Agent</u>" means: (a) the Liquidation Trustee, in its capacity as disbursing agent hereunder, or any Third Party Disbursing Agent; and (b) the Debtor solely with respect to Distributions that are required to be made on the Effective Date by the Debtor under this Plan.

41.     "<u>Disclosure Statement</u>" means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to this Plan and has been prepared and distributed by the Debtor, as plan proponents, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented.

42.     "<u>Disclosure Statement Order</u>" means an order entered by the Bankruptcy Court conditionally approving the Disclosure Statement [ECF No.____].

43.     "<u>Disputed Claim</u>" means:

     a.     a Claim that is listed on the Debtor's Schedules as either disputed, contingent or unliquidated, whether or not a proof of Claim has been Filed;

     b.     a Claim that is listed on the Debtor's Schedules as other than disputed, contingent or unliquidated, but the nature or amount of the Claim as asserted by the holder in a proof of Claim varies from the nature or amount of such Claim as it is listed on the Schedules;

     c.     a Claim that is not listed on the Debtor's Schedules;

     d.     a Claim as to which the Debtor or, prior to the Confirmation Date, any other party in interest, has Filed an objection and such objection has not been withdrawn or denied by a Final Order; or

     e.     a Claim for which a proof of Claim or request for payment of Administrative Expense Claim is required to be Filed under the Plan and no such proof of Claim or request for payment of Administrative Expense Claim is or was timely Filed.

44.     "<u>Disputed Claims Reserves</u>" means the reserve fund(s) established pursuant to Section III.B of this Plan.

45.     "<u>Dissolution Transactions</u>" means the transactions that the Liquidation Trustee determines to be necessary or appropriate to implement the terms of this Plan, and that ultimately result in the dissolution or other termination of the Debtor.

46.     "<u>Distribution</u>" means a distribution under the Plan of property to a Holder of a Claim on account of such Claim.

47.     "<u>Distribution Date</u>" means a date selected by the Liquidation Trustee in accordance with the terms of the Plan to make Distributions on account of Allowed Claims.

48.     "<u>Distribution Record Date</u>" means the Confirmation Date.

49.    "District Court" means the United States District Court for the Southern District of Texas.

50.    "Document Website" means the internet address http://dm.epiq11.com/weatherly, at which the Plan, the Plan Supplement, and the Disclosure Statement shall be available to any party in interest and the public, free of charge.

51.    "Effective Date" means a day, as determined by the Debtor, that is the Business Day as soon as reasonably practicable after all conditions to the Effective Date set forth in Section VII.B have been met or waived in accordance with Section VII.C.

52.    "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

53.    "Estate" means the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

54.    "Exculpated Parties" means, collectively:  (a) the Debtor; (b) the Secured Parties; (c) the Creditors' Committee and the members thereof (solely to the extent that the Creditors' Committee supports, and does not object to, Confirmation of the Plan and the transactions contemplated thereby); (d) WET, and (e) with respect to each of the foregoing, such Entities' Representatives.  For the avoidance of doubt, WEC, OpCo, and such Entities' Representatives shall not constitute Exculpated Parties in any capacity, including in their capacity as Representatives of the Debtor.

55.    "Executory Contract" means a contract to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code, as applicable.

56.    "File," "Filed," or "Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

57.    "Final Distribution Date" means, with respect to a particular Class of Claims, the Distribution Date upon which final Distributions to claimants in the Class are to be made.

58.    "Final Order" means an order or judgment of the Bankruptcy Court, or any other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move, under Bankruptcy Rule 9023 or Rule 59 of the Federal Rules of Civil Procedure, for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceeding for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed relating to such order shall not prevent such order from being a Final Order.

59.    "General Unsecured Claim" means any Claim against the Debtor that is (a) unpaid as of the Effective Date, and (b) is not an Administrative Expense Claim, Secured Parties Claim, Secured Parties Deficiency Claim, Other Secured Claim, DIP Facility Claim, Cure Amount Claim, Priority Claim, Priority Tax Claim, State Environmental Claim or Intercompany Claim.

60.    "Group 1 Assets" means the "Non-Core" and "Sligo Non-Op" assets.

61.    "Group 1 Asset Sale Allocations" means the allocation of the Group 1 Sale Proceeds  to: (i) the Asset Sale Funding; (ii) pay all outstanding payments due to operators for their share of production costs through payment of joint-interest billings under the Debtor's various joint operating agreements, as set forth in the *Debtor's Emergency Motion for Interim and Final Orders (I) Authorizing Payment of (A)  Obligations Owed to Holders of*

*Mineral and Other Interests and Non-Op Working Interest and (B) Joint Interest Billings, and (II) Granting Related Relief* [ECF No. 23]; (iii) pay all DIP Facility Claims; (iv) satisfy any plugging and abandonment or similar liability with respect to the Group 1 Assets in an amount not greater than $1,500,000.00 (inclusive of the WET Settlement Payment), in each case, as agreed to by the Debtor and the RRC; (v) fund the Litigation Fund; and (vi) fund other distributions under the Plan (as applicable).

62.    "Group 1 Letter Agreement" means that certain Letter Agreement – Louisiana Assets, attached as Exhibit 1 to the Order Approving Debtor's Motion (A) Authorizing the Sale of Certain of Debtor's Oil and Gas Non-Operating Assets Free and Clear of Liens, Claims, Interests and Encumbrances to EnSight IV Energy Partners, LLC and (B) Granting Related Relief [ECF No. 149].

63.    "Group 1 PSA" means that certain Purchase and Sale Letter Agreement, attached as Exhibit A to the Order Approving Debtor's Motion (A) Authorizing the Sale of Certain of Debtor's Oil and Gas Assets Free and Clear of Liens, Claims, Interests, and Encumbrances to BRG Lone Star, Ltd.; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (C) Granting Related Relief [ECF No. 150].

64.    "Group 1 Sale Proceeds" means the Cash proceeds of the Group 1 Asset Sales which shall be net of (a) the Success Fee (as such term is defined in the TenOaks Engagement Letter) due to TenOaks on account of the Group 1 Asset Sales, and (b) all deductions and accrued liabilities associated with the Group 1 Assets, as contemplated to be satisfied pursuant to the Group 1 PSA and the Group 1 Letter Agreement (including if necessary and required by law, for the removal of any valid liens or encumbrances).

65.    "Group 1 Asset Sales" means the sale of the Group 1 Assets to BRG Lone Star, Ltd. and EnSight IV Energy Partners, LLC, respectively.

66.     "Group 2 Assets" means each of the "Overton," "Sligo Op," "Shelby," and "Boswell" assets, and any other asset for which a purchase sale agreement, or any similar agreement, is entered into.

67.    "Group 2 Asset Sale Allocations" means the allocation of the Group 2 Sale Proceeds as follows: (i) fund the Chapter 11 Case for any Asset Sale Funding not funded from the Group 1 Sale Proceeds in accordance with and subject to the DIP Budget; (ii) pay any DIP Facility Claims not satisfied from the Group 1 Sale Proceeds in Cash, in full, if applicable; (iii) pay $1,500,000.00 to the RRC for P&A Liabilities (inclusive of the WET Settlement amount) for any amounts not funded from the Group 1 Sale Proceeds; (v) fund the Litigation Fund for any amounts not funded from the Group 1 Sale Proceds; and (vi) to fund Plan distributions (as applicable).

68.    "Group 2 Sale Proceeds" means the Cash proceeds of the Group 2 Asset Sales which shall be net of (a) the Success Fee (as such term is defined in the TenOaks Engagement Letter) due to TenOaks on account of the Group 2 Asset Sales, if any, and (b) all deductions and accrued liabilities associated with the Group 2 Assets, as contemplated to be satisfied pursuant to the applicable purchase agreements (including if necessary and required by law, for the removal of any valid liens or encumbrances).

69.    "Group 2 Asset Sales" means the sale (or sales) of the Group 2 Assets.

70.    "Governmental Unit" means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

71.    "Holder" means an Entity holding a Claim against, or an Interest in, the Debtor, as the context requires.

72.    "Impaired" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

73.    "Insurance Policies" means any and all insurance policies, including the D&O Liability Insurance Policies, insurance settlement agreements, coverage-in-place agreements, and other agreements, documents, or

instruments relating to the provision of insurance entered into by or issued to or for the benefit of, at any time, the Debtor or its predecessors.

74.     "Insureds" means all persons and Entities that may be an "Insured" as defined in the D&O Liability Insurance Policies (or otherwise entitled to coverage thereunder).

75.     "Insurer" means any company or other entity that issued an Insurance Policy, any third party administrator of or for any Insurance Policy, and any respective predecessors and/or Affiliates of any of the foregoing.

76.     "Interest" means the rights of the Holders of the partnership interests, membership interests or other equity interests in the Debtor and outstanding immediately prior to the Petition Date, and any options, warrants or other rights with respect thereto, or any other instruments evidencing an ownership interest in the Debtor and the rights of any Entity to purchase or demand the issuance of any of the foregoing, including:  (a) redemption, conversion, exchange, voting, participation and dividend rights (including any rights in respect of accrued and unpaid dividends); (b) liquidation preferences; and (c) stock options and warrants.

77.     "Intercompany Claim" means any Claim against the Debtor held by a non-debtor Affiliate.

78.     "Interim Compensation Order" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [ECF No. 236], entered by the Bankruptcy Court on April 23, 2019.

79.     "IRS" means the United States Internal Revenue Service.

80.     "ISDA Master Agreement" means that certain ISDA Master Agreement dated July 15, 2014, between the Debtor and Cargill.

81.     "Liabilities" means any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, arising in law, equity or otherwise, that are based in whole or in part on any act, event, injury, omission, transaction or agreement.

82.     "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

83.     "Liquidation Trust" means the trust established pursuant to Section III.C of this Plan to, among other things, hold the Liquidation Trust Assets and make distributions pursuant to this Plan.

84.     "Liquidation Trust Agreement" means the trust agreement governing the Liquidation Trust.

85.     "Liquidation Trust Assets" means all Retained Assets of the Debtor as of the Effective Date.

86.     "Liquidation Trust Beneficiaries" has the meaning ascribed to the term "Beneficiaries" in the Liquidation Trust Agreement.

87.     "Liquidation Trust Expenses" means any and all reasonable fees, costs and expenses incurred by the Liquidation Trust or the Liquidation Trustee (or any Third Party Disbursing Agent or any professional or other Person retained by the Liquidation Trustee) on or after the Effective Date in connection with any of their duties under the Plan and the Liquidation Trust Agreement, including any administrative fees, attorneys' fees and expenses, insurance fees, taxes and escrow expenses.

88.     "Liquidation Trustee" means the trustee appointed pursuant to Section III.C of this Plan (or any successor trustee), in his, her or its capacity as the trustee of the Liquidation Trust.

89.     "Litigation Fund" means the contribution of no more than $100,000.00 from the Group 1 Sale Proceeds, and to the extent not funded from the Group 1 Sale Proceeds from the Group 2 Sale Proceeds, for the prosecution of Company Claims as required under the Creditor Compromise.  For the avoidance of doubt, the Liquidation Trustee shall not use the Litigation Fund or any proceeds thereof to assets, investigate, commence, prosecute or otherwise pursue any Claim or Cause of Action against WET to any Affiliate thereof released pursuant to the WET Settlement Order.

90.     "New MSA" means the Management Services Agreement entered into, effective as of March 1, 2019, by and between the Debtor and OpCo.

91.     "Notice of Occurrence of Effective Date" means the notice filed in accordance with Section VII.D of this Plan.

92.     "Notice Parties" means, collectively, the parties listed in Section IX.G.

93.     "Objection Deadline" means the deadline to File objections to Confirmation of this Plan, which is [ · ], 2019, at [ · ]. (prevailing Central Time) or any other deadline to File objections to Confirmation of this Plan established by the Disclosure Statement Order.

94.     "OpCo" means Weatherly Operating, LLC, a non-Debtor affiliate.

95.     "Ordinary Course Professionals Order" means the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [ECF No. 238], entered by the Bankruptcy Court on April 23, 2019.

96.     "Other Secured Claims" means each Claim (i) identified on the Other Secured Claim Schedule or (ii) deemed by Final Order of the Bankruptcy Court to be an Other Secured Claim.

97.     "P&A Liabilities" means all plugging and abandonment and similar obligations of the Remaining Assets under the laws of the States of Texas and Louisiana based on the respective location of each well.

98.     "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

99.     "Petition Date" means February 28, 2019, the date on which the Debtor Filed its petition for relief commencing the Chapter 11 Case.

100.    "Plan" has the meaning set forth in the introduction hereof.

101.    "Plan Supplement" means, collectively: (a) the Liquidation Trust Agreement; (b) the Schedule of Retained Causes of Action; (c) the Schedule of Assumed and Assigned Executory Contracts and Unexpired Leases; and (d) any other document or agreement designated by the Debtor.  The Debtor shall file the Plan Supplement no later than five Business Days before the Confirmation Hearing.  The Plan Supplement will be made available on the Document Website once Filed.  The Debtor reserves the right prior to the Effective Date, in accordance with the terms hereof, to modify, amend, supplement, restate or withdraw the Plan Supplement after it is Filed and shall promptly make such changes available on the Document Website.  The Plan Supplement shall be in form and substance reasonably acceptable to the Debtor and the Prepetition Agent.

102.    "Prepetition Agent" means Administrative Agent under the Credit Agreement.

103.    "Priority Claim" means a Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

104.    "Priority Tax Claim" means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

105.     "Pro Rata" means, when used with reference to a distribution of property to Holders of Allowed Claims in a particular Class or any other specified group of Claims pursuant to this Plan, proportionately, so that with respect to a particular Allowed Claim in such Class or in such group, the ratio of the amount of property to be distributed on account of such Claim to the amount of such Claim is the same as the ratio of the amount of property to be distributed on account of all Allowed Claims in such Class or group of Claims to the amount of all Allowed Claims in such Class or group of Claims.  Until all Disputed Claims in a Class are resolved, Disputed Claims shall be treated as Allowed Claims in their face amount for purposes of calculating Pro Rata distribution of property to Holders of Allowed Claims in such Class.

106.     "Professional" means any Entity (a) employed in the Chapter 11 Case by the Debtor or the Committee pursuant to a Final Order in accordance with sections 327, 328, 363 or 1103 of the Bankruptcy Code (other than a professional entitled to receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order) or (b) for which compensation or reimbursement has been Allowed by the Bankruptcy Court in the Chapter 11 Case for services to the Debtor, and expenses incurred in connection with such services, pursuant to section 503(b)(4) of the Bankruptcy Code.

107.     "Professional Fee Claim" means any Administrative Expense Claim for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent that the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

108.     "Professional Fee Escrow Account" means an account funded by the Debtor with Cash as soon as possible after Confirmation and not later than the Plan Effective Date in an amount equal to the Professional Fee Escrow Amount.

109.     "Professional Fee Escrow Amount" means the reasonable estimate of the aggregate amount of Professional Fee Claims relating to the period prior to the Effective Date, which estimates Professionals shall deliver to the Debtor as set forth in Section II.A.1.c of this Plan.

110.     "Released Parties" means collectively: (a) the Debtor; (b) to the extent the WET Settlement is approved by the Court by separate motion pursuant to Bankruptcy Rule 9019 on or before the Confirmation Date, WET; (c) the Secured Parties; (d) the DIP Agent; (e) the DIP Lenders; (f) the Creditors' Committee and the members thereof (solely to the extent that the Creditors' Committee supports, and does not object to, Confirmation of the Plan and the transactions contemplated thereby); (g) any Professional; and (h) with respect to (b) through (g), such Entities' Representatives.  For the avoidance of doubt, Mr. Perry Reed, WEC, OpCo, and such Entities' Representatives shall not constitute Released Parties in any capacity, including in their capacity as Representatives of the Debtor.

111.     "Releasing Parties" means collectively:  (a) the Debtor; (b) to the extent the WET Settlement is approved by the Court by separate motion pursuant to Bankruptcy Rule 9019 on or before the Confirmation Date, WET; (c) the Secured Parties; (d) the DIP Agent; (e) the DIP Lenders; (f) the Creditors' Committee and the members thereof (solely to the extent that the Creditors' Committee supports, and does not object to, Confirmation of the Plan and the transactions contemplated thereby); (g) the Louisiana Department of Natural Resources; (h) the RRC; (i) all Holders of Claims and Interests who do not opt out of the releases in this Plan in accordance with the Disclosure Statement Order; and (j) with respect to each Entity in clauses (a) through (i), each such Entity's Representatives.  For the avoidance of doubt, Mr. Perry Reed, WEC, OpCo, and such Entities' Representatives shall not constitute Releasing Parties in any capacity, including in their capacity as Representatives of the Debtor.

112.     "Remaining Assets" means all Liquidation Trust Assets which are not transferred to the Company Claims Account under Section III.C.3 of this Plan.

113.     "Representatives" means, with respect to any Person, any current and former Affiliates, equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board

members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals of such Person, in each case, in such capacity.

114.    "Retained Assets" means all assets remaining in the Estate as of the Effective Date; provided that the Professional Fee Escrow Account shall not, for the avoidance of any doubt, constitute a Retained Asset.

115.    "RRC" means the Texas Railroad Commission.

116.    "Schedules" means the schedules of assets and liabilities and the statement of financial affairs Filed by the Debtor, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

117.    "Schedule of Assumed and Assigned Executory Contracts and Unexpired Leases" means the schedule of Executory Contracts to be assumed by the Debtor or assumed and assigned by the Debtor to the Liquidation Trust as of the Effective Date.

118.    "Schedule of Other Secured Claims" means the schedule of each Secured Claim that may be entitled to priority status over Class 3 Secured Parties Claims under applicable law.

119.    "Schedule of Retained Causes of Action" means the schedule of Causes of Action to be retained by the Estate as a Retained Asset as of the Effective Date.  For the avoidance of doubt, the Schedule of Retained Causes of Action shall not include any Cause of Action against WET or any Affiliate thereof released pursuant to the WET Settlement Order.

120.    "Secured Claim" means a Claim that is secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order of the Bankruptcy Court, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the holder of such Claim's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) or as Allowed pursuant to the Plan as a Secured Claim.

121.    "Secured Parties Pool" shall be all Cash from the proceeds of the Asset Sales, after giving effect to and satisfying: (a) the Group 1 Asset Sale Allocations, (b) the Group 2 Asset Sale Allocations; (c) Administrative Claims; and (d) any distributions to Other Secured Claims.

122.    "Secured Lenders" means, collectively, the lenders party to the Credit Agreement (or their successors or assigns) or any other Secured Parties (as defined in the Credit Agreement), in their respective capacities as such.

123.    "Secured Parties" means, collectively, the Secured Lenders, the Prepetition Agent, and Cargill, in their respective capacities as parties to the Credit Agreement or the Master Agreement, as applicable.

124.    "Secured Parties Claims" means, collectively the Term Loan Claims and Cargill Claims.

125.    "Secured Parties Deficiency Claims" has the meaning set forth in Section II.C.3 of the Plan.

126.    "Secured Tax Claim" means a Secured Claim arising out of the Debtor's liability for any Tax.

127.    "State Environmental Parties" means the Louisiana Department of Natural Resources and the Texas Railroad Commission.

128.    "State Environmental Parties' Claims" means any Claim against the Debtor that is (a) unpaid or unresolved as of the Effective Date, and (b) resulting from the P&A Liabilities of the Remaining Assets.

129.    "<u>Tax</u>" means:  (a) any net income, alternative or add-on minimum, gross income, gross receipts, gross margin, sales, use, *ad valorem*, value added, transfer, franchise, profits, license, withholding, payroll, employment, excise, severance, stamp, occupation, premium, property, environmental, escheat, unclaimed property or windfall, profits, custom, duty or other tax, governmental fee or like assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other Person.

130.    "<u>TenOaks</u>" means TenOaks Energy Partners, LLC.

131.    "<u>Term Loan Claims</u>" means any Claims evidenced by, arising under, or in connection with the Credit Agreement or other agreements related thereto, which shall be allowed in the amount of $90,239,696.00.

132.    "<u>Third Party Disbursing Agent</u>" means an Entity designated by the Liquidation Trustee to act as a Disbursing Agent pursuant to Article III.C of this Plan.

133.    "<u>Third Party Payment</u>" means a payment made to the Holder of a Claim on account of such Claim by an Entity that is not the Debtor or the Liquidation Trust.

134.    "<u>Trust Accounts</u>" means the bank accounts to be held in the name of the Liquidation Trustee that are created pursuant to Section III.F of this Plan.

135.    "<u>TSA</u>" means the Transaction Support Agreement dated February 28, 2019, by and among the Debtor, the Secured Lenders, the Prepetition Agent, Cargill, WET, WEC, and OpCo, and which was subsequently terminated on June 12, 2019.

136.    "<u>U.S. Trustee</u>" means the Office of the United States Trustee for the Southern District of Texas.

137.    "<u>Unexpired Lease</u>" means a lease to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code or section 1123 of the Bankruptcy Code, as applicable.

138.    "<u>Unimpaired</u>" means, when used in reference to a Claim, a Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

139.    "<u>Unsecured Claims</u>" means all (i) General Unsecured Claims and (ii) Secured Parties Deficiency Claims.

140.    "<u>Voting Deadline</u>" means July 12, 2019 at 4:00 p.m., Central Time, which is the deadline for submitting ballots to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code.

141.    "<u>WEC</u>" means Weatherly Energy Capital LLC, a non-Debtor affiliate.

142.    "<u>WET</u>" means Weatherly East Texas, LLC, a non-Debtor affiliate.

143.    "<u>WET Settlement</u>" means the settlement announced on the record at the July 2, 2019 hearing between the Debtor and WET for payment of $100,000.00 which shall be paid, through the Estate, to the RRC in partial satisfaction of plugging and abandonment liabilities in exchange for releases and exculpations for WET.

144.    "<u>WET Settlement Payment</u>" means Cash in an amount equal to $100,000.00, which shall be transferred by WET or an Affiliate thereof pursuant to the WET Settlement Order and thereafter distributed by the Debtor in accordance with the Plan.

145.    "<u>WET Settlement Order</u>" means the order approving the WET Settlement [ECF No. ___].

**B.      Rules of Interpretation and Computation of Time**

    **1.      Rules of Interpretation**

For purposes of this Plan, unless otherwise provided herein:  (a) whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural; (b) any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to this Plan, the Confirmation Order or otherwise; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors, assigns and affiliates; (e) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (f) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, articles or certificates of incorporation, bylaws, codes of regulation, similar constituent documents, instrument, release or other agreement or document entered into or delivered in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code (other than subsection (5) thereof) shall apply to the extent not inconsistent with any other provision of this Section I.B.l.

    **2.      Computation of Time**

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

    **3.      Controlling Document**

In the event of any inconsistency among this Plan, the Disclosure Statement or any exhibit or schedule to the Disclosure Statement, the provisions of this Plan shall govern.  In the event of any inconsistency among this Plan and any document or agreement Filed in the Plan Supplement, such document or agreement shall control.  In the event of any inconsistency among this Plan or any document or agreement Filed in the Plan Supplement and the Confirmation Order, the Confirmation Order shall control.

**ARTICLE II**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

All Claims and Interests, except for those Claims set forth in Section II.A below, are classified for voting and Distribution pursuant to this Plan as set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and DIP Facility Claims are not classified herein.  A Claim or Interest is classified in a particular Class only to the extent that such Claim or Interest fits within the description of that Class and is classified in other Classes to the extent that any remainder of such Claim or Interest qualifies within the description of such other Classes.

**A.      Unclassified Claims**

    **1.      Payment of Administrative Expense Claims**

        **a.      Administrative Expense Claims in General**

Except as specified in Section II.A.1 and II.C.5, and subject to the bar date provisions herein, unless otherwise agreed by the Holder of an Administrative Expense Claim and the Debtor or the Liquidation Trustee, or

12

unless an order of the Bankruptcy Court provides otherwise, each holder of an Allowed Administrative Expense Claim will receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Administrative Expense Claim, Cash equal to the full unpaid amount of such Allowed Administrative Expense Claim, which payments shall be made at the Debtor's option (i) in the ordinary course of business or (ii) on the latest to occur of (A) the Effective Date (or as soon as reasonably practicable thereafter), (B) the date such Claim becomes an Allowed Administrative Expense Claim (or as soon as reasonably practicable thereafter) and (C) such other date as may be agreed upon by the Liquidation Trustee and the Holder of such Claim. Notwithstanding anything in the Plan to the contrary, upon the occurrence of the Effective Date, any Claim of a Secured Party on account adequate protection (as such term is defined in section 363 of the Bankruptcy Code), other than any claim for fees, expenses, or costs of its advisers to the extent provided under the DIP Order, shall, at the option of the Holder of Such Claim, be waived or otherwise receive no payment in Cash.

### b.    Statutory Fees

On or before the Effective Date, Administrative Expense Claims for fees payable pursuant to 28 U.S.C. § 1930 will be paid by the Debtor or the Liquidation Trustee in Cash equal to the amount of such Administrative Expense Claims. Fees payable pursuant to 28 U.S.C. § 1930 on behalf of the Estate after the Effective Date will be paid by the Liquidation Trustee until the closing of the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.

### c.    Professional Compensation

#### i.    Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims shall be Filed no later than 14 days after the Notice of Occurrence of Effective Date is Filed. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and prior orders of the Bankruptcy Court, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Section II.A.1.a of this Plan.

#### ii.    Professional Fee Escrow Account

As soon as practicable after Confirmation and not later than the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust for the Professionals. Such funds shall not be considered property of the Estate. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Claims are Allowed by a Final Order. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the Liquidation Trust.

#### iii.    Estimation of Professional Fees and Expenses

Professionals providing services to the Debtor shall reasonably estimate their unpaid Professional Fee Claims against the Debtor incurred before and as of the Confirmation Date, and shall deliver such estimate to the Debtor by the earlier of (a) five Business Days after the Confirmation Date and (b) two Business Days prior to the Effective Date; provided that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtor may estimate the unbilled fees and expenses of such Professional.

### iv.        Post-Effective Date Professional Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date and until the Effective Date, the Debtor will, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtor. Upon the Confirmation Date, any requirement that Professionals and Ordinary Course Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code, the Interim Compensation Order, or the Ordinary Course Professionals Order, in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional or Ordinary Course Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as otherwise specifically provided in this Plan, from and after the Effective Date, subject only to the terms of the Liquidation Trust Agreement, the Liquidation Trustee may employ and pay any professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action, order or approval of the Bankruptcy Court. Any such funding for Liquidation Trustee professionals and/or expenses shall be paid from the Liquidation Trust Assets.

### d.        Bar Date for Administrative Expense Claims

Except with respect to Professional Fee Claims or otherwise as set forth in this Plan, unless previously Filed, requests for payment of Administrative Expense Claims must be Filed and served on the Notice Parties pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than 30 days after the Effective Date. Holders of Administrative Expense Claims that are required to File and serve a request for payment of such Administrative Expense Claims and that do not File and serve such a request by the applicable Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtor, the Liquidation Trust or their respective property, and such Administrative Expense Claims will be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Notice Parties and the requesting party by the latest of (a) 30 days after the Filing of the applicable request for payment of Administrative Expense Claims or (b) such other period of limitation as may be specifically fixed by a Final Order for objecting to such Administrative Expense Claims.

### e.        Bar Date for Ordinary Course Administrative Liabilities

Holders of Administrative Expense Claims arising from liabilities incurred by the Debtor in the ordinary course of its business on or after the Petition Date but prior to the Effective Date must, if not paid by 20 days after the Effective Date, File with the Bankruptcy Court an Administrative Expense Claim by no later than 30 days after the Effective Date, unless previously Filed, or in another order of the Bankruptcy Court, or holders of such Administrative Expense Claims shall be forever barred from asserting such Claims against the Estate or the Liquidation Trust.

### 2.        Payment of Priority Tax Claims

### a.        Priority Tax Claims

Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the Holder of a Priority Tax Claim and the Debtor or the Liquidation Trustee, as applicable, each Holder of an Allowed Priority Tax Claim will receive, at the option of the Debtor or the Liquidation Trustee, as applicable, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Priority Tax Claim that is due and payable on or before the Effective Date, (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim or (ii) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; provided, however, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business by the Liquidation Trustee as they become due; provided, further, that, in the event an Allowed Priority Tax Claim that is also a Secured Tax Claim, such Claim shall, to the extent it

is Allowed, be treated, at the discretion of the Debtor (prior to the Effective Date) or the Liquidation Trustee (on or after the Effective Date) as an Other Secured Claim if such Claim is not otherwise paid in full in Cash.

> **b.     Other Provisions Concerning Treatment of Priority Tax Claims**

Notwithstanding anything to the contrary in Section II.A of this Plan, any Claim on account of any penalty arising with respect to or in connection with an Allowed Priority Tax Claim that does not compensate the Holder for actual pecuniary loss shall be treated as a General Unsecured Claim, and the Holder (other than as the Holder of a General Unsecured Claim) may not assess or attempt to collect such penalty from the Debtor, the Liquidation Trust or their respective property.

> **3.     Payment of DIP Facility Claims**

Except to the extent that a Holder of an Allowed DIP Facility Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed DIP Facility Claim, each Holder of such Allowed DIP Facility Claim shall have been paid in full in Cash from the proceeds of the Group 1 Asset Sales and to the extent remaining unpaid, the Group 2 Asset Sales.  Upon the payment or satisfaction of the Allowed DIP Facility Claims in accordance with this Article, all Liens and security interests granted to secure the Allowed DIP Facility Claims shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**B.     Classification of Claims and Interests**

> **1.     General**

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Interests are classified for the purposes of voting and Distribution pursuant to this Plan, as set forth herein.  A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such other Class.  Except as otherwise specifically provided for herein, the Confirmation Order or any other Final Order of the Bankruptcy Court, or required by applicable bankruptcy law, in no event shall the aggregate value of all property received or retained under the Plan on account of an Allowed Claim exceed 100% of the underlying Allowed Claim.

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for the purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims; provided, however, that in the event no Holder of a Claim with respect to a specific Class timely submits a Ballot in compliance with the Disclosure Statement Order indicating acceptance or rejection of this Plan, such Class will be deemed to have accepted this Plan.  The Debtor may seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

**C.     Treatment of Claims and Interests**

> **1.     Priority Claims (Class 1)**

>> a.     *Classification*.  Class 1 consists of all Priority Claims.

>> b.     *Treatment*.  Unless otherwise agreed by a Holder of an Allowed Priority Claim and the Debtor (prior to the Effective Date) or the Liquidation Trustee (on or after the Effective Date), on the later of (i) the Effective Date or as soon as reasonably practicable thereafter and (ii) the date on which such Priority Claim becomes an Allowed Claim, each Holder of an Allowed Priority Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Priority Claim, the following treatment at the option of the Debtor (prior to the Effective Date) or the Liquidation

Trustee (on or after the Effective Date): (A) payment in full in Cash; or (B) such other treatment as is necessary to render such Claim Unimpaired.

c.    *Voting*.  Claims in Class 1 are Unimpaired.  Each Holder of an Allowed Claim in Class 1 is conclusively presumed to have accepted this Plan and is, therefore, not entitled to vote on this Plan.

**2.    Other Secured Claims (Class 2)**

d.    *Classification*.  Class 2 consists of all Other Secured Claims.

e.    *Treatment*.  Unless otherwise agreed by any Holder of an Allowed Other Secured Claim and the Debtor (prior to the Effective Date) or the Liquidation Trustee (on or after the Effective Date), on the later of (i) the Effective Date or as soon as reasonably practicable thereafter and (ii) the date on which such Other Secured Claim becomes an Allowed Claim, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Other Secured Claim, the following treatment at the option of the Debtor (prior to the Effective Date) or the Liquidation Trustee (on or after the Effective Date): (A) payment in full in Cash; (B) delivery of the collateral securing such Allowed Other Secured Claim and payment of any interest thereon required to be paid under section 506(b) of the Bankruptcy Code; or (C) such other treatment as is necessary to render such Claim Unimpaired.  The Debtor will file a schedule of Class 2 claims by the Solicitation Deadline.

f.    *Voting*.  Claims in Class 2 are Unimpaired.  Each holder of an Allowed Claim in Class 2 is conclusively presumed to have accepted this Plan and, therefore, is not entitled to vote on this Plan.

**3.    Secured Parties Claims (Class 3)**

g.    *Classification*.  Class 3 consists of all Secured Parties Claims.

h.    *Treatment*.  Unless otherwise agreed by a Holder of an Allowed Secured Parties Claim and the Debtor (prior to the Effective Date) or the Liquidation Trustee (on or after the Effective Date), each Holder of an Allowed Secured Parties Claim will receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Secured Parties Claim, on the Effective Date, the Holder's Pro Rata share of the Secured Parties Pool.  Any outstanding Secured Parties Claim remaining after exhaustion of the Secured Parties Pool shall be deemed an Allowed Secured Parties Deficiency Claim and the Holder of such Allowed Secured Parties Deficiency Claim shall be entitled to vote and receive treatment as a Holder of an Allowed Unsecured Claim pursuant to Class 4.

i.    *Voting*.  Claims in Class 3 are Impaired.  Each Holder of an Allowed Claim in Class 3 is, therefore, entitled to vote on this Plan.

**4.    Unsecured Claims (Class 4)**

j.    *Classification*.  Class 4 consists of all Unsecured Claims.

k.    *Treatment*.  On the applicable Distribution Date, unless otherwise agreed by a Holder of an Allowed Unsecured Claim and the Debtor (prior to the Effective Date) or the Liquidation Trustee (on or after the Effective Date):

a.  each Holder of an Allowed General Unsecured Claim will receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such General Unsecured Claim, its Pro Rata share of 40% of the proceeds of the Company Claims Account pursuant to the terms of the Liquidation Trust Agreement; and

b.  each Holder of an Allowed Secured Parties Deficiency Claim will receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Secured Parties Deficiency Claim, its Pro Rata share of (i) 20% of the proceeds of the Company Claims Account pursuant to the terms of the Liquidation Trust Agreement; (ii) any funds returning to the Debtor on account of any posted bonds and/or letters of credit; and (iii) if the Holders of Allowed General Unsecured Claims and the Holders of Allowed State Environmental Claims have been paid in full, 100% of the remaining proceeds of the Company Claims Account pursuant to the terms of the Liquidation Trust Agreement.

l.  *Voting*.  Claims in Class 4 are Impaired.  Each Holder of an Allowed Claim in Class 4 is, therefore, entitled to vote on this Plan.

**5.**       **State Environmental Claims (Class 5)**

**a.       Classification.  Class 5 consists of all State Environmental Claims**

b.       *Treatment*.  On the applicable Distribution Date, unless otherwise agreed by a Holder of an Allowed State Environmental Claim and the Debtor (prior to the Effective Date) or the Liquidation Trustee (on or after the Effective Date), each Holder of an Allowed State Environmental Claim will receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such State Environmental Claim, its share of 40% of the proceeds of the Company Claims Account pursuant to the terms of the Liquidation Trust Agreement.  That 40% shall be divided equally between the RRC and Louisiana Department of Natural Resources (20% for each state).

c.       *Voting*.  Claims in Class 5 are Impaired.  Each Holder of an Allowed Claim in Class 5 is, therefore, entitled to vote on this Plan.

**6.**       **Intercompany Claims (Class 6)**

m.       *Classification*.  Class 6 consists of all Intercompany Claims.

n.       *Treatment*.  On the Effective Date, all Intercompany Claims shall be released, canceled or waived.  No Distribution shall be made on account of the Intercompany Claims.

o.       *Voting*.  Claims in Class 6 are Impaired.  Each Holder of an Allowed Claim in Class 6 is conclusively presumed to have rejected this Plan and, therefore, is not entitled to vote on this Plan.

**7.**       **Equity Interests in the Debtor (Class 7)**

p.       *Classification*.  Class 7 consists of all Equity Interests in the Debtor.

q.       *Treatment*.  On the Effective Date, all Equity Interests in the Debtor shall be canceled.  No Distribution shall be made on account of Equity Interests in the Debtor.

        r.      *Voting*. Interests in Class 7 are Impaired. Each Holder of a Class 7 Interest is conclusively presumed to have rejected this Plan and, therefore, is not entitled to vote on this Plan.

**D.      Reservation of Rights Regarding Claims**

Except as otherwise provided in this Plan or in other Final Orders of the Bankruptcy Court, including the DIP Order, nothing shall affect the rights or defenses of the Debtor or the Liquidation Trustee, as applicable, whether legal or equitable, with respect to any Claim, including all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

**E.      Postpetition Interest on Claims**

Except as required by applicable bankruptcy law or the DIP Order, postpetition interest shall not accrue or be payable on account of any Claim.

**F.      Insurance**

Notwithstanding anything to the contrary herein, if any Allowed Claim is covered by an Insurance Policy, such Claim shall first be paid from proceeds of such Insurance Policy, with the balance, if any, treated in accordance with the provisions of this Plan governing the Class applicable to such Claim.

**G.      Confirmation Without Acceptance by All Impaired Classes**

The Debtor requests Confirmation under section 1129(b) of the Bankruptcy Code in the event that any impaired Class does not accept or is deemed not to accept this Plan pursuant to section 1126 of the Bankruptcy Code. This Plan shall constitute a motion for such relief.

**H.      Class Without Voting Claim Holders**

If Holders of Claims in a particular Impaired Class of Claims are entitled to vote to accept or reject this Plan, but no Holders of Claims in such Impaired Class of Claims vote to accept or reject this Plan, then such Class of Claims shall be deemed to have accepted this Plan.

**ARTICLE III**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.      Corporate Existence**

Consistent with Section III.B below, the Debtor will be subject to one or more Dissolution Transactions on or after the Effective Date, at the discretion of the Liquidation Trustee and in accordance with the Liquidation Trust Agreement and the constituent documents of the Debtor. The Debtor shall continue to exist after the transfer of the property of its Estate to the Liquidation Trust until dissolved by the Liquidation Trustee pursuant to a Dissolution Transaction.

**B.      Dissolution Transactions**

      **1.      Dissolution Transactions Generally**

At any time on or after the Effective Date, the Liquidation Trustee will enter into such Dissolution Transactions as may be necessary or appropriate on the Debtor's behalf to merge, dissolve or otherwise terminate the corporate existence of the Debtor in accordance with the Liquidation Trust Agreement and the constituent documents of the Debtor. The actions to effect the Dissolution Transactions may include: (a) the execution and delivery of appropriate agreements or other documents of transfer, merger, consolidation, disposition, liquidation or dissolution containing terms that, among other things, are consistent with the terms of this Plan; (b) the execution

18

and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of this Plan and that satisfy the requirements of applicable law; (c) the filing of appropriate certificates or articles of merger, consolidation, continuance or dissolution or similar instruments with the applicable governmental authorities; and (d) the taking of all other actions that these entities determine to be necessary or appropriate, including making other filings or recordings that may be required by applicable law in connection with the Dissolution Transactions.

### 2. Recourse Solely to Liquidation Trust Assets

As of the Effective Date, each Claim against the Debtor (other than any Claim that is an Administrative Expense Claim, Secured Parties Claim, Other Secured Claim, Cure Amount Claim, Priority Claim, or Priority Tax Claim) shall be deemed satisfied, settled, released, and discharged as to the Debtor as provided with respect to each such Claim under this Plan, and, except as otherwise set forth in this Plan or other Final Orders of the Bankruptcy Court, any Holder of an Allowed Claim against the Debtor will have recourse solely to the assets of the Liquidation Trust for the payment of any such Allowed Claim in accordance with the terms of this Plan and the Liquidation Trust Agreement.

### 3. Creditor Compromise

On June 27, 2019, the Creditors' Committee and Prepetition Agent entered into the Creditor Compromise. Under the Creditor Compromise, the Prepetition Agent and Secured Lenders have agreed (i) to fund the Liquidation Trust from the Group 1 Sale Proceeds, and to the extent not funded from the Group 1 Sale Proceeds from the Group 2 Sale Proceeds, in the aggregate amounts of no more than $100,000.00 to be used for prosecution of Company Claims, (ii) to fund $1,400,000.00 (plus any additional amount that the Secured Lenders, in their sole discretion, deem necessary or appropriate, but without obligation to do so) from the Group 1 Sale Proceeds, and to the extent not funded from the Group 1 Sale Proceeds from the Group 2 Sale Proceeds, to be used for limiting of P&A Liabilities, and (iii) that no plan distributions will be made to the Prepetition Agent or the Secured Lenders until such funding has occurred, in exchange for a percentage of recovery from the Liquidation Trust as provided in the Liquidation Trust Agreement as well as the Releases and Exculpations included in Section VII.F. The Creditor Compromise is part of the Plan only if the Creditors' Committee supports, and does not object to, Confirmation of the Plan and the transactions contemplated thereby.

## C. Liquidation Trust

### 1. Liquidation Trust Generally

On or prior to the Effective Date, the Liquidation Trust shall be established in accordance with the Liquidation Trust Agreement for the purpose of liquidating the Liquidation Trust Assets, resolving all Disputed Claims, making all Distributions to holders of Allowed Claims in accordance with the terms of this Plan and otherwise implementing this Plan. Subject to and to the extent set forth in this Plan, the Confirmation Order, the Liquidation Trust Agreement or any other order of the Bankruptcy Court entered in connection therewith, the Liquidation Trust shall be empowered to: (a) perform all actions and execute all agreements, instruments and other documents necessary to implement this Plan; (b) establish, maintain and administer the Trust Accounts, which shall be segregated to the extent appropriate in accordance with this Plan; (c) accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, supervise, prosecute, settle and protect, as applicable, the Liquidation Trust Assets (directly or through its professionals or a Third Party Disbursing Agent), in accordance with this Plan; (d) review, reconcile, settle or object to all Claims that are Disputed Claims as of the Effective Date pursuant to the procedures for allowing Claims prescribed in this Plan; (e) calculate and make Distributions of the proceeds of the Liquidation Trust Assets to the holders of Allowed Claims; (f) subject to Section III.G of this Plan, pursue Avoidance Actions that are transferred to the Liquidation Trust to the extent that their pursuit would likely result in a material economic benefit to holders of Claims under this Plan; (g) retain, compensate and employ professionals to represent the Liquidation Trust; (h) file appropriate Tax returns and other reports on behalf of the Liquidation Trust and pay Taxes or other obligations owed by the Liquidation Trust; (i) file, to the extent reasonably feasible and subject to the Liquidation Trust Agreement, appropriate Tax returns on behalf of the Debtor and pay Taxes or other obligations arising in connection therewith; (j) exercise such other powers as may be vested in the Liquidation Trust under the Liquidation Trust Agreement and this Plan, or as are deemed by the Liquidation Trustee to be necessary and proper

to implement the provisions of this Plan and the Liquidation Trust Agreement; (k) take such actions as are necessary or appropriate to close the Debtor's Chapter 11 Case; and (l) dissolve the Liquidation Trust in accordance with the terms of the Liquidation Trust Agreement.

Notwithstanding anything to the contrary in this Section III.C, the Liquidation Trust's primary purpose is liquidating the Liquidation Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidation Trust's liquidating purpose and reasonably necessary to conserve and protect the Liquidation Trust Assets and provide for the orderly liquidation thereof.

### 2.    Funding of and Transfer of Assets Into the Liquidation Trust

Except as otherwise provided in this Plan or the Confirmation Order, on the Effective Date, the Debtor shall transfer the Liquidation Trust Assets to the Liquidation Trust, and all such assets shall vest in the Liquidation Trust on such date, to be administered by the Liquidation Trustee in accordance with this Plan and the Liquidation Trust Agreement.  Except as set forth in Section III.I below, the Liquidation Trust Assets shall be transferred to the Liquidation Trust free and clear of all Claims, Liens, and encumbrances to the fullest extent provided by section 363 or 1123 of the Bankruptcy Code.

The act of transferring the Liquidation Trust Assets, as authorized by this Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Liquidation Trust as if the asset or right was still held by the Debtor.

The Liquidation Trustee shall have the authority to create additional sub-accounts in the Trust Accounts and sub-trusts within the Liquidation Trust, which may have a separate legal existence, but which shall be considered sub-accounts or sub-trusts of the Liquidation Trust. This shall include the creation of sub-accounts and/or sub-trusts to accomplish the purposes of the Litigation Trust.

### a.    Creation of Sub-Account for Company Claims

On the Effective Date, the Liquidation Trustee shall cause a sub-account to be created for the purpose of prosecution of Company Claims (the "Company Claims Account"), and shall immediately transfer all Causes of Action, including avoidance actions, and the Debtor's interest in all Insurance Policies to the Company Claims Account. On the Effective Date, the Debtor shall transfer from the Group 1 Sale Proceeds, and to the extent not funded from the Group 1 Sale Proceeds from the Group 2 Sale Proceeds, to the Liquidation Trust an amount of no more than $100,000.00 (the "Litigation Fund") to be used to fund the prosecution of the Company Claims.  For the avoidance of doubt, no plan distributions will be made to the Prepetition Agent or the Secured Lenders until such funding has occurred.  The Liquidation Trustee shall allocate the Litigation Fund to the Company Claims Account.

Any and all proceeds from prosecution of the Company Claims shall be paid into the Company Claims Account. The Company Claims Account shall be divided—(i) 40% to the States; (ii) 40% to the General Unsecured Claims; and (iii) 20% to the Secured Parties, provided, however, that once the General Unsecured Claims and the State Environmental Claims are paid in full, 100% of the remaining funds in the Company Claims Account shall be disbursed to the Secured Parties, provided further, however, that the Secured Lenders shall be reimbursed for amounts paid into the Litigation Fund before distributions are made to the General Unsecured Claims and the State Environmental Claims.

### b.    Liquidation Trustee

The initial Liquidation Trustee shall be selected by the Creditors' Committee (only if the Creditors' Committee supports, and does not object to, Confirmation of the Plan and the transactions contemplated thereby), in consultation with the Debtor and the Prepetition Agent.  The Liquidation Trustee shall be the successor to and representative of the Estate of the Debtor within the meaning of section 1123(b)(3)(B) of the Bankruptcy Code.  The powers, rights and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement and shall include the authority and responsibility to fulfill the items identified in Section III.C.1 above.  Other rights

and duties of the Liquidation Trustee and the Liquidation Trust Beneficiaries shall be as set forth in the Liquidation Trust Agreement.

3.      **Liquidation Trust Agreement**

Prior to the Effective Date, the Debtor and the Liquidation Trustee shall execute and deliver the Liquidation Trust Agreement.

4.      **Reports to be Filed by the Liquidation Trustee**

Following the Effective Date, the Liquidation Trustee, on behalf of the Liquidation Trust, shall File with the Bankruptcy Court (and provide to any other party entitled to receive any such report pursuant to the Liquidation Trust Agreement), no later than 45 days after June 30 and December 31 of each calendar year, a semi-annual report regarding the administration of property subject to its ownership and control pursuant to this Plan, distributions made by it and other matters relating to the implementation of this Plan.

5.      **Fees and Expenses of the Liquidation Trust**

The fees and expenses of the Liquidation Trustee (including those incurred prior to the Effective Date in connection with the preparation of the Liquidation Trust Agreement) shall be paid after the Effective Date pursuant to the terms and conditions of the Liquidation Trust Agreement.  The Liquidation Trustee, on behalf of the Liquidation Trust, may employ, without further order of the Bankruptcy Court, professionals (including professionals previously employed by the Debtor and/or Creditors' Committee) to assist in carrying out its duties under the Liquidation Trust Agreement and may compensate and reimburse the expenses of these professionals based upon the nature of the work performed by such professional, without further order of the Bankruptcy Court, subject to any limitations and procedures established by the Liquidation Trust Agreement.  For the avoidance of any doubt, neither WET nor any Affiliate of WET (other than the Debtor) shall have any obligation or responsibility to satisfy any of the fees or expenses of the Debtor or the Liquidation Trustee, the Liquidation Trust, or any transaction contemplated by the Plan, the Plan Supplement (including the Liquidation Trust Agreement), or the Restructuring Transactions, including any fees or expenses incurred by the Debtor or the Liquidation Trustee in connection with the preparation of any tax returns and other reports on behalf of the Liquidation Trust and pay Taxes or other obligations owed by the Liquidation Trust.

6.      **Indemnification**

The Liquidation Trust Agreement may include reasonable and customary indemnification provisions for the benefit of the Liquidation Trustee and/or other parties.  Any such indemnification shall be the sole responsibility of the Liquidation Trust and payable solely from the Liquidation Trust Assets.

7.      **Tax Treatment; No Successor in Interest**

The Liquidation Trust is intended to be treated for U.S. federal income tax purposes in part as a liquidating trust described in Treasury Regulation section 301.7701-4(d) and in part as one or more Disputed Claims Reserves treated as disputed ownership funds described in Treasury Regulation section l.468B-9.  For U.S. federal income tax purposes, the transfer of assets by the Debtor to the Liquidation Trust will be treated (a) in part as the transfer of assets by the Debtor to the Holders of Allowed Claims, subject to any liabilities of the Debtor or the Liquidation Trust payable from the proceeds of such assets, followed by the transfer of such assets (subject to such liabilities) by such holders to the Liquidation Trust in exchange for the beneficial interests in the Liquidation Trust, and (b) in part as the transfer of assets by the Debtor to one or more Disputed Claims Reserves.

a.      **Liquidation Purpose of the Liquidation Trust**

The Liquidation Trust shall be established for the primary purpose of liquidating and distributing the assets transferred to it, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the

liquidating purpose of the Liquidation Trust.  Accordingly, the Liquidation Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, make timely distributions to the Liquidation Trust Beneficiaries and not unduly prolong its duration.  The Liquidation Trust shall not be deemed a successor-in-interest of the Debtor for any purpose other than as specifically set forth in this Plan or in the Liquidation Trust Agreement.  The record holders of beneficial interests shall be recorded and set forth in a register maintained by the Liquidation Trustee expressly for such purpose.

The Liquidation Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes with the Liquidation Trust Beneficiaries treated as grantors and owners of the Liquidation Trust.  For all U.S. federal income tax purposes, all parties (including the Debtor, the Liquidation Trustee and the Liquidation Trust Beneficiaries) shall treat the transfer of the Liquidation Trust Assets by the Debtor to the Liquidation Trust, as set forth in the Liquidation Trust Agreement, as a transfer of such assets by the Debtor to the Holders of Allowed Claims entitled to distributions from the Liquidation Trust Assets, followed by a transfer by such Holders to the Liquidation Trust.  Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for U.S. federal income tax purposes.

As soon as practicable after the Effective Date, the Liquidation Trustee shall make a good faith determination of the fair market value of the Liquidation Trust Assets as of the Effective Date.  This valuation shall be used consistently by all parties (including the Debtor, the Liquidation Trustee and the Liquidation Trust Beneficiaries) for all U.S. federal income tax purposes.  The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidation Trust Assets.

The right and power of the Liquidation Trustee to invest the Liquidation Trust Assets, the proceeds thereof, or any income earned by the Liquidation Trust, shall be limited to the right and power that a liquidating trust, within the meaning of section 301.7701-4(d) of the Treasury Regulations, is permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, including Revenue Procedure 94-45, whether set forth in IRS rulings or other IRS pronouncements, and to the investment guidelines of section 345 of the Bankruptcy Code.  The Liquidation Trustee may expend the Cash of the Liquidation Trust (i) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective assets of the Liquidation Trust during liquidation, (ii) to pay the respective reasonable administrative expenses (including, but not limited to, any taxes and P&A liabilities imposed on the Liquidation Trust) and (iii) to satisfy other respective liabilities incurred by the Liquidation Trust in accordance with this Plan and the Liquidation Trust Agreement (including the payment of any Taxes and P&A Liabilities).

**b.      Disputed Claims Reserves**

Liquidation Trust Assets reserved for Holders of Disputed Claims shall be treated as one or more Disputed Claims Reserves.  The Liquidation Trustee shall treat each Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections consistent with such tax treatment).  The Liquidation Trustee shall be the administrator of the Disputed Claims Reserves within the meaning of Treasury Regulation section 1.468B-9(b)(2) and shall be responsible for all Tax reporting and withholding required by the Disputed Claims Reserves.  No Holder of a Claim will be treated as the grantor or deemed owner of any asset reserved for Disputed Claims until such Holder receives or is allocated an interest in such asset.  The Liquidation Trustee will file all Tax returns on a basis consistent with the treatment of the Liquidation Trust in part as a liquidating trust (and grantor trust pursuant to Treasury Regulation section 1.671-l(a)) and in part as one or more Disputed Claims Reserves taxed as disputed ownership funds, and will pay all Taxes owed from Liquidation Trust Assets.

**8.      Settlement of Claims**

Except as otherwise provided in this Plan or the Liquidation Trust Agreement, on or after the Effective Date, the Liquidation Trustee may compromise or settle any Claims, other than any Professional Fee Claims, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and may pay the charges that it incurs on or after the Effective Date for Liquidation Trust expenses, professionals' fees, disbursements, expenses or related support services (including fees relating to the preparation of applications for payment of Professional Fee Claims) without application to the Bankruptcy Court.

9.      **Sales of Assets by Liquidation Trust**

The Liquidation Trustee may conduct any sales or liquidations of non-Cash Liquidation Trust Assets on any terms it deems reasonable, without further order of the Bankruptcy Court.  Upon the sale, liquidation, transfer or other disposition of the Liquidation Trust Assets by the Liquidation Trustee, the Liquidation Trustee shall deposit the proceeds of all such sales, liquidations, transfers or dispositions into one or more of the Trust Accounts.

10.     **Abandonment of Assets by Liquidation Trust**

The Liquidation Trustee may, on no less than fourteen (14) days' written notice to the United States Trustee, abandon any Liquidation Trust Assets which the Liquidation Trustee determines in his or her reasonable discretion to be of de minimis value or burdensome to the Liquidation Trust, including any pending adversary proceeding or other legal action commenced or commenceable by the Debtor prior to the Effective Date.  If the United States Trustee provides a written objection to the Liquidation Trustee prior to the expiration of such fourteen-day period with respect to the proposed abandonment of any Liquidation Trust Asset, then such property may be abandoned only pursuant to Court Order.

D.      **Corporate Governance; Directors and Officers**

1.      **Constituent Documents of the Debtor**

Consistent with Sections III.A and III.B above, the Debtor will cease to exist, and all existing articles of organization and similar constituent documents will be canceled, effective as of the Effective Date; accordingly, no new articles of organization or other constituent documents will be necessary.

2.      **Directors and Officers**

Effective as of the Effective Date, all directors, managers, members, and officers of the Debtor shall be discharged, and all such appointments rescinded for all purposes, without any necessity of taking any further action in connection therewith.

3.      **Corporate Action**

The Dissolution Transactions and the following corporate actions and transactions will occur and be effective as of the date specified in the documents effectuating the applicable Dissolution Transactions (or other transactions), or the Effective Date if no such other date is specified in such other documents, and will be authorized and approved in all respects and for all purposes without any requirement of further action by the Debtor, the Liquidation Trustee or any other Person:  (a) the establishment of the Liquidation Trust; (b) the appointment of the Liquidation Trustee to act on behalf of the Liquidation Trust; (c) the transfer of the Liquidation Trust Assets into the Liquidation Trust, as set forth in this Plan; (d) the distribution of Cash pursuant to this Plan; (e) the adoption, execution, delivery and implementation of all contracts, instruments, releases and other agreements or documents related to any of the foregoing; (f) the adoption, execution and implementation of the Liquidation Trust Agreement; and (g) the other matters provided for under this Plan involving the corporate structure of the Debtor or corporate action to be taken by or required by the Debtor or the Liquidation Trustee.

E.      **No Revesting of Assets**

To the extent not otherwise Distributed in accordance with this Plan, the property of the Estate shall not revest in the Debtor on or after the Effective Date but shall instead vest in the Liquidation Trust to be administered by the Liquidation Trustee in accordance with this Plan and the Liquidation Trust Agreement.

**F.      Creation and Maintenance of Trust Accounts**

**1.      Creation of Trust Accounts**

On or prior to the Effective Date, appropriate Trust Accounts will be established and maintained in one or more federally insured domestic banks in the name of the Liquidation Trust or, if applicable and appropriate, a Third Party Disbursing Agent.  Cash deposited in the Trust Accounts will be invested, held and used solely as provided in the Liquidation Trust Agreement.  The Liquidation Trustee is authorized to establish additional Trust Accounts after the Effective Date, consistent with the terms of the Liquidation Trust Agreement.

**2.      Additional Funding of Trust Accounts**

After the funding of the Trust Accounts on the Effective Date, each Trust Account will be funded by the Cash proceeds obtained through litigation or the disposition of the Liquidation Trust Assets.

**3.      Closure of Trust Accounts**

Upon obtaining an order of the Bankruptcy Court authorizing final Distribution and/or closure of the Debtor's Chapter 11 Case, any funds remaining in the Trust Accounts shall be distributed in accordance with this Plan and the Liquidation Trust Agreement, and the Trust Accounts may be closed.

**G.      Preservation of Causes of Action**

Except as provided in this Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidation Trustee will retain and may enforce any claims, demands, rights and causes of action that any Estate may hold against any Person to the extent not satisfied, settled, and released under this Plan or otherwise, including the Avoidance Actions.  The Liquidation Trustee may pursue any such retained claims, demands, rights or causes of action, as appropriate, in accordance with the best interests of the Liquidation Trust Beneficiaries.  Except as otherwise provided in Section III.G, in accordance with and subject to any applicable law, the Debtor's inclusion or failure to include any Cause of Action on the Schedule of Retained Causes of Action shall not be deemed an admission, denial or waiver of any claims, demands, rights or causes of action that the Debtor or Estate may hold against any Entity.  The Debtor intends to preserve all such claims, demands, rights or causes of action as Avoidance Actions (except as otherwise provided in Section III.G or to the extent any such claim is specifically satisfied, settled, and released herein).

**H.      Cancellation and Surrender of Instruments, Securities and Other Documentation**

Except as provided in (a) any contract, instrument or other agreement or document entered into or delivered in connection with this Plan, including the Liquidation Trust Agreement, or (b) any of the asset sales effectuated during the pendency of the Debtor's Chapter 11 Case, on the Effective Date and concurrently with the applicable Distributions made pursuant to Section II hereof, all notes, instruments, certificates and other documents evidencing Claims or Interests shall be deemed canceled and surrendered and of no further force and effect against the Debtor or the Liquidation Trust, without any further action on the part of the Debtor or the Liquidation Trust.

**I.      Release of Liens**

Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to this Plan, all Liens on the property of the Estate shall be fully satisfied, settled, released, and discharged, and all of the right, title and interest of any Holder of such Liens shall be satisfied, settled, released, and discharged upon such Holder receiving its Distribution in accordance with the terms of this Plan.

**J.      Effectuating Documents; Further Transactions**

The Debtor (prior to the Effective Date) and  the Liquidation Trustee (on or after the Effective Date) are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and evidence the terms and conditions of this Plan and the Dissolution Transactions, in each case, in the name of and on behalf of the Debtor or the Liquidation Trust, as applicable, without the need for any approvals, authorization or consents except those expressly required pursuant to this Plan.

**K.      Substitution in Pending Legal Actions**

On the Effective Date, the Liquidation Trust or the Liquidation Trustee, as applicable, shall be deemed to be substituted as the party to any litigation in which the Debtor is a party, including (but not limited to) (a) pending contested matters or adversary proceedings in the Bankruptcy Court, (b) any appeals of orders of the Bankruptcy Court, and (c) any state court or federal or state administrative proceedings pending as of the Petition Date.  The Liquidation Trustee and its professionals are not required to, but may take such steps as are appropriate to provide notice of such substitution.

**L.      WET Settlement**

To the extent that the WET Settlement is approved on or prior to the Confirmation Date by separate motion pursuant to Bankruptcy Rule 9019, the WET Settlement shall be integrated into and become part of the Plan. Accordingly, in consideration of the Distributions and other benefits provided under this Plan, the provisions of this Plan, including the releases set forth in Section VII.F.4 hereof, shall constitute a good-faith compromise and settlement of all Claims, disputes and controversies relating to the rights that a Holder of a Claim may have against the Debtor or with respect to any Distribution to be made pursuant to this Plan on account of any such Claim.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims, disputes, or controversies provided for herein, and the Bankruptcy Court's determination that such compromises and settlements are in the best interests of the Debtor, its Estate, creditors and all other parties in interest, and are fair, equitable and within the range of reasonableness.  If the Effective Date does not occur, the settlements set forth herein shall be deemed to have been withdrawn without prejudice to the respective positions of the parties.

## ARTICLE IV
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Assumption and Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided in this Plan, each of the Debtor's Executory Contracts and Unexpired Leases not previously assumed or rejected pursuant to an order of the Bankruptcy Court shall be deemed rejected as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, or any Executory Contract or Unexpired Lease (a) identified on the Schedule of Assumed and Assigned Executory Contracts and Unexpired Leases, (b) that is the subject of a separate motion or notice to assume or reject Filed by the Debtor and pending as of the Confirmation Hearing, or (c) that previously expired or terminated pursuant to its own terms.  Unless otherwise assumed by the Debtor and assigned to the Liquidation Trust, any Executory Contract or Unexpired Lease that remains, as of the Effective Date, the subject of a pending notice of proposed or potential assumption and assignment issued in connection with any Asset Sale shall be deemed rejected as of such date to the extent not assumed and assigned to the applicable purchaser in connection with such Asset Sale.

Except as otherwise previously approved by an order of the Bankruptcy Court, entry of the Confirmation Order by the Bankruptcy Court shall constitute an order, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, approving the assumptions and assignments and the rejections of such Executory Contracts and Unexpired

Leases as set forth in the preceding paragraph. Unless otherwise indicated herein, assumptions and assignments, and rejections, of Executory Contracts and Unexpired Leases pursuant to this Plan shall be effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to this Plan or by Bankruptcy Court order and not assigned to a third party on or before the Effective Date shall vest in and be fully enforceable by the Liquidation Trust in accordance with its terms, except as such terms may have been modified by the provisions of this Plan or any order of the Bankruptcy Court authorizing its assumption pursuant to section 365 of the Bankruptcy Code; provided that if an assignment is pending as of the Effective Date, the Liquidation Trustee shall be authorized to take any and all actions necessary to implement such assignment.

To the maximum extent permitted by law, to the extent any provision (including any "change of control" provision) in any Executory Contract or Unexpired Lease assumed pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease, then such provision shall be deemed modified such that the assumption and assignment contemplated by this Plan shall not entitle the counterparty thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto, except for asserting and pursuing a Cure Amount Claim. Notwithstanding anything to the contrary in this Plan, the Debtor reserves the right to alter, amend, modify or supplement the Plan Supplement prior to the Effective Date on no less than three days' notice to any counterparty to an Executory Contract or Unexpired Lease affected thereby.

**B.      Cure of Defaults for Executory Contracts and Unexpired Leases Assumed by the Liquidation Trust**

With respect to any Executory Contract or Unexpired Lease assumed by the Liquidation Trust, any Cure Amount Claim shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Allowed amount of such Cure Amount Claim in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to any particular Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding: (a) the Allowed amount of any Cure Amount Claim; (b) the ability of the Liquidation Trust or another assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed; or (c) any other matter pertaining to assumption, no payments on account of the Cure Amount Claim shall be made until such dispute is resolved by a Final Order. By [ · ], 2019, the Debtor shall distribute, or cause to be distributed, notices of proposed assumption and proposed amounts of Cure Amount Claims to the applicable counterparties. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption and assignment or the related amount of the Cure Amount Claim must be Filed, served and actually received by the Debtor by 11:59 p.m. (prevailing Central time) on [ · ], 2019. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption and assignment or Cure Amount Claim will be deemed to have assented to such assumption and assignment or Cure Amount Claim.

Payment of the Allowed Cure Amount Claim upon the assumption and assignment of any Executory Contract or Unexpired Lease pursuant to this Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, under such Executory Contract or Unexpired Lease occurring at any time prior to the effective date of the assumption and assignment. Any proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned and with respect to which the Allowed Cure Amount Claim has been paid shall be deemed disallowed and expunged without further notice, action, order or approval of the Bankruptcy Court.

**C.      Claims Based on Rejection of Executory Contracts and Unexpired Leases**

Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of any Executory Contracts and Unexpired Leases pursuant to this Plan must be Filed with the Claims and Noticing Agent within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. Any proofs of Claim arising from the rejection of any Executory Contracts and Unexpired Leases that are not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtor or the Liquidation Trust without the need for any objection by the Debtor or the Liquidation Trust or further notice to or action, order, or approval of the Bankruptcy Court. All

Allowed Claims arising from the rejection of any Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Section II hereof.

The Liquidation Trust reserves the right to object to, settle, compromise or otherwise resolve any Claim Filed on account of a rejected Executory Contract or Unexpired Lease.

**Holders of Claims arising from the rejection of Executory Contracts and Unexpired Leases with respect to which no proof of Claim is timely Filed will be forever barred from asserting a Claim against the Debtor, the Estate, the Liquidation Trust or the property of any of the foregoing, unless otherwise expressly allowed by the Bankruptcy Court.**

**D.      Contracts and Leases Entered Into After the Petition Date**

Contracts and leases, other than the New MSA, entered into or assumed by the Debtor after the Petition Date that are not assigned to a purchaser of the Assets or the Liquidation Trust shall be considered repudiated by the Debtor as of the Effective Date, and the counterparties to such contracts, if they believe that such repudiation constitutes a breach of such contract or lease, must File a Claim within 30 days of the Effective Date in accordance with this Plan or have their rights forever satisfied, settled, released, and discharged.

**E.      Insurance Policies**

All rights of the Debtor under any Insurance Policies under which it is an Insured shall automatically become vested in the Liquidation Trust as of the Effective Date without necessity for further approvals or orders. To the extent that any such Insurance Policies are deemed Executory Contracts, then, unless such Insurance Policies have been rejected pursuant to an order of the Bankruptcy Court (including the Confirmation Order), notwithstanding anything to the contrary in this Plan, this Plan shall constitute a motion to assume and assign to the Liquidation Trust, permit to "ride through" or ratify such Insurance Policies.  Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute both approval of such assumption and assignment pursuant to section 365 of the Bankruptcy Code and a finding by the Bankruptcy Court that such assumption and assignment is in the best interests of the Estate.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed upon by the parties prior to the Effective Date, no payments shall be required to cure any defaults existing as of the Confirmation Date with respect to any Insurance Policy assumed and assigned to the Liquidation Trust pursuant to Section IV.E.  Each applicable Insurer is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Chapter 11 Case, this Plan or any provision within this Plan, including the treatment or means of liquidation set out within this Plan for any insured Claims or Causes of Action.  Nothing in this Plan shall impair the rights of the Liquidation Trust with respect to (or affect the coverage under) any D&O Insurance Policy that provides liability coverage for officers, directors, and other fiduciaries of the Debtor and its Affiliates; provided, however, that Insurance Policies shall *only* include any insurance policies, insurance settlement agreements, coverage-in-place agreements, and other agreements, documents, or instruments relating to the provision of insurance bound by Vortus Investments, L.P. or any of its Affiliates (other than the Debtor) for the benefit of any Person employed by Vortus Investments, L.P. or any of its Affiliates (other than the Debtor) in connection with any such Person's service as an manager, director, officer, or similar capacity of the Debtor or any of its Affiliates if the Creditors' Committee does not object to Confirmation of the Plan and the transactions contemplated thereby, or the WET Settlement.

**F.      Reservation of Rights**

Neither the identification of any contract or lease as assumed, assumed and assigned or rejected in connection with the Asset Sales nor anything contained in this Plan or the Plan Supplement, nor the Debtor's delivery of a notice of proposed assumption and proposed Cure Amount Claim to an applicable counterparty shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired on the Effective Date, the Liquidation Trustee shall have 30 days following entry of a Final Order resolving such dispute to determine whether to alter the treatment of such contract or lease hereunder.

## ARTICLE V
## PROVISIONS REGARDING DISTRIBUTIONS

**A.      Distributions for Claims Allowed as of the Effective Date**

Except as otherwise provided in this Article V, Distributions to be made on the Effective Date to Holders of Allowed Claims as provided by Article II or this Article V shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable by the Debtor or the Liquidation Trustee.

**B.      Method of Distributions to Holders of Claims**

All Distributions to be made under this Plan shall be made by the Disbursing Agent or such Third Party Disbursing Agents as the Liquidation Trustee may employ in its sole discretion. Each Disbursing Agent may serve without bond, and any Disbursing Agent may employ or contract with other entities to assist in or make the Distributions required by this Plan, if approved by the Liquidation Trustee.

**C.      Disbursing Agent**

**1.      Powers of the Disbursing Agent**

The Disbursing Agent shall be empowered to:  (a) make all Distributions contemplated in this Plan; (b) effectuate all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan; and (c) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

**2.      Expenses Incurred on or After the Effective Date**

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including Taxes) and any reasonable compensation to the Disbursing Agent for services rendered shall be paid in Cash by the Liquidation Trustee from the Liquidation Trust Assets pursuant to the terms of the Liquidation Trust Agreement.

**3.      No Liability**

Except on account of gross negligence or willful misconduct, the Disbursing Agent shall have no (a) liability to any party for actions taken in accordance with this Plan or in reliance upon information provided to it in accordance with this Plan or (b) obligation or liability to any party who does not hold a Claim against the Debtor as of the Distribution Record Date or any other date on which a Distribution is made or who does not otherwise comply with the terms of this Plan.

**D.      Disputed Claims Reserves**

**1.      Establishment of Disputed Claims Reserves**

On the Effective Date or as soon thereafter as is reasonably practicable, the Liquidation Trustee shall establish Disputed Claims Reserves for Disputed Administrative Expense, Priority, Priority Tax and General Unsecured Claims, which reserves shall be administered by the Liquidation Trustee. The Liquidation Trustee shall reserve, in Cash or other property, the expected recovery that such Disputed Claim would receive if it were ultimately determined to be an Allowed Claim (or such lesser amount as may be determined or estimated by the Bankruptcy Court after notice and a hearing in accordance with Article VI hereof) with respect to each such Disputed Claim. For the avoidance of doubt, the Liquidation Trustee may administer the Disputed Claims Reserves by book entry.

2.      **Maintenance of Disputed Claims Reserves**

To the extent that the property placed in a Disputed Claims Reserve consists of Cash, that Cash shall be deposited in an interest-bearing account.  The property in the Disputed Claims Reserves shall be held in trust for the benefit of the Holders of Claims ultimately determined to be Allowed in each applicable Class.  Each Disputed Claims Reserve shall be closed by the Liquidation Trust when all Distributions required to be made under this Plan to the Holders of Claims in the applicable Class will have been made in accordance with the terms of this Plan.  Upon closure of a Disputed Claims Reserve, all Cash (including any investment yield on the Cash) and other property held in that Disputed Claims Reserve shall be distributed in accordance with this Plan or the Liquidation Trust Agreement, as applicable.

E.      **Investment of Trust Accounts**

To assist in making distributions under this Plan, the applicable Trust Accounts may be held in the name of the Liquidation Trustee or in the name of one or more Third Party Disbursing Agents for the benefit of Holders of Allowed Claims under this Plan, or a secondary Trust Account may be created in the name of the Third Party Disbursing Agent for the purpose of making disbursements.  The Liquidation Trustee shall invest, or shall direct the Third Party Disbursing Agents to invest, Cash in the Trust Accounts, subject to the limitations established by the Liquidation Trust Agreement; provided, however, that should the Liquidation Trustee determine, in its sole discretion, that the administrative costs associated with such investment will exceed the return on such investment, it may direct the Third Party Disbursing Agent not to invest such Cash.  Distributions of Cash from accounts held by Third Party Disbursing Agents will include a Pro Rata share of any interest or other proceeds, if any, from such investment of Cash, net of any Taxes payable with respect thereto.

F.      **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

1.      **Delivery of Distributions**

Distributions to holders of Allowed Claims will be made by a Disbursing Agent:  (a) at the addresses set forth on the respective proofs of Claim Filed by Holders of such Claims or request for payment of Administrative Expense Claim, as applicable; (b) at the address for a Claim transferee set forth in a valid and timely notice of transfer of Claim Filed with the Bankruptcy Court; (c) at the addresses set forth in any written notice of address change Filed with the Bankruptcy Court or delivered to the Disbursing Agent after the date of Filing of any related proof of Claim; (d) at the addresses reflected in the Debtor's Schedules if no proof of Claim has been Filed and the Disbursing Agent has not received a written notice of a change of address; or (e) if clauses (a) through (d) are not applicable, at the last address directed by such holder after such Claim becomes an Allowed Claim.

2.      **Delivery of Distributions on Secured Parties Claims and Secured Parties Deficiency Claims**

Notwithstanding any provision of this Plan to the contrary, all distributions on account of Allowed Secured Parties Claims and Allowed Secured Parties Deficiency Claims shall be made to or at the direction of the Prepetition Agent for further distribution to the Holders of Secured Parties Claims and Holders of Secured Parties Deficiency Claims in accordance with the Credit Agreement and this Plan, and shall be deemed completed when made to or at the direction of the Prepetition Agent, which shall be deemed the Holder of its respective portion of the Allowed Secured Parties Claims and Allowed Secured Parties Deficiency Claims for purposes of distributions to be made hereunder.  As soon as practicable following any delivery of distributions to the Prepetition Agent on account of Allowed Secured Parties Claims and Allowed Secured Parties Deficiency Claims, the Prepetition Agent shall arrange to deliver any such distributions to or on behalf of their respective Holders of Secured Parties Claims and Holders of Secured Parties Deficiency Claims.

3.      **Undeliverable Distributions Held by Disbursing Agents**

a.      **Holding of Undeliverable Distributions**

If any Distribution to a Holder of an Allowed Claim is returned to a Disbursing Agent as undeliverable, no

further Distributions will be made to such Holder unless and until the applicable Disbursing Agent is notified by written certification of such Holder's then-current address. Nothing contained in the Plan shall require the Disbursing Agent or Liquidation Trustee to attempt to locate any holder of an Allowed Claim.

### b.      After Distributions Become Deliverable

On each Distribution Date, the applicable Disbursing Agent will make all Distributions that became deliverable to holders of Allowed Claims after the most recent Distribution Date; provided, however, that the applicable Disbursing Agent, in its sole discretion, may establish a record date prior to each Distribution Date, such that only Claims allowed as of the record date will participate in such periodic Distribution. Notwithstanding the foregoing, the applicable Disbursing Agent reserves the right, if it determines a Distribution on any Distribution Date is uneconomical or unfeasible, or is otherwise unadvisable, to postpone a Distribution Date.

### c.      Failure to Claim Undeliverable Distributions

Any Holder of an Allowed Claim that does not assert its right to an undeliverable Distribution prior to the date that is ninety (90) days prior to the Final Distribution Date will be forever barred from asserting any such Claim against the Debtor, the Liquidation Trustee, their respective property or the Trust Accounts. In such cases, (a) the undeliverable Distributions shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code, (b) the Allowed Claims with respect to such Distributions shall be automatically cancelled, (c) the right of the Holders entitled to those Distributions shall be discharged and forever barred, and (d) the undeliverable Distributions will be maintained in the applicable Trust Account for redistribution to other claimants entitled to Distribution from such Trust Account.

## G.      Distribution Record Date

As of 5:00 p.m. (prevailing Central Time) on the Distribution Record Date, the transfer registers for Claims shall be closed. The Disbursing Agent shall have no obligation to recognize the transfer or sale of any Claim that occurs after such time on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make Distributions only to those Holders who are Holders of Claims as of 5:00 p.m. on the Distribution Record Date.

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to 5:00 p.m. (prevailing Central Time) on the Distribution Record Date shall be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

## H.      *De Minimis* Distributions

No Distribution of less than $25 shall be made by the Disbursing Agent. Each such Distribution shall revest in the Liquidation Trust for distribution to Holders of other Allowed Claims in the applicable Class in accordance with this Plan. Whenever a payment of a fraction of a dollar would otherwise be called for, the actual payment may reflect a rounding down to the nearest whole dollar.

## I.      Compliance with Tax Requirements

In connection with this Plan, to the extent applicable, the Debtor or the Liquidation Trustee, as applicable, shall comply with all Tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to generate sufficient funds to pay applicable withholding Taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms the Disbursing Agent believes are reasonable and appropriate. The Disbursing Agent shall have the right to allocate all Distributions in

compliance with applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.

The Disbursing Agent shall be authorized to require each Holder of a Claim to provide it with an executed Form W-9, Form W-8 or other appropriate tax form or documentation as a condition precedent to being sent a Distribution. The applicable Disbursing Agent shall provide advance written notice of such requirement to each Holder of a Claim affected thereby. The notice shall provide each Holder of a Claim with a specified time period after the date of mailing of such notice to provide an executed Form W-9, Form W-8 or other tax form or documentation to the Disbursing Agent. If a Holder of an Allowed Claim does not provide the Disbursing Agent with an executed Form W-9, Form W-8 or other tax form or documentation within the time period specified in such notice, or such later time period agreed to by the Disbursing Agent in writing in its discretion, then the Disbursing Agent, in its sole discretion, may (a) make a Distribution net of any applicable withholding, or (b) determine that such Holder shall be deemed to have forfeited the right to receive any Distribution, in which case, any such Distribution shall revert to the Debtor or the Liquidation Trust, as applicable, for Distribution on account of other Allowed Claims and the Claim of the Holder originally entitled to such Distribution shall be waived, discharged and forever barred without further order of the Bankruptcy Court.

**J.**      **Manner of Payment Under the Plan**

Unless a Holder of an Allowed Claim and the Disbursing Agent otherwise agree, any Distribution to be made in Cash shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank. Cash payments to foreign creditors may, in addition to the foregoing, be made at the option of the Disbursing Agent in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**K.**      **Time Bar to Cash Payments**

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within 180 days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Disbursing Agent by the Entity to whom such check was originally issued. Any claims in respect of such voided check shall be discharged and forever barred and such unclaimed Distribution shall be re-allocated as set forth in Section V.F.3 of this Plan, notwithstanding any federal or state escheat laws to the contrary.

**L.**      **Setoffs**

Except with respect to Claims satisfied, settled, released, and discharged pursuant to this Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, the Disbursing Agent may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Claim (and the Distributions to be made on account of such Claim), counterclaims, rights and causes of action of any nature that the Debtor may hold against the Holder of such Claim: provided, however, that the failure to effectuate such a setoff shall not constitute a waiver or release by the Debtor, the Disbursing Agent or the Liquidation Trust of any Causes of Action that the Debtor or the Liquidation Trust may possess against the Holder of a Claim.

**M.**      **Allocation Between Principal and Accrued Interest**

Interest shall not accrue on any Holder's Claim entitled to a Distribution from Liquidation Trust Assets in respect of the period from the Petition Date to the date a final Distribution is made on such Claim. To the extent that any Allowed Claim entitled to a Distribution from Liquidation Trust Assets consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such Distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

**N.**      **Distributions to Holders of Disputed Claims**

Notwithstanding any other provision of this Plan: (a) no Distributions will be made on account of a Disputed Claim until such Claim becomes an Allowed Claim, if ever; and (b) except as otherwise agreed to by the relevant parties, no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, any Distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. On the Distribution Date that is at least 30 days after a Disputed Claim becomes an Allowed Claim (or such lesser period as the Disbursing Agent may determine), the Holder of such Claim shall receive any Distribution to which such Holder would have been entitled under the Plan as of the Effective Date (including any Distribution such Holder would have been entitled to on the Distribution Date on which such Holder is receiving its initial Distribution) if such claim had been Allowed as of the Effective Date, without any interest to be paid on account of such Claim.

**O.**      **Claims Paid or Payable by Third Parties**

     **1.**      **Claims Paid by Third Parties**

To the extent that the Holder of an Allowed Claim receives a Third Party Payment, the Liquidation Trustee shall be authorized to reduce, for the purposes of Distribution, the Allowed amount of such Claim by the amount of the Third Party Payment, and such Claim shall be disallowed or deemed satisfied, as applicable, to the extent of the Third Party Payment without an objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

     **2.**      **Claims Payable by Insurance**

No Distributions shall be made on account of any Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that any of the Debtor's insurers agrees to satisfy in full or in part an Allowed Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any other Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VI**
**DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS**

**A.**      **Allowance of Claims**

After the Effective Date, the Liquidation Trustee shall have any and all rights and defenses that the Debtor had with respect to any Claim immediately before the Effective Date, except with respect to any Claim deemed Allowed or satisfied, settled, released, and discharged under this Plan. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

Any Claim that has been listed in the Schedules as disputed, contingent or unliquidated, and for which no proof of Claim has been timely Filed, is not considered Allowed and shall be expunged without further action and without any further notice to or action, order or approval of the Bankruptcy Court.

**B.      Prosecution of Objections to Claims**

**1.      Authority to Prosecute and Settle Claims**

Except as otherwise specifically provided in this Plan, the Debtor, prior to the Effective Date, and the Liquidation Trustee, after the Effective Date, shall have the sole authority to:  (a) File, withdraw or litigate to judgment, objections to Claims; (b) settle or compromise any Disputed Claim (other than a Professional Fee Claim) without any further notice to or action, order or approval by the Bankruptcy Court; and (c) direct the Claims and Noticing Agent to adjust the claims register to reflect any such resolutions without any further notice to or action, order or approval by the Bankruptcy Court.

**2.      Pending Objections**

To the extent that the Debtor has Filed objections to Claims that remain pending as of the Effective Date, the Liquidation Trustee shall be substituted as the objecting party without further action of the parties or order of the Court.

**3.      Application of Bankruptcy Rules**

To facilitate the efficient resolution of Disputed Claims, the Liquidation Trustee shall, notwithstanding Bankruptcy Rule 3007(c), be permitted to File omnibus objections to Claims.

**4.      Authority to Amend Schedules**

The Debtor and the Liquidation Trustee, as applicable, will have the authority to amend the Schedules with respect to any Claim and to make distributions based on such amended Schedules (if no proof of Claim is timely Filed in response thereto) without approval of the Bankruptcy Court.  If any such amendment to the Schedules reduces the amount of a Claim or changes the nature or priority of a Claim, the Debtor or the Liquidation Trustee, will provide the Holder of such Claim with notice of such amendment and such parties will have 30 days to File an objection to such amendment in the Bankruptcy Court.

**C.      Estimation of Claims**

The Debtor, prior to the Effective Date, and the Liquidation Trustee after the Effective Date, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to such Claim or during the appeal relating to such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under this Plan (including for purposes of Distributions), and the Debtor or the Liquidation Trustee (as the case may be) may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim.

**D.      Claims Subject to Pending Actions**

Except as otherwise provided in this Plan, any Claims held by Entities against which the Debtor, the Liquidation Trustee or another party in interest Files a complaint constituting an Avoidance Action, shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due as a result, if any, have been turned over by that Entity to the Liquidation Trust.

**E.      Offer of Judgment**

The Debtor, before the Effective Date, and the Liquidation Trustee, after the Effective Date, are authorized to serve upon a Holder of a Disputed Claim an offer to allow judgment to be taken on account of such Disputed Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.  To the extent the Holder of a Disputed Claim must pay the costs incurred by the Debtor after the making of such offer, the Debtor is entitled to set off such amounts against the amount of any Distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court.

**ARTICLE VII**
**CONFIRMATION OF THE PLAN**

**A.      Conditions Precedent to Confirmation**

The Bankruptcy Court shall not be requested to enter the Confirmation Order unless and until the following conditions have been satisfied or duly waived pursuant to Section VII.C below:

1.      The Disclosure Statement Order shall have been entered and shall not have been stayed, modified, or vacated on appeal.

2.      This Plan and the Confirmation Order shall be in form and substance acceptable to the Debtor and the Prepetition Agent.

**B.      Conditions Precedent to the Effective Date**

The Effective Date will not occur, and the Plan will not be consummated, unless and until the following conditions have been satisfied or duly waived pursuant to Section VII.C below:

1.      The Confirmation Order shall be in full force and effect, and no stay thereof shall be in effect.

2.      All other documents and agreements necessary to implement this Plan on the Effective Date, including the Liquidation Trust Agreement, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Unit in accordance with applicable laws, and all other actions required to be taken in connection with the Effective Date shall have occurred.

3.      The Liquidation Trustee shall have been appointed and have accepted his or her appointment and the Liquidation Trust Agreement shall have been executed.

4.      The Trust Accounts shall be created and funded as set forth herein.

5.      The Professional Fee Escrow Account shall be created and funded as set forth herein.

6.      All statutory fees and obligations then due and payable to the U.S. Trustee shall have been paid in full.

**C.      Waiver of Conditions to Confirmation or the Effective Date**

Each condition to Confirmation set forth in Section VII.A and each condition to the Effective Date set forth in Section VII.B, except for Section VII.B.1, may be waived in whole or in part at any time by the Debtor and the Prepetition Agent (as applicable) without an order of the Bankruptcy Court.

**D.      Notice of Occurrence of Effective Date**

Within five (5) days after occurrence of the Effective Date, the Debtor shall file with the Court and serve a Notice of Occurrence of Effective Date stating the date on which the Effective Date occurred.

E.      **Effect of Nonoccurrence of Conditions to the Effective Date**

The Debtor reserves the right to seek to withdraw this Plan at any time prior to the Effective Date.  If this Plan is withdrawn by the Debtor:  (1) each of this Plan and the Confirmation Order shall be null and void in all respects, including with respect to (a) the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases and (b) the releases described in Section VII.F.4; and (2) nothing contained in this Plan or the Confirmation Order shall (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor or (b) prejudice in any manner the rights of the Debtor or any other party in interest.

F.      **Nonconsensual Confirmation**

Because Classes 4, 5 and 6 are conclusively presumed to have rejected this Plan, the Debtor requests that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Classes, and this Plan shall constitute a motion for such relief.  The Debtor reserves the right, without any delay in the occurrence of the Confirmation Hearing or the Effective Date, to amend this Plan in accordance with Section IX.A.

G.      **Effect of Confirmation**

1.      **Dissolution of Official Committees**

Upon the Effective Date:  (a) the Creditors' Committee shall be dissolved; (b) the current and former members of the Creditors' Committee and their respective Representatives, shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Case; and (c) the Professionals retained by the Creditors' Committee will not be entitled to assert any Professional Fee Claims for any services rendered or expenses incurred after the Effective Date in their capacity as Professionals for the Creditors' Committee, except to the extent necessary to (i) prepare, File and, if necessary, litigate final applications for compensation and (ii) object to final fee applications Filed by other Professionals.

2.      **Comprehensive Settlement of Claims and Controversies**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, this Plan incorporates an integrated compromise and settlement designed to achieve a beneficial and efficient resolution of the Chapter 11 Case for all parties in interest.  Accordingly, in consideration of the Distributions and other benefits provided under this Plan, the provisions of this Plan, including the releases set forth in Section VII.F.4 hereof, shall constitute a good-faith compromise and settlement of all Claims, disputes and controversies relating to the rights that a Holder of a Claim may have against the Debtor or with respect to any Distribution to be made pursuant to this Plan on account of any such Claim.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims, disputes, or controversies provided for herein, and the Bankruptcy Court's determination that such compromises and settlements are in the best interests of the Debtor, its Estate, creditors and all other parties in interest, and are fair, equitable and within the range of reasonableness.  If the Effective Date does not occur, the settlements set forth herein shall be deemed to have been withdrawn without prejudice to the respective positions of the parties.

3.      **Exculpation**

**Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Claim or Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the TSA, the Credit Agreement, the DIP Facility, the Disclosure Statement, this Plan, the Asset Sales, the WET Settlement, the RRC Settlement, the Creditor Compromise, or any Dissolution Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the TSA, the Credit Agreement, the DIP Facility, the Disclosure Statement or this Plan, the Asset Sales, the Filing of the Chapter 11 Case, the the**

WET Settlement, RRC Settlement, the Creditor Compromise, the pursuit of Confirmation, the administration and implementation of this Plan, or the distribution of property under this Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan. For the avoidance of doubt, nothing herein or in the Plan shall be construed as an exculpation of WEC, OpCo, or such Entities' Representatives including to the extent applicable, in their respective capacities as Debtor Representatives, including, but not limited to, Mr. Perry Reed in any capacity.

   4.     Releases

          a.     Releases by the Debtor

          Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Plan Effective Date, each Released Party is deemed satisfied, settled, released and discharged by the Debtor and its Estate from any and all Claims and Causes of Action, including any derivative claims asserted on behalf of the Debtor, that the Debtor or its Estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, the Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's capital structure, the assertion or enforcement of rights and remedies against the Debtor, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtor and an Affiliate, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the TSA, the Credit Agreement, the DIP Facility, the Disclosure Statement, the Plan, the Asset Sales, the WET Settlement, the RRC Settlement, the Creditor Compromise, or any contract, instrument, release, or other agreement or document created or entered into in connection with the TSA, the Credit Agreement, the DIP Facility, the Disclosure Statement, the Plan, the Asset Sales, the Filing of the Chapter 11 Case, the pursuit of confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance or distribution of property pursuant to the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Effective Date. Notwithstanding the inclusion of any Released Parties as a potential party to any transferred Causes of Action or retained Causes of Action (including, for each, Avoidance Actions), such parties shall remain Released Parties. Nothing in the foregoing Release shall be construed to preclude an Entity from naming the Debtor or its Estate as a nominal defendant for purposes of pursuing derivative claims asserted on behalf of the Debtor against non-Released Parties. For the avoidance of doubt, nothing herein or in the Plan shall be construed as release of WEC, OpCo, or such Entities' Representatives including to the extent applicable, in their respective capacities as Debtor Representatives, including, but not limited to, Mr. Perry Reed in any capacity.

          Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Plan Effective Date obligations of any party or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases herein, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the releases herein are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims satisfied, settled, released, and discharged herein; (3) in the best interests of the Debtor and all holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after reasonable investigation by the Debtor and after notice and opportunity for hearing; and (6) a bar to the Debtor asserting any claim satisfied, settled, released, and discharged herein against any of the Released Parties.

b.        **Releases by Holders of Claims and Interests**

As of the Plan Effective Date, each Releasing Party is deemed to have satisfied, settled with, released, and discharged each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtor, that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtor and an affiliate, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the TSA, the Credit Agreement, the DIP Facility, the Disclosure Statement, the Plan, the Asset Sales, the WET Settlement, the RRC Settlement, the Creditor Compromise, or any, contract, instrument, release, or other agreement or document created or entered into in connection with the TSA, the Credit Agreement, the DIP Facility, the Disclosure Statement, the Plan, the Asset Sales, the filing of the Chapter 11 Case, the pursuit of confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Effective Date.  Nothing in the foregoing Release shall be construed to preclude an Entity from naming the Debtor or its Estate as a nominal defendant for purposes of pursuing derivative claims asserted on behalf of the Debtor against non-Released Parties. For the avoidance of doubt, nothing herein or in the Plan shall be construed as release of WEC, OpCo, or such Entities' Representatives including, in their respective capacities as Debtor Representatives, including, but not limited to, Mr. Perry Reed in any capacity.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Plan Effective Date obligations of any party or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases of holders of Claims and interests, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the release herein is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims satisfied, settled, released, and discharged by the Releasing Parties; (3) in the best interests of the Debtor and all holders of Claims and interests; (4) fair, equitable and reasonable; (5) given and made after notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any Claim or Cause of Action satisfied, settled, released, and discharged herein against any of the Released Parties.

5.        **Injunction**

Except as otherwise expressly provided in this Plan or for Distributions required to be paid or delivered pursuant to this Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to this Plan, shall be discharged pursuant to this Plan, or are subject to exculpation pursuant to section VII.F.3 of this Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Released Parties or the Exculpated Parties (to the extent of the exculpation provided pursuant to section VII.F.3 of this Plan with respect to the Exculpated Parties):  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any

manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests satisfied, settled, released, and discharged pursuant to this Plan. Nothing in the foregoing Release shall be construed to preclude an Entity from naming the Debtor or its Estate as a nominal defendant for purposes of pursuing derivative claims asserted on behalf of the Debtor against non-Released Parties. For the avoidance of doubt, nothing herein or in the Plan shall be construed to enjoin any action or proceeding against of WEC, OpCo, or such Entities' Representatives including to the extent applicable, in their respective capacities as Debtor Representatives, including, but not limited to, Mr. Perry Reed in any capacity.

        6.        Statement of the Committee

The Committee believes that the releases of WET and its affiliates are not in the best interests of the Estate.  Further, the Committee objects to any such Release to the extent that such release is a non-consensual third party release.  The Debtor strongly disagrees with the Committee's position.

**H.**        **Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and its Representatives will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

**I.**        **New MSA and OpCo Incentive Program**

Immediately upon the occurrence of the Effective Date, each Eligible Employee (as defined in the New MSA) of OpCO, upon a determination by the CRO that such employee is not an Ineligible Employee (as defined in the New MSA) shall be entitled to an award pursuant to the New MSA based on performance during the period between the Petition Date and the Effective Date, as determined by the CRO and in accordance with the terms of the New MSA.

**ARTICLE VIII**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

        A.        Allow, disallow, estimate, determine, liquidate, reduce, classify, re-classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of (1) any request for payment of any Administrative Expense Claim and (2) any and all objections to the amount, allowance, priority or classification of Claims or Interests;

        B.        Grant or deny any applications for allowance of any Professional Fee Claims for periods ending on or before the Effective Date;

        C.        Resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any Cure Amount Claims;

D.      Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

E.      Decide or resolve any motions, adversary proceedings, contested matters and any other matters Filed in the Bankruptcy Court involving the Debtor or the Liquidation Trust that may be pending on the Effective Date or brought thereafter;

F.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Chapter 11 Case, the Asset Sales, this Plan, the Disclosure Statement or the Confirmation Order;

G.      Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of this Plan, the Confirmation Order or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to this Plan, the Confirmation Order or the Asset Sales;

H.      Modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, the Disclosure Statement, the Asset Sales, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with this Plan, or the Asset Sales, in such manner as may be necessary or appropriate to consummate this Plan and the transactions contemplated hereby;

I.      Hear and determine any matter, case, controversy, suit, dispute, or Cause of Action regarding the existence, nature and scope of the releases, injunctions and exculpation provided under this Plan, and issue injunctions, enforce the injunctions contained in this Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to implement, enforce or restrain interference by any Entity with respect to the consummation, implementation or enforcement of this Plan or the Confirmation Order, including the releases, injunctions, and exculpation provided under this Plan;

J.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or if Distributions pursuant to this Plan are enjoined or stayed;

K.      Determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, the Disclosure Statement, the Confirmation Order, or the Asset Sales;

L.      Enforce, clarify or modify any orders previously entered by the Bankruptcy Court in the Chapter 11 Case;

M.      Enter a final decree closing the Chapter 11 Case;

N.      Determine matters concerning state, local and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for Taxes;

O.      Assist in recovery of all assets of the Debtor and its Estate, wherever located; and

P.      Hear any other matter over which the Bankruptcy Court has jurisdiction.

# ARTICLE IX
## MISCELLANEOUS PROVISIONS

**A.      Modification of the Plan**

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code an, the Debtor reserves the right to alter, amend or modify this Plan before the Effective Date, provided that no such alteration, amendment or modification shall be materially adverse to the Prepetition Agent or the Secured Lenders or the Creditors' Committee (solely to the extent that the Creditors' Committee supports, and does not object to, Confirmation of the Plan and the transactions contemplated thereby) without the applicable Entity's consent.  Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court.  Holders of Claims that have accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented, if the proposed amendment, modification or supplement does not materially and adversely change the treatment of such Claim; provided, however, that any Holders of Claims who were deemed to accept this Plan because such Claims were Unimpaired shall continue to be deemed to accept this Plan only if, after giving effect to such amendment, modification or supplement, such Claims continue to be Unimpaired.

**B.      Revocation of the Plan or Non-Occurrence of the Confirmation Date or Effective Date**

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date or at the Confirmation Hearing.  If this Plan is revoked or withdrawn, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be null and void in all respects solely with respect to the Debtor, and nothing contained in this Plan shall:  (a) prejudice in any manner the rights of the Debtor or any other party in interest; (b) constitute a waiver or release of any claims by or against, or any interests in, any of the Debtor or any other Entity; or (c) constitute an admission of any sort by the Debtor or any other Entity.

**C.      Reservation of Rights Regarding Certain Matters**

If the requisite Classes do not vote to accept this Plan or the Bankruptcy Court does not confirm this Plan, the Debtor reserves its rights to exercise its fiduciary duties regarding the resolution of the Chapter 11 Case.

**D.      Exhibits and Schedules**

All exhibits and schedules to this Plan, including the Plan Supplement, are incorporated into and constitute a part of this Plan as if set forth herein.

**E.      Severability**

If prior to the entry of the Confirmation Order, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, at the request of the Debtor, alter and interpret such term or provision to the extent necessary to render it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remaining terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**F.      Successors and Assigns**

Except as expressly provided otherwise in this Plan, the rights, benefits and obligations of any Person named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, Affiliate, representative, beneficiary or guardian, if any, of each Person.

G.      **Service of Documents**

Any pleading, notice or other document required by this Plan or the Confirmation Order to be served on or delivered to counsel to:   (1) the Debtor; (2) the Prepetition Agent and Secured Lenders;  or (3) the Creditors' Committee; must be sent via electronic mail, overnight delivery service, or hand delivery on:

1.      **The Debtor**

Weatherly Oil & Gas LLC
777 Taylor Street
Suite 902
Fort Worth, TX 76102
Attention:  Scott Pinsonnault
E-mail address:             scott.pinsonnault@ankura.com

with a copy, which shall not constitute notice, to:

Jackson Walker LLP
1401 McKinney Street
Suite 1900
Houston, TX  77010
Attention:  Matthew Cavenaugh
            Elizabeth C. Freeman
            Kristhy M. Peguero
E-mail address:             mcavenaugh@jw.com
                            efreeman@jw.com
                            kpeguero@jw.com

2.      **The Prepetition Agent and Secured Lenders**

Vinson & Elkins LLP
666 Fifth Avenue
26th Floor
New York, NY 10103
Attention:  David S. Meyer, Steven Zundell,  and Michael A. Garza
E-mail address:             dmeyer@velaw.com
                            szundell@velaw.com
                            mgarza@velaw.com

with a copy, which shall not constitute notice, to:

Vinson & Elkins LLP
1001 Fannin Street
Suite 2500
Houston, TX 77002
Attention:  Harry Allen Perrin
E-mail address:             hperrin@velaw.com

3.      **WET**

Weatherly East Texas, LLC c/o Vortus Investments
The Cassidy Building
407 Throckmorton Street
Suite 560

Fort Worth, Texas 76102
Attention: Frank Lamsens
Email address:          flamsens@vortus.com

with a copy, which shall not constitute notice, to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Email address:          gregory.pesce@kirkland.com

4.      **The Creditors' Committee**

Jones Walker LLP
Suite 2900
811 Main St
Houston, TX 77002
Attention: Joseph E. Bain
Email address:          jbain@joneswalker.com

-and-

Jones Walker LLP
201 St. Charles Ave
New Orleans, LA 70170-5100
Attention: Mark A. Mintz
Email address:          mmintz@joneswalker.com

**ARTICLE X**
**CONFIRMATION REQUEST**

The Debtor requests Confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

Dated:  July 11, 2019                          Respectfully submitted,

Weatherly Oil & Gas, LLC

By:     /s/  Scott Pinsonnault
Name:   Scott Pinsonnault
Title:  Chief Restructuring Officer

**<u>Exhibit A</u>**

**Schedule of Other Secured Claims**

| Class 2 - Other Secured Claims | Pre-Petition Claim Amount | Claim / Annual Amount | Notes |
|---|---|---|---|
| ANDERSON COUNTY TAX OFFICE | $65.17 | $390.99 | Claim #3 per EPIQ claims register. |
| ANGELINA COUNTY TAX COLLECTOR | $17,645.21 | $105,871.26 | Claim #12 per EPIQ claims register. |
| BOSSIER PARISH SHERIFF & | $211.75 | $1,270.48 | Estimate based on historical payments |
| BRAZOS COUNTY TAX COLLECTOR | $72.03 | $432.19 | Claim #4 per EPIQ claims register. |
| CADDO PARISH SHERIFF'S OFFICE | $24,126.14 | $144,756.85 | Estimate based on historical payments |
| CHEROKEE COUNTY APPRAISAL DISTRICT | $4,911.74 | $29,470.44 | Claim #5 per EPIQ claims register. |
| CHEROKEE COUNTY TAX ASSESSOR COLLECTOR | $2,078.72 | $12,472.34 | Claim #6 per EPIQ claims register. |
| DEVERS ISD TAX COLLECTOR | $19.41 | $116.43 | Estimate based on historical payments |
| FRANKLIN ISD | $23,354.84 | $140,129.04 | Claim #91 per EPIQ claims register. |
| FREESTONE COUNTY TAX ASSESSOR-COLLECTOR | $21.58 | $129.46 | Claim #23 per EPIQ claims register. |
| GREGG COUNTY TAX | $833.57 | $5,001.42 | Claim #18 per EPIQ claims register. |
| HENDERSON COUNTY TAX OFFICE | $33.34 | $200.05 | Claim #7 per EPIQ claims register. |
| HOUSTON COUNTY APPRAISAL DISTRICT | $1,606.90 | $9,641.38 | Estimate based on historical payments |
| HOUSTON COUNTY TAX COLLECTOR | $2,545.01 | $15,270.07 | Estimate based on historical payments |

| | | | |
|---|---|---|---|
| JASPER COUNTY TAX COLLECTOR | $839.44 | $5,036.66 | Claim #11 per EPIQ claims register. |
| LEON COUNTY TAX COLLECTOR | $162.70 | $976.22 | Claim #8 per EPIQ claims register. |
| LEON ISD TAX COLLECTOR | $79.08 | $474.48 | Claim #9 per EPIQ claims register. |
| LIBERTY COUNTY TAX COLLECTOR | $13.18 | $79.09 | Estimate based on historical payments |
| MADISON COUNTY TAX COLLECTOR | $10.28 | $61.70 | Claim #10 per EPIQ claims register. |
| NACOGDOCHES CENTRAL APPR DIST | $11,956.74 | $71,740.45 | Estimate based on historical payments |
| NATCHITOCHES PARISH SHERIFF/TAX OFFICE | $1,290.15 | $7,740.90 | Estimate based on historical payments |
| NAVARRO COUNTY TAX COLLECTOR | $98.19 | $589.15 | Claim #82 per EPIQ claims register. |
| NORMANGEE ISD | $16.50 | $98.99 | Claim #31 per EPIQ claims register. |
| PARISH OF DESOTO | $6,480.27 | $38,881.61 | Estimate based on historical payments |
| PINE TREE I.S.D. TAX OFFICE | $89.13 | $534.76 | Estimate based on historical payments |
| RAINS COUNTY APPRAISAL DISTRICT | $61.51 | $369.08 | Claim #85 per EPIQ claims register. |
| ROBERTSON COUNTY | $34,179.71 | $205,078.27 | Estimate based on historical payments |
| RUSK COUNTY TAX COLLECTOR | $218.52 | $1,311.09 | Claim #16 per EPIQ claims register. |
| SABINE COUNTY TAX COLLECTOR | $1,109.65 | $6,657.87 | Claim #88 per EPIQ claims register. |

| | | | |
|---|---|---|---|
| SAN AUGUSTINE CO TAX COLLECTOR | $413.42 | $2,480.53 | Estimate based on historical payments |
| SHELBY COUNTY TAX OFFICE | $6,305.69 | $37,834.15 | Estimate based on historical payments |
| SLOCUM ISD | $94.03 | $564.17 | Claim #83 per EPIQ claims register. |
| SMITH COUNTY TAX ASSESSOR | $5,826.22 | $34,957.31 | Claim #1 per EPIQ claims register. |
| UPSHUR COUNTY TAX ASSESSOR COLLECTOR | $62.44 | $374.64 | Claim #84 per EPIQ claims register. |