

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
08/21/2019

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| WEATHERLY OIL & GAS, LLC,[1] | § | Case No. 19-31087 (MI) |
|  | § |  |
| Debtor. | § |  |
|  | § |  |
|  | § |  |

### ORDER APPROVING DEBTOR'S MOTION (A) AUTHORIZING THE
### SALE OF THE DEBTOR'S SLIGO SOUTH ASSETS FREE AND CLEAR OF LIENS,
### CLAIMS, INTERESTS, AND ENCUMBRANCES TO AETHON UNITED BR LP AND
### PEO HAYNESVILLE HOLDCO, LLC, (B) AUTHORIZING THE ASSUMPTION AND
### ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
### LEASES IN CONNECTION THEREWITH, AND (C) GRANTING RELATED RELIEF
[Relates To ECF No. 570]

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession

for entry of an order (this "Order"), (a) approving the form of Purchase and Sale Agreement by

and between Weatherly and Aethon United BR LP and PEO Haynesville Holdco, LLC

(collectively, the "Buyers" or "Aethon"), attached hereto as **Exhibit 1** (the "PSA"), which provides

for (a) the sale of certain of the Debtor's Sligo Field, Bossier Parish, Louisiana oil and gas assets

identified as the "Assets" in the PSA (the "Sligo South Assets") to Buyers in a private sale free

and clear of all liens, claims, interests, and encumbrances (as more fully defined in paragraph 6

below, the "Liens, Claims, and Interests") to the fullest extent permitted by § 363(f) of the

Bankruptcy Code (the "Sale"); and (b) authorizing the assumption and assignment of certain

executory contracts and unexpired leases associated with the Sligo South Assets, and (c) granting

---

[1]  The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is:  Weatherly Oil & Gas, LLC (4115).  The Debtor's service address is:  10777 County Road 210, Tyler, Texas, 75707.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

other related relief, all as more fully set forth in the Motion; and upon the Johnson Declaration; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interest of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion was given to all parties entitled to such notice under the Bankruptcy Code and Bankruptcy Rules, is appropriate under the circumstances, and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT:**

### General Provisions

1.      Omitted.

2.      All objections to the Motion or relief requested therein, if any, that have not been withdrawn, waived, or settled as announced to this Court at the Hearing or by stipulation filed with this Court, and all reservations of rights included therein, are hereby overruled on the merits.

**Approval of the Sale**

3.      The PSA is hereby approved, and the Debtor is authorized to take any and all actions necessary or appropriate to consummate the Sale.

4.      The Debtor has satisfied all requirements of §§ 363(b) and 363(f) of the Bankruptcy Code, and all other requirements and standards applicable to a sale outside the ordinary course of business, free and clear of all Liens, Claims, and Interests.

**Sale and Transfer of Sligo South Assets**

5.      Pursuant to §§ 105 and 363(b) of the Bankruptcy Code, the Debtor, and its directors, officers, employees, and agents have the necessary corporate power and are authorized and directed to take any and all actions necessary to: (a) consummate the Sale of the Sligo South Assets to the Buyers pursuant to and in accordance with the terms and conditions of the PSA, (b) close the Sale of the Sligo South Assets as contemplated by the PSA and this Order, and (c) execute and deliver, perform under, consummate, implement, and close fully the PSA, together with all documents, instruments, and agreements necessary or appropriate to consummate the transaction pursuant to the PSA.

6.      Pursuant to §§ 105(a), 363(b) and 363(f) of the Bankruptcy Code, the Debtor is authorized to transfer, and upon the Closing shall have transferred, all of the Debtor's right, title, and interest in and to, and possession of, the Sligo South Assets to Buyers, which shall be immediately vested in Buyers, and, to the extent provided in the PSA, such title to the Sligo South Assets shall be transferred to Buyers free and clear of all Liens, Claims, and Interests, including:

- liens (including, without limitation, mechanics', materialmens', and other consensual and non-consensual liens and statutory liens) mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, demands, encumbrances, easements, and servitudes (including, without

limitation, the liens, claims, encumbrances, interests, and mortgages of Angelo, Gordon Energy Servicer, LLC);

- interests, obligations, liabilities, demands, guaranties, options, restrictions, and contractual or other commitments;

- rights, including, without limitation, rights of first refusal, rights of offset (except for offsets exercised prior to the Petition Date), contract rights, and recovery;

- decrees of any court or foreign or domestic government entity (to the extent permitted by law);

- charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Sligo South Assets, including, without limitation, consent of any Person to assign or transfer any of the Sligo South Assets;

- debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtor or any of the Debtor's predecessors or affiliates;

- claims (as that term is defined in the Bankruptcy Code), including claims for reimbursement, contribution claims, indemnity claims, exoneration claims, alter-ego claims, environmental claims (to the fullest extent allowed by applicable law), including claims that may be secured or entitled to priority under the Bankruptcy Code, tax claims, reclamation claims, and pending litigation claims;

- matters of any kind or nature whatsoever, whether at law or in equity and whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or nonmaterial, disputed or undisputed, whether arising prior to or during the Debtor's bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise.

All such Liens, Claims, and Interests shall attach to the proceeds of the Sale of the Sligo South Assets (the "Cash Proceeds") in the order of their priority, with the same validity, force, and effect that they had against Sligo South Assets prior to entry of this Order, subject to any claims and defenses that the Debtor may possess with respect thereto. The Cash Proceeds of the Sale authorized by this Order shall be remitted to the Debtor and shall be subject to the terms of the

*Final Order Authorizing Limited Use of Cash Collateral, Obtaining Post-Petition Financing Secured by Senior Liens, and Granting Adequate Protection to Prepetition Secured Parties* [ECF No. 180] (the "Final Financing Order").  The Buyers shall not assume and is not liable for any liabilities arising from the Excluded Assets (as defined in the PSA).

7.    This Order shall be binding in all respects upon the Debtor, its estate, its affiliates, its creditors (whether known or unknown), and holders of equity interests in the Debtor, any holders of Liens, Claims, and Interests against or on all or any portion of the Sligo South Assets, all counterparties to the Contracts, Buyers and all of their successors and assigns.  This Order and the PSA shall inure to the benefit of the Debtor and its estate, Buyers, and their respective successors and assigns.

8.    This Order shall be effective as a determination that, pursuant to the PSA, all Liens, Claims, and Interests (except as provided under the PSA), have been unconditionally released, discharged and terminated as to the Buyers and the Sligo South Assets.  This Order is binding upon and shall govern the acts of all persons and entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale contemplated by the PSA.

9.      Following entry of the Order, no holder of any Lien, Claim, or Interest in the Sligo South Assets (except to the extent provided under the PSA solely in accordance with applicable law) shall interfere with the Buyers' title to, or use and enjoyment of, the Sligo South Assets based on, or related to, any such Lien, Claim or Interest, or based on any actions the Debtor may take in this case.

10.      Persons, including, without limitation, the Debtor, all holders of Liens, Claims, or Interests (other than as provided under the PSA) or other rights, debt security holders, equity security holders, governmental, tax and regulatory authorities (as to governmental, tax and regulatory authorities, to the greatest extent allowed by applicable law), lenders and trade and other creditors holding and/or asserting claims (as that term is defined in the Bankruptcy Code) including, but not limited to, claims arising out and/or related to the Sale of the Sligo South Assets (except for any claims arising pursuant to the PSA), and/or Liens, Claims, or Interests arising in any way in connection with any acts, or failure to act, of the Debtor, obligations, demands or guaranties, of any kind and nature against or in the Debtor or the Sligo South Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with or in any way relating to the Debtor, the Sligo South Assets, the operation of the Debtor's business prior to the Effective Time, or the transfer of the Sligo South Assets to the Buyers, hereby are, and will be, forever barred, estopped and permanently enjoined from asserting such Liens, Claims, or Interests against Buyers, their successors or assigns, or its property, including the Sligo South Assets.  Nothing in this Order releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit, to which the Buyers may be subject to as the post-sale owner or operator of any property that is an Asset (as defined in the PSA) after the date of entry of this Order; *provided,*

*however*, that all rights and defenses of the Buyers under nonbankruptcy law are preserved. Nothing in this Order or the PSA authorizes the transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization, or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and required approvals, if any, under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

11.     Upon entry of this Order, all creditors and any other holder of a Lien, Claim or Interest is authorized and directed to execute such documents and take all other actions as may be necessary to release its Lien, Claim, or Interest in the Sligo South Assets (except to the extent provided in the PSA). If any person or entity that has filed financing statements, mortgages, deeds of trust, mechanic's liens, *lis pendens* or other documents or agreements evidencing Liens, Claims or Interests against the Sligo South Assets has not delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Sligo South Assets or otherwise, then with regard to the Sligo South Assets: (i) the Debtor is hereby authorized, and the Buyers are hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Sligo South Assets; and (ii) the Buyers are hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, and Interests (except to the extent provided under the PSA) against the Sligo South Assets. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and

appropriate to consummate the transactions contemplated by the PSA, including, without limitation, recordation of this Order.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.  This Order shall be binding upon and shall govern the acts of all persons including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or other property interests. Notwithstanding and without limiting the foregoing, the provisions of this Order authorizing the Sale of the Sligo South Assets free and clear of Liens, Claims and Interests (except to the extent provided in the PSA), shall be self-executing, and neither the Debtor nor the Buyers shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

12.     The Buyers are not and shall not be deemed "successors" to the Debtor or its estate, or to have, *de facto* or otherwise, merged with or into the Debtor or be a mere continuation or substantial continuation of the Debtor or the enterprise of the Debtor under any theory of law or equity as a result of any action taken in connection with the PSA or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Sligo South Assets.  The Buyers have given substantial consideration under the PSA, which consideration shall constitute valid, valuable, and sufficient consideration for the absolution from

any potential claims of successor liability of the Buyers to the greatest extent allowed by applicable law.

## Good Faith

13.     The PSA and all related documents, instruments and agreements were negotiated, proposed and entered into by the Debtor and the Buyers at arm's length, without collusion, and in good faith within the meaning of § 363(m) of the Bankruptcy Code.  The Buyers are not "insiders" of the Debtor, as that term is defined in Bankruptcy Code § 101(31).  The Buyers are good faith purchasers and entitled to all of the protections of § 363(m) of the Bankruptcy Code.  The good faith finding is necessary under the Sale and the Sale cannot proceed without it.

## Assumption and Assignment of the Assumed Contracts

14.     Pursuant to §§ 105(a), 363(b)(1), and 365(a) of the Bankruptcy Code, the Debtor's Sale, assumption, and assignment of the Assumed Contracts to Buyers is approved, and the requirements of § 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied.  All requirements and conditions under §§ 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to Buyers of the Assumed Contracts have been satisfied.  The Debtor is hereby authorized to (i) assume and assign to Buyers, effective as of the Effective Time, the Assumed Contracts free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever, other than to the extent provided under the PSA, and (ii) execute and deliver to Buyers such documents or other instruments as Buyers reasonably deem necessary to assign and transfer the Assumed Contracts to Buyers.   Buyers have provided adequate assurance of future performance of their obligations under the Assumed Contracts.  Upon entry of this Order, all cure amounts applicable to the Assumed Contracts, as listed on **Exhibit 2**, will be paid in accordance with the Final Financing Order, or any other order with respect to debtor in possession financing or the Debtor's use of cash collateral.

15.     The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of Buyers in accordance with its terms, notwithstanding any provision in any such contract that prohibits, restricts, or conditions such assignment or transfer pursuant to § 365(f) of the Bankruptcy Code.  There shall be no accelerations, assignment fees, increases, or any other fees charged to Buyers or the Debtor as a result of the assumption and assignment of the Assumed Contracts.

## Approval and Payment of the EnergyNet Fee

16.     The Debtor is authorized to pay the EnergyNet Fee as provided in the EnergyNet Agreement as they relate to the Sale.  EnergyNet's commission of $12,375 shall be deducted from the proceeds of the Sale.

17.     To the extent there is inconsistency between the terms of the EnergyNet Agreement and this Order, the terms of this Order shall govern.

## Additional Provisions

18.     Nothing in this Order, the Sale Motion, the PSA, or any implementing documents releases, nullifies, limits, waives or precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order, the Sale Motion, the PSA, or any implementing documents authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Order, the Sale Motion, the PSA, or implementing documents divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

19.     Nothing in this Order shall be deemed a waiver of any rights, remedies or defenses that any party has or may have under applicable bankruptcy and non-bankruptcy law, under any related agreements or any letters of credit relating thereto, or any rights, remedies or defenses of the Debtor with respect thereto.

20.     To the extent that any provision of this Order is inconsistent with the terms of the PSA, the Order shall govern.

21.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

22.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

23.     The requirements set forth in Bankruptcy Local Rule 9013-1 and the Complex Case Procedures are satisfied by the contents of the Motion.

24.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry hereof.

25.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed: August 21, 2019

Marvin Isgur
United States Bankruptcy Judge

# **EXHIBIT 1**

## **PSA**

*Execution Version*

# PURCHASE AND SALE AGREEMENT

by and among

## WEATHERLY OIL & GAS, LLC

as Seller

and

## AETHON UNITED BR LP

and

## PEO HAYNESVILLE HOLDCO, LLC

as Buyer

dated

August [●], 2019

UNLESS AND UNTIL AN AUTHORIZED REPRESENTATIVE OF SELLER OR ITS AFFILIATES AND AN AUTHORIZED REPRESENTATIVE OF BUYER OR ITS AFFILIATES EXECUTES A DEFINITIVE AGREEMENT FOLLOWING FINAL MANAGEMENT APPROVAL, NONE OF SELLER OR ITS AFFILIATES OR BUYER OR ITS AFFILIATES HAS ANY OBLIGATION (LEGAL OR OTHERWISE) TO CONCLUDE A TRANSACTION.    UNLESS INCLUDED IN A DEFINITIVE AGREEMENT, COMMUNICATIONS (WRITTEN OR ORAL) SHALL NOT CREATE ANY OBLIGATIONS WHATSOEVER ON SELLER OR ITS AFFILIATES, OR BUYER, OR ITS AFFILIATES AND NO PARTY MAY RELY ON THEM AS THE BASIS FOR TAKING ANY ACTION, FOREGOING ANY ACTION OR OPPORTUNITY OR INCURRING ANY COSTS.  SELLER AND ITS AFFILIATES RESERVE THE RIGHT TO REJECT ANY OR ALL PROPOSALS FOR ANY REASON WHATSOEVER AND TO ACCEPT ANY ONE OR MORE PROPOSALS. SELLER AND BUYER AGREE TO NEGOTIATE SUCH PROPOSALS IN ANY MANNER SELLER OR ITS AFFILIATES OR BUYER OR ITS AFFILIATES DEEMS APPROPRIATE.

<u>**PURCHASE AND SALE AGREEMENT**</u>

This PURCHASE AND SALE AGREEMENT (this "***Agreement***") is executed as of August [●], 2019 (the "***Execution Date***"), by and among Weatherly Oil & Gas, LLC, a Delaware limited liability company ("***Seller***"), Aethon United BR LP, a Delaware limited partnership ("***Aethon***"), and PEO Haynesville Holdco, LLC, a Delaware limited liability company ("***PEO***" and together with Aethon, "***Buyer***").  Seller and Buyer are referred to herein as a "***Party***", and Seller and Buyer, collectively, as the "***Parties***".

**RECITALS**

**WHEREAS**, Seller is engaged in the business of onshore oil and natural gas exploration, development and production in the United States of America, and owns, in varying proportions, certain oil and gas leases and associated assets and interests more particularly described in this Agreement as the "Assets" (as defined below);

**WHEREAS**, on February 28, 2019, Seller commenced a voluntary case and is a debtor-in-possession of the Assets under chapter 11 of the Bankruptcy Code, pending as Case No. 19-31087 in the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Court***");

**WHEREAS**, Seller desires to sell and assign to Buyer, and Buyer desires to purchase from Seller, the Assets upon the terms and conditions hereinafter set forth;

**WHEREAS**, the Parties intend to effectuate the transactions contemplated by this Agreement through a sale of assets pursuant to sections 105, 363 and 365 of the Bankruptcy Code (as hereinafter defined), as applicable;

**WHEREAS**, the Parties acknowledge and agree that the terms of this Agreement are the result of arm's length negotiations following a competitive marketing and bidding process conducted by EnergyNet.com, Inc. ("***EnergyNet***"); and

**WHEREAS**, Seller's ability to consummate the transactions set forth in this Agreement is subject to, among other things, the entry of the Sale Order (as hereinafter defined) by the Bankruptcy Court;

**NOW, THEREFORE**, for and in consideration of the mutual promises contained herein, the benefits to be derived by each Party hereunder, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree as follows:

1.      <u>**Certain Defined Terms**</u>.  Any capitalized term used but not defined within the body of this Agreement shall have the meaning ascribed to that term in <u>Appendix I</u> attached hereto.

2.      <u>**Assets**</u>.  Subject to the terms of this Agreement, Buyer agrees to purchase from Seller, and Seller agrees to sell (1) with respect to Aethon, a 90% undivided interest in and to, and (2) with respect to PEO, a 10% undivided interest in and to, all of Seller's rights, title and interests in and to the following, except to the extent constituting Excluded Assets (all of Seller's rights, title and interest in and to such assets, less and except the Excluded Assets, collectively, the "***Assets***"): (a) all oil and gas leases and oil, gas and mineral leases, subleases and other leaseholds, royalties, overriding royalties, net profits interests, production payments, carried interests, options and other rights to Hydrocarbons in place, in each case, whether producing or non-producing, as more particularly described in <u>Exhibit A-1</u> (collectively, the "***Leases***"), together with (A) any and all other rights, titles and interests of Seller in and to the lands covered or burdened thereby, and (B) all other interests of Seller of any kind or character in and to the Leases; (b)

all presently existing unitization, pooling and/or communitization agreements, orders, declarations or designations and statutorily, judicially or administratively created drilling, spacing and/or production units, whether recorded or unrecorded, insofar as the same are attributable or allocated to the Leases, and all of Seller's interest in and to the properties covered or such units created thereby (collectively, the "**Units**"; and, together with the Leases, the "**Oil and Gas Interests**"); (c) all wells located upon the Leases or Units or otherwise used in connection with the ownership or operation of the Assets, whether plugged and abandoned, including the wells set forth in <u>Exhibit A-2</u> (the "**Wells**" and together with the Oil and Gas Interests, the "**Properties**"); (d) all easements, surface leases, permits, licenses, servitudes, rights of way, surface use agreements and all other rights and appurtenances located on or primarily used in connection with the Properties (the "**Surface Rights**"); (e) all tangible personal, movable and mixed property, equipment, machinery, fixtures and improvements, including all injection wells, salt water disposal facilities, well heads, well equipment, casing, manifolds, tubing, pumps, motors, gauges, valves, heaters, treaters, water lines, vessels, tanks, boilers, separators, treating equipment, compressors, pipelines, flow lines, gathering systems, processing and separation facilities, pads, structures, other equipment, automation systems including meters and related telemetry on wells, power lines, telephone and communication lines and other appurtenances, network equipment and associated peripherals, radio and telephone equipment (including cellular telephones), SCADA, telemetry and other measurement technology, and well communication devices, in each case, to the extent located on or primarily used in connection with the ownership or operation of the other Assets; (f) all contracts and agreements to the extent which all or any portion of the Properties or Surface Rights is subject, including the contracts and agreements set forth in <u>Exhibit A-3</u> (the "**Contracts**"); (g) all Hydrocarbons in, on, under or produced from or allocated to any of the Properties from and after the Effective Time, and all Hydrocarbons for which Seller receives an adjustment to the Purchase Price, and in each case, the proceeds thereof; (h) all rights, benefits and obligations arising from or in connection with any Imbalances attributable to of the Properties, existing as of or arising after the Effective Time; (i) the Records; and (j) except to the extent related to the Excluded Assets or Specified Obligations, any rights, claims, causes, causes of action, claims for relief, choses in action, rights of recovery, rights of set-off, rights of indemnity, contribution or recoupment, counter-claims, cross-claims and defenses of Seller relating to the Assets described in items (a)-(i) above.

3.       **Excluded Assets**.  Seller shall reserve and retain the following "**Excluded Assets**": (a) all of Seller's corporate minute books and corporate financial records that relate to Seller's business generally; (b) all trade credits, all accounts, receivables, if any, and all other proceeds, income or revenues attributable to the Assets with respect to any period of time prior to the Effective Time; (c) all claims, causes of action, manufacturers' and contractors' warranties and other rights of Seller arising under or with respect to (i) any Assets that are attributable to periods of time prior to the Effective Time including claims for adjustments or refunds, and (ii) any other Excluded Assets; (d) all Hydrocarbons produced from the Assets with respect to all periods prior to the Effective Time, other than those Hydrocarbons produced from or allocated to the Assets and in storage or existing in stock tanks, pipelines or plants (including inventory) as of the Effective Time for which the Purchase Price is adjusted upward at Closing; (e) all amounts held by Seller in suspense that are attributable to sales of Hydrocarbons produced from the Assets, as applicable (including any amounts subject to escheat obligations pursuant to applicable Law); (f) all personal computers, network equipment and associated peripherals; (g) all drilling rigs, and all trucks, cars and vehicles; (h) all master services agreements or similar contracts; (i) all easements, rights-of-way, surface rights, equipment, pipe and inventory (in each case, whether located on or off the lands covered by the Leases or lands pooled or unitized therewith) not currently being used or held for use in connection with the ownership or operation of the Assets (other than the Surface Rights and any surface rights granted under any of the Leases); (j) all of Seller's proprietary computer software, patents, trade secrets, copyrights, names, trademarks, logos and other intellectual property; (k) legal records and legal files of Seller, including all work product of and attorney-client communications with Seller's legal counsel or any other documents or instruments that may be protected by an attorney-client privilege or the attorney work-product doctrine, but excluding any title opinions covering the Oil and Gas Interests; (l) all documents and instruments and other data or information

that cannot be disclosed to Buyer as a result of confidentiality arrangements under agreements with third parties; (m) all audit rights arising under any of the Contracts or otherwise with respect to (i) any period prior to the Effective Time, with respect to the Assets or (ii) any of the Excluded Assets; (n) all well data and geophysical and other seismic and related technical data and information relating to the Assets; (o) all oil and gas fee interests or mineral fee interests of Seller and its Affiliates other than those directly relating to the Oil & Gas Interests or the lands covered thereby; (p) all claims of Seller or any of its Affiliates for refunds of, rights to receive funds from any Governmental Authorities, or loss carry forwards or credits with respect to (i) any and all taxes imposed by any applicable Law on, or allocable to, Seller or any of its Affiliates, or any combined, unitary or consolidated group of which any of the foregoing is or was a member, (ii) any taxes imposed on or with respect to the ownership or operation of the Excluded Assets, and (iii) any and all other taxes imposed on or with respect to the ownership or operation of the Assets for any tax period (or portion thereof) ending before the Effective Time and (q) any Contract that contains any firm transportation obligation, minimum volume commitment or similar obligation.

4.     **Purchase Price**.  The purchase price for the Assets shall be Two Hundred Twenty-Five Thousand Dollars ($225,000) (the "***Purchase Price***"), subject to any adjustments that may be made under Section 5.  Concurrently with the execution of this Agreement, Buyer shall pay to Seller, via wire transfer of immediately available funds, the sum of Twenty-Two Thousand Five Hundred Dollars ($22,500), representing ten percent (10%) of the Purchase Price (such amount, the "***Deposit***").  If Closing occurs, the Deposit shall be applied as a credit toward the Preliminary Purchase Price at Closing.  If Closing does not occur, the Deposit will be returned to Buyer or retained by Seller in accordance with Section 20.  The effective time of the conveyance of the Assets shall be 12:01 a.m. Central Standard Time on July 1, 2019 (the "***Effective Time***").

5.     **Purchase Price Adjustments**.  Following Closing, Buyer shall be entitled to all revenues, production, proceeds, income, and products from or attributable to the Assets from and after the Effective Time, and shall be responsible for (and entitled to any refunds with respect to) all costs and expenses attributable to the Assets and incurred from and after the Effective Time.  Seller shall be entitled to all revenues, production, proceeds, income, accounts receivable and products from or attributable to the Assets prior to the Effective Time, and shall be responsible for (and entitled to any refunds with respect to) all costs and expenses attributable to the Assets and incurred prior to the Effective Time.

(a)     The Purchase Price will be increased by the following amounts, without duplication:

(1)     the aggregate amount of proceeds received by Buyer for which Seller would otherwise be entitled with respect to the Assets;

(2)     an amount equal to the market value of all Hydrocarbons attributable to the Assets in storage or existing in stock tanks, pipelines and/or plants (including inventory), in each case that are, as of the Effective Time, (i) upstream of the pipeline connection or (ii) upstream of the sales meter, in each case, net of burdens;

(3)     the aggregate amount of all Property Costs attributable to the Assets during the period from and after the Effective Time and that have been paid by Seller, but excluding any amounts previously reimbursed to Seller;

(4)     the amount of all Asset Taxes allocable to Buyer pursuant to Section 17 but paid or otherwise economically borne by Seller; and

(5)     any other upward adjustment mutually agreed upon by the Parties.

4

(b)      The Purchase Price will be decreased by the following amounts, without duplication:

(1)      the aggregate amount of proceeds received by Seller for which Buyer would otherwise be entitled with respect to the Assets;

(2)      the aggregate amount of all Property Costs attributable to the Assets during the period prior to the Effective Time and that have been paid by Buyer, but excluding any amounts previously reimbursed to Buyer;

(3)      the amount of all Asset Taxes allocable to Seller pursuant to <u>Section 17</u> but paid or otherwise economically borne by Buyer; and

(4)      any other downward adjustment mutually agreed upon by the Parties.

(c)      Not less than three (3) Business Days prior to Closing, Seller shall deliver to Buyer a statement (the "***Preliminary Settlement Statement***") setting forth, in reasonable detail, Seller's estimate of the adjustments to the Purchase Price pursuant to this <u>Section 5</u>.  Buyer shall notify Seller no later than two (2) days prior to Closing if it disagrees with any item on such Preliminary Settlement Statement.  The Parties shall use their reasonable efforts to agree on a final Preliminary Settlement Statement no later than one (1) day prior to Closing.  The Purchase Price, adjusted as provided in the Preliminary Settlement Statement, is referred to herein as the "***Preliminary Purchase Price***."  If Buyer and Seller are unable to agree upon the final Preliminary Settlement Statement, then the Preliminary Purchase Price shall be as provided in the final Preliminary Settlement Statement acceptable to Seller, and any disputed amounts shall be resolved in the course of the final accounting as provided below. The final settlement statement (the "***Final Settlement Statement***") shall be prepared by Seller and delivered to Buyer no later than fifteen (15) Business Days after the Closing Date.  Buyer shall notify Seller in writing of any disagreement (together with reasonable supporting documentation) that Buyer has with respect to the proposed Final Settlement Statement (an "***Audit Report***") within ten (10) days of Buyer's receipt of the proposed Final Settlement Statement.  If Buyer does not notify Seller of any disagreement with respect to the proposed Final Settlement Statement within such ten (10)-day period, the proposed Final Settlement Statement will be deemed to be mutually agreed upon by the Parties and will be final and binding upon the Parties. The undisputed amounts (net of any amounts in dispute) will be paid to Seller or Buyer, as applicable, within two (2) Business Days from the end of the aforementioned ten (10)-day period. The Parties agree to negotiate in good faith to resolve any disputes relating to items in the Final Settlement Statement and shall meet no later than five (5) days after Seller receives the Audit Report to attempt to agree on any adjustments to the Final Settlement Statement.  If the Parties fail to agree on final adjustments within that five (5)-day period, either Party may, within three (3) days after the end of such period, submit the disputed items to KPMG US LLP or such other Person as the Parties mutually agree upon in writing (the "***Accounting Referee***").  Any unresolved matters covered in the Audit Report that are not submitted to the Accounting Referee within such three (3)-day period shall be deemed waived by the Party not submitting the claims to the Accounting Referee, which waiver shall be final and binding on the Parties and the subject matter thereof shall not be subject to further review or audit. The Parties shall direct the Accounting Referee to resolve the disputes within five (5) days after its receipt of all relevant

materials pertaining to the dispute.  The Accounting Referee shall act as an expert for the limited purpose of determining the specific disputed matters submitted by either Party and may not award damages or penalties to either Party with respect to any matter.  Seller, on the one hand, and Buyer, on the other hand, shall share equally the Accounting Referee's costs, fees and expenses. The Final Settlement Statement, whether as agreed between the Parties or as determined by a decision of the Accounting Referee, shall be binding on, and non-appealable by, the Parties and not subject to further review or audit.  Payment by Buyer or Seller, as applicable, for any outstanding amounts on the Final Settlement Statement shall be made within two (2) Business Days after the date on which all disputes in respect of the Final Settlement Statement are finally resolved (whether by agreement of the Parties or pursuant to the Accounting Referee's decision).

6.      **Title**.  Seller will assign to Buyer all of its right, title and interest in and to the Assets pursuant to the form of Assignment attached hereto as Exhibit B and subject to the Sale Order.

7.      **Disclaimers**.  EXCEPT AS AND TO THE LIMITED EXTENT EXPRESSLY SET FORTH IN SECTION 12 OR IN THE ASSIGNMENT, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS, STATUTORY OR IMPLIED, AND SELLER EXPRESSLY DISCLAIMS ALL LIABILITY AND RESPONSIBILITY FOR ANY REPRESENTATION, WARRANTY, STATEMENT OR INFORMATION MADE OR COMMUNICATED (ORALLY OR IN WRITING) TO BUYER OR ANY BUYER REPRESENTATIVE (INCLUDING ANY OPINION, INFORMATION, PROJECTION OR ADVICE THAT MAY HAVE BEEN PROVIDED TO BUYER).  WITHOUT LIMITING THE GENERALITY OF THE FOREGOING PROVISIONS AND SUBJECT TO THE EXCEPTIONS SET FORTH THEREIN, SELLER EXPRESSLY DISCLAIMS ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY OR IMPLIED, AS TO (I) TITLE TO ANY OF THE ASSETS, (II) THE CONTENTS, CHARACTER OR NATURE OF ANY REPORT OF ANY PETROLEUM ENGINEERING CONSULTANT, OR ANY ENGINEERING, GEOLOGICAL OR SEISMIC DATA OR INTERPRETATION, RELATING TO THE PROPERTIES, (III) THE QUANTITY, QUALITY OR RECOVERABILITY OF HYDROCARBONS IN OR FROM THE PROPERTIES, (IV) ANY ESTIMATES OF THE VALUE OF THE ASSETS OR FUTURE REVENUES GENERATED BY THE ASSETS, (V) THE PRODUCTION OF HYDROCARBONS FROM THE PROPERTIES, (VI) THE MAINTENANCE, STATE OF REPAIR, CONDITION, QUALITY, SUITABILITY, DESIGN OR MARKETABILITY OF THE ASSETS, (VII) THE CONTENT, CHARACTER OR NATURE OF ANY INFORMATION, MEMORANDUM, REPORTS, BROCHURES, CHARTS OR STATEMENTS PREPARED BY OR ON BEHALF OF SELLER OR THIRD PARTIES WITH RESPECT TO THE ASSETS, (VIII) ANY OTHER MATERIALS OR INFORMATION THAT MAY HAVE BEEN MADE AVAILABLE TO BUYER OR ANY BUYER REPRESENTATIVE IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR ANY DISCUSSION OR PRESENTATION RELATING THERETO AND (IX) ANY IMPLIED OR EXPRESS WARRANTY OF FREEDOM FROM PATENT OR TRADEMARK INFRINGEMENT.  SELLER FURTHER DISCLAIMS ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY OR IMPLIED, OF MERCHANTABILITY, FREEDOM FROM LATENT VICES OR DEFECTS OR REDHIBITORY DEFECTS, FITNESS FOR A PARTICULAR PURPOSE OR CONFORMITY TO MODELS OR SAMPLES OF MATERIALS OF ANY ASSETS, RIGHTS OF A PURCHASER UNDER LAW TO CLAIM DIMINUTION OF CONSIDERATION OR RETURN OF THE PURCHASE PRICE OR CONSIDERATION, IT BEING EXPRESSLY UNDERSTOOD AND AGREED BY THE PARTIES THAT (A) BUYER SHALL BE DEEMED TO BE ACQUIRING THE ASSETS IN THEIR PRESENT STATUS, CONDITION AND STATE OF REPAIR, "AS IS," "WHERE IS" AND WITH ALL FAULTS AND DEFECTS (KNOWN OR UNKNOWN, LATENT, DISCOVERABLE OR UNDISCOVERABLE), AND (B) BUYER HAS MADE OR CAUSED TO BE MADE SUCH INSPECTIONS AS BUYER DEEMS

APPROPRIATE. SELLER HAS NOT AND WILL NOT MAKE ANY REPRESENTATION OR WARRANTY REGARDING ANY MATTER OR CIRCUMSTANCE RELATING TO ENVIRONMENTAL LAWS, THE RELEASE OF HAZARDOUS MATERIALS OR OTHER MATERIALS INTO THE ENVIRONMENT OR THE PROTECTION OF HUMAN HEALTH, SAFETY, NATURAL RESOURCES OR THE ENVIRONMENT, OR ANY OTHER ENVIRONMENTAL CONDITION OF THE ASSETS, AND NOTHING IN THIS AGREEMENT OR OTHERWISE SHALL BE CONSTRUED AS SUCH A REPRESENTATION OR WARRANTY. THE PARTIES CERTIFY THAT THEY ARE NOT "CONSUMERS" WITHIN THE MEANING OF THE TEXAS DECEPTIVE TRADE PRACTICES (CONSUMER PROTECTION) ACT, SUBCHAPTER E OF CHAPTER 17, SECTIONS 17.41, ET SEQ. OF THE TEXAS BUSINESS AND COMMERCE CODE, AS AMENDED ("*DTPA*"). THE PARTIES COVENANT, FOR THEMSELVES AND FOR AND ON BEHALF OF ANY SUCCESSOR OR ASSIGNEE, THAT IF THE DTPA IS APPLICABLE TO THIS AGREEMENT: (1) THE PARTIES ARE "BUSINESS CONSUMERS" AS THAT TERM IS DEFINED IN THE DTPA; (2) EACH PARTY HEREBY WAIVES AND RELEASES ALL OF ITS RIGHTS AND REMEDIES THEREUNDER AS APPLICABLE TO THE OTHER PARTY AND ITS SUCCESSORS AND ASSIGNS; AND (3) EACH PARTY SHALL DEFEND AND INDEMNIFY THE OTHER PARTY FROM AND AGAINST ANY AND ALL CLAIMS OF OR BY THE INDEMNIFYING PARTY OR ANY OF ITS SUCCESSORS OR ASSIGNS OR ANY OF ITS OR THEIR AFFILIATES BASED IN WHOLE OR IN PART ON THE DTPA AND ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT. SELLER AND BUYER AGREE THAT, TO THE EXTENT REQUIRED BY APPLICABLE LAW TO BE EFFECTIVE, THE DISCLAIMERS OF CERTAIN REPRESENTATIONS AND WARRANTIES CONTAINED IN THIS <u>SECTION 7</u> ARE CONSPICUOUS DISCLAIMERS FOR THE PURPOSE OF ANY APPLICABLE LAW.

8. **Obligations**. From and after Closing, except to the extent such obligations or liabilities constitute Specified Obligations or are discharged by the Bankruptcy Court pursuant to the Sale Order, Buyer shall assume and hereby agrees to fulfill, perform, pay and discharge (or cause to be fulfilled, performed, paid or discharged), without duplication, (a) all obligations and liabilities with respect to the Assets arising on or after the Effective Time and (b) all obligations and liabilities not currently due and payable with respect to the Assets and solely relating to compliance with Environmental Laws and/or Plugging and Abandonment Obligations, whether arising prior to, on or after the Effective Time (all of said obligations and liabilities, herein being referred to as the "*Assumed Obligations*"); *provided*, *however*, that Buyer does not assume any obligations or liabilities to the extent they are Specified Obligations. Without limiting the foregoing, Seller agrees to retain all obligations and liabilities solely to the extent arising out of or related to (i) death or physical injury to any employees of Seller related to or arising out of Seller's ownership or operation of the Assets occurring prior to the Closing; (ii) any and all taxes imposed by any applicable Law on, or allocable to, Seller or any of its Affiliates, or any combined, unitary or consolidated group of which any of the foregoing is or was a member; (iii) any and all other taxes imposed on or with respect to the ownership or operation of the Assets for any tax period (or portion thereof) ending before the Effective Time; (iv) the ownership or operation of any Excluded Assets; (v) the gross negligence or willful misconduct of Seller or any of its Affiliates in connection with the operation of the Assets prior to Closing; (vi) the failure to report or to pay (or the incorrect payment) to any royalty owner, overriding royalty owner, working interest owner or other interest holder under the Oil & Gas Properties any amounts due or owing prior to the Closing Date; (vii) fines, penalties or other sanctions arising from violations of applicable Laws that occurred or are attributable to events that occurred prior to Closing; (viii) any litigation, suits, actions or other similar proceedings relating to the Assets in existence as of the Closing; and (ix) any off-site transport or disposal, or arrangement for transport or disposal, of any hazardous substances prior to Closing (all of said obligations and liabilities, herein being referred to as the "*Specified Obligations*").

9. **Bankruptcy Filings**. Seller shall use commercially reasonable efforts to (i) file all pleadings with the Bankruptcy Court, including the Sale Motion, as are necessary or appropriate to allow

the Bankruptcy Court to rule on the Sale Motion in form and substance reasonably acceptable to Buyer and (ii) serve all parties known to Seller to be entitled to notice of such pleadings under applicable provisions of the Bankruptcy Code.  Buyer shall promptly take all actions as are reasonably requested by Seller to assist Seller in obtaining the Bankruptcy Court's entry of the Sale Order.

10.     **Indemnification**.

(a)     Buyer shall be responsible for and indemnify, defend, release and hold harmless Seller and its Affiliates, and all of its and their respective partners, members, directors, officers, managers, employees, equity holders, agents and representatives (collectively, "***Seller Indemnified Parties***") from and against all claims caused by, arising out of or resulting from (i) the Assumed Obligations and (ii) Buyer's breach of any representation or warranty contained in Section 13 and any of its covenants or obligations under this Agreement.  Buyer's indemnity obligations set forth in this Section 10(a) shall survive Closing of the transaction contemplated hereby in perpetuity.  BUYER'S DEFENSE, INDEMNIFICATION, HOLD HARMLESS AND RELEASE OBLIGATIONS AND THE ASSUMPTION OF THE ASSUMED OBLIGATIONS PROVISIONS (IN EACH CASE) PROVIDED FOR IN THIS AGREEMENT SHALL BE APPLICABLE WHETHER OR NOT THE LIABILITIES, LOSSES, COSTS, EXPENSES AND DAMAGES IN QUESTION AROSE OR RESULTED SOLELY OR IN PART FROM THE GROSS, SOLE, ACTIVE, PASSIVE, CONCURRENT OR COMPARATIVE NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT OR VIOLATION OF LAW OF OR BY ANY SELLER INDEMNIFIED PARTY.  BUYER AND SELLER ACKNOWLEDGE THAT THIS STATEMENT COMPLIES WITH THE EXPRESS NEGLIGENCE RULE AND IS CONSPICUOUS.

(b)     Seller shall be responsible for and indemnify, defend, release and hold harmless Seller and its Affiliates, and all of its and their respective partners, members, directors, officers, managers, employees, equity holders, agents and representatives (collectively, "***Buyer Indemnified Parties***") from and against all claims caused by, arising out of or resulting from (i) the Specified Obligations and (ii) Seller's breach of any representation or warranty contained in Section 12 and any of its covenants or obligations under this Agreement.  Seller's indemnity obligations set forth in (A) Section 10(b)(i) shall survive until Seller's liquidation and (B) Section 10(b)(ii) shall survive until the earlier of September 30, 2019 and Seller's liquidation.

(c)     NO SELLER INDEMNIFIED PARTY OR BUYER INDEMNIFIED PARTY SHALL BE ENTITLED TO RECOVER, AND EACH HEREBY WAIVES ANY RIGHT TO RECOVER, FROM THE OTHER, OR THEIR RESPECTIVE AFFILIATES, ANY SPECIAL, INDIRECT, CONSEQUENTIAL, PUNITIVE, EXEMPLARY, REMOTE OR SPECULATIVE DAMAGES, OR DAMAGES FOR LOST PROFITS UNDER OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY, EXCEPT TO THE EXTENT ANY SUCH PARTY PAYS SUCH DAMAGES (INCLUDING COSTS OF DEFENSE AND REASONABLE ATTORNEY'S FEES INCURRED IN CONNECTION WITH DEFENDING OF SUCH DAMAGES) TO A THIRD PARTY, WHICH DAMAGES (INCLUDING COSTS OF DEFENSE AND REASONABLE

ATTORNEY'S FEES INCURRED IN CONNECTION WITH DEFENDING AGAINST SUCH DAMAGES) SHALL NOT BE EXCLUDED BY THIS PROVISION AS TO RECOVERY HEREUNDER.

11.        ***NORM, Wastes and Other Substances***.  Buyer acknowledges that the Assets have been used for exploration, development and production of oil and gas and that there may be petroleum, produced water, wastes or other substances or materials located in, on or under the Assets or associated with the Assets.  Equipment and sites included in the Assets may contain asbestos, naturally occurring radioactive material ("***NORM***") or other hazardous materials.  NORM may affix or attach itself to the inside of Wells, materials, equipment and other personal property as scale, or in other forms.  The Wells, materials, equipment and other personal property located on the Properties or included in the Assets may contain NORM and other wastes or hazardous materials.  NORM containing material and/or other wastes or hazardous materials may have come in contact with various environmental media, including water, soils or sediment.  Special procedures may be required for the assessment, remediation, removal, transportation or disposal of environmental media, wastes, asbestos, NORM and other hazardous materials from the Assets.  Buyer agrees to accept the Assets "as is," "where is," and "with all faults," and Buyer agrees to assume all risks with respect to the Assets related to NORM.

12.        <u>**Seller's Representations and Warranties**</u>.  Seller represents and warrants to Buyer as of the Execution Date and as of the Closing that:

(a)        Seller is duly organized and validly existing under the laws of the State of Delaware and is duly qualified to do business where the Assets are located.

(b)        Subject to the entry of the Sale Order, (i) Seller has full power and authority to enter into and perform this Agreement and the other documents to be executed and delivered by Seller in connection herewith and the transactions contemplated herein and therein; (ii) the execution, delivery and performance by Seller of this Agreement have been duly and validly authorized and approved by all necessary action on the part of Seller; and (iii) this Agreement is, and the other documents to be executed and delivered by Seller in connection herewith when executed and delivered by Seller will be, the valid and binding obligations of Seller.

(c)        Assuming the entry of the Sale Order, the execution, delivery and performance by Seller of this Agreement and the consummation of the transactions contemplated herein will not (i) conflict with or result in a breach of any provisions of the organizational documents of Seller, (ii) result in a material default or give rise to any right of termination, cancellation or acceleration under any of the terms, conditions or provisions of any note, bond, mortgage, indenture, license or Contract, in each case, which constitutes an Asset, (iii) result in the creation of any lien or other encumbrance on any Asset or (iv) to Seller's Knowledge, violate any Law applicable to Seller or any of the Assets.

(d)        To Seller's Knowledge, (i) all Contracts are in full force and effect and (ii) no party is in material default or breach of any such Contract.

(e)        Except as set forth on <u>Schedule 12(e)</u>, there are no preferential rights to purchase or consents to assignment (except in each case as specifically set forth on <u>Schedule 12(e)</u>) in respect of the Assets.

(f)     To Seller's Knowledge, Seller's and its Affiliates' ownership and operation (to the extent Seller or any of its Affiliates is the operator of an Asset) of the Assets on or prior to the Closing Date, are in compliance in all material respects with all applicable Laws. Other than as it relates to Seller's chapter 11 case, Seller and its Affiliates have not received any written notice of a material violation of or material default by any of them or any of their Affiliates with respect to any Law or any decision, ruling, order or award of any Governmental Authority relating to the Oil and Gas Properties.

(g)     To Seller's Knowledge, Seller has not elected not to participate in any operation or activity proposed with respect to the Assets which would reasonably be expected to result in any of Seller's interest in any Assets becoming subject to a reduction, penalty or forfeiture as a result of such election not to participate in such operation or activity.

(h)     Seller has incurred no obligation, contingent or otherwise, for any broker's, finder's, or consultant's fees for which Buyer will be liable.

(i)     Except for the Bankruptcy Case and any adversary proceeding or contested motions commenced or filed in connection therewith or stayed as a result of the filing thereof, there is no proceeding or order pending, outstanding, or to Seller's Knowledge, threatened in writing that (a) seeks to appeal, stay, restrain or prohibit or otherwise challenge the consummation, legality or validity of the transactions contemplated hereby, the Sale Motion or the Sale Order, or (b) relates to the Assets.

13.     **<u>Buyer's Representations and Warranties</u>**.  Buyer represents and warrants to Seller as of the Execution Date and as of the Closing that:

(a)     Buyer is duly qualified and has full right and authority to acquire and own the Assets, to receive an assignment of the Assets from Seller at Closing and to enter into this Agreement.

(b)     Buyer has incurred no obligation, contingent or otherwise, for any broker's, finder's or consultant's fees for which Seller will be liable.

(c)     There are no bankruptcy, reorganization or receivership proceedings pending, being contemplated by or, to Buyer's Knowledge, threatened against Buyer or any Affiliate of Buyer, and Buyer is not insolvent or generally not paying its debts when they become due.

(d)     Buyer is an accredited investor, as such term is defined in Regulation D of the Securities Act of 1933, as amended, and will acquire the Assets for its own account and not with a view to a sale or distribution thereof in violation of the Securities Act of 1933, as amended, and the rules and regulations thereunder, any applicable state blue sky Laws or any other applicable securities Laws.

(e)     Buyer is sophisticated in the evaluation, purchase, ownership and operation of oil and gas properties and related facilities.  In making

its decision to enter into this Agreement and to consummate the transaction contemplated hereby and thereby, except to the extent of Seller's express representations and warranties in <u>Section 12</u>, Buyer has relied or shall rely on its own independent investigation and evaluation of the Assets, which investigation and evaluation was done by Buyer and its own legal, tax, economic, environmental, engineering, geological and geophysical advisors.  In entering into this Agreement, Buyer acknowledges that it has relied solely upon the aforementioned investigation and evaluation and not on any factual representations or opinions of Seller or any representatives or consultants or advisors engaged by or otherwise purporting to represent Seller or any Affiliate of Seller (except the specific representations and warranties of Seller set forth in <u>Section 12</u>).  Buyer hereby acknowledges that, other than the representations and warranties made in <u>Section 12</u>, neither Seller nor any representatives, consultants or advisors of Seller or its Affiliates make or have made any representation or warranty, express or implied, at Law or in equity, with respect to the Assets.

14. **Seller's Conditions to Close**.  The obligations of Seller to consummate the transactions provided for herein is subject, at the option of Seller, to the fulfillment by Buyer or waiver by Seller, on or prior to Closing of each of the following conditions precedent:

(a) the representations and warranties of Buyer set forth in <u>Section 13</u> shall be true and correct in all material respects (except with respect to the representations and warranties set forth in <u>Section 13(b)</u> or that are qualified by materiality, which in each case shall be true and correct in all respects) as of Closing as though made on and as of Closing;

(b) Buyer shall have materially performed or complied with all obligations, agreements, and covenants contained in this Agreement as to which performance or compliance by Buyer is required prior to or at Closing;

(c) Buyer shall have executed and delivered (or be ready, willing and able to deliver at Closing) to Seller the documents and other items, including the Preliminary Purchase Price, required to be delivered by Buyer under <u>Section 16</u>; and

(d) the Bankruptcy Court shall have entered the Sale Order.

15. **Buyer's Conditions to Close**.  The obligations of Buyer to consummate the transactions provided for herein is subject, at the option of Buyer, to the fulfillment by Seller or waiver by Buyer, on or prior to Closing of each of the following conditions:

(a) the representations and warranties of Seller set forth in <u>Section 12</u> shall be true and correct in all material respects (except with respect to the representations and warranties set forth in <u>Section 12(h)</u> or that are qualified by materiality, which in each case shall be true and correct in all respects) as of Closing as though made on and as of Closing;

(b) Seller shall have materially performed or complied with all obligations, agreements, and covenants contained in this Agreement as to which performance or compliance by Seller is required prior to or at Closing;

11

(c)     Seller shall have executed and delivered (or be ready, willing and able to deliver at Closing) to Buyer the documents and other items required to be delivered by Seller under <u>Section 16</u>;

(d)     As and to the extent set forth in the Sale Order, all liens, mortgages, security interests and deeds of trust burdening the Assets shall have been released at or before Closing; and

(e)     the Bankruptcy Court shall have entered the Sale Order, and such Sale Order shall be in effect on the Closing Date and (i) shall not have been stayed, reversed, stayed pending appeal or vacated and (ii) shall not have been amended, supplemented or otherwise modified to Buyer's detriment without Buyer's consent (such consent not to be unreasonably withheld, conditioned or delayed).

16.     <u>**Closing**</u>.  The closing of the transaction contemplated by this Agreement ("***Closing***") shall occur on the date that is ten (10) Business Days following the issuance of the Sale Order (the "***Closing Date***") or such other date following the issuance of the Sale Order as Buyer and Seller may agree upon in writing.  At Closing, (a) Buyer shall pay to Seller the Preliminary Purchase Price, less the Deposit, via wire transfer of immediately available funds, (b) Seller shall execute and deliver in sufficient counterparts an assignment, conveyance and bill of sale covering the Assets in the form attached hereto as <u>Exhibit B</u> (the "***Assignment***"), (c) the Parties shall take such further actions as may be reasonably necessary to evidence and effectuate the transaction contemplated by this Agreement, (d) Buyer shall obtain replacements for the bonds, letters of credit and guarantees necessary to terminate the obligations of Seller or its Affiliates with respect to the Assets and Buyer shall provide evidence of the posting of such bonds or other securities with all applicable Governmental Authorities meeting the requirements of such authorities, (e) Seller shall deliver an executed statement described in Treasury Regulation §1.1445-2(b)(2) certifying that Seller is neither a disregarded entity nor a foreign Person within the meaning of the Internal Revenue Code of 1986, as amended, and Treasury Regulations promulgated thereunder (the "***Code***") and (f) Seller shall execute such change of operator forms and letters-in-lieu of transfer orders as reasonably requested by Buyer.  Closing shall be held at the offices of Seller, or at such other location or through such other methods as may be mutually agreed upon by Seller and Buyer.

17.     <u>**Taxes**</u>.

(a)     All required documentary, filing and recording fees and expenses in connection with the filing and recording of the assignments (including the Assignment), conveyances or other instruments required to convey title to the Assets to Buyer shall be borne by Buyer.  Buyer shall be responsible for, and shall bear and pay, all sales, use, transfer, stamp, registration and similar taxes (including any applicable interest or penalties) incurred or imposed with respect to the transactions described in this Agreement (the "***Transfer Taxes***").  Seller shall bear and pay, all ad valorem, property, excise, severance, production, sales, use and similar taxes (including any interest, fine, penalty or additions to tax imposed by a government authority in connection with such taxes) based upon operation or ownership of the Assets or production of Hydrocarbons or the receipt of proceeds therefrom (collectively, the "***Asset Taxes***") assessed with respect to the ownership and operation of the Assets for (i) any period ending prior to the Effective Time, and (ii) the portion of any tax period beginning before and ending after the Effective Time (a "***Straddle Period***") ending immediately prior to the Effective Time.  All Asset Taxes arising on or after the Effective Time (including all Straddle

12

Period Asset Taxes not apportioned to Seller) shall be allocated to and borne by Buyer.  To the extent the actual amount of any Asset Taxes described in this Section 17 is not known at the time an adjustment is to be made with respect to such Asset Tax pursuant to Section 5, Buyer and Seller shall utilize the most recent information available in estimating the amount of such Asset Taxes for purposes of such adjustment.  Upon determination of the actual amount of Asset Taxes, payments will be made to the extent necessary to cause the appropriate Party to bear the Asset Taxes allocable to such Party under this Section 17.  For purposes of allocation between the Parties of Asset Taxes: (A) Asset Taxes that are attributable to the severance or production of Hydrocarbons or otherwise imposed on a transactional basis (other than Asset Taxes described in (B) below) shall be allocated to the period in which the severance, production or other transaction giving rise to such Asset Taxes occurred; and (B) Asset Taxes that are ad valorem, property or other Asset Taxes imposed on a periodic basis with respect to a Straddle Period shall be allocated pro rata per day between the portion of such Straddle Period ending immediately prior to the Effective Time (which shall be Seller's responsibility) and the portion of the Straddle Period beginning at the Effective Time (which shall be Buyer's responsibility).  For purposes of clause (A) of the preceding sentence, any exemption, deduction, credit or other item that is calculated on an annual basis shall be allocated pro rata per day between the period ending immediately prior to the Effective Time and the period beginning on the Effective Time.

(b)      Other than with respect to tax periods ending prior to the Effective Time, Buyer shall be responsible for filing with the appropriate Governmental Authorities all returns (including information returns), reports, statements, schedules, notices, forms, elections, estimated tax filings, claims for refund or other documents filed with or submitted to, or required to be filed with or submitted to, any Governmental Authority with respect to any tax ("**Tax Returns**") for Asset Taxes that are required to be filed after Closing and paying the taxes reflected on such Tax Returns as due and owing, subject to Buyer's right of reimbursement for any Asset Taxes for which Seller is responsible under Section 17(a).  Buyer shall prepare all such Tax Returns relating to any Straddle Period on a basis consistent with past practice except to the extent otherwise required by applicable Law.  Buyer shall provide Seller with a copy of any Tax Return relating to any Straddle Period for Seller's review at least ten (10) days prior to the due date for the filing of such Tax Return (or within a commercially reasonable period after the end of the relevant taxable period, if such Tax Return is required to be filed less than ten (10) days after the close of such taxable period), and Buyer shall incorporate all reasonable comments of Seller provided to Buyer in advance of the due date for the filing of such Tax Return.

(c)      The Parties shall cooperate fully, as and to the extent reasonably in connection with the filing of any Tax Returns, state and federal regulatory reports, royalty payments including related deduction and any audit, litigation or other proceeding with respect to these matters for the Assets.

(d)      Seller shall be entitled to any and all refunds of Asset Taxes allocated to Seller pursuant to Section 17(a), and Buyer shall be entitled to any and all refunds of Asset Taxes allocated to Buyer pursuant to Section 17(a). If a Party receives a refund of Asset Taxes to which the other Party is entitled

13

pursuant to this <u>Section 17(d)</u>, the first Party shall promptly pay such amount to the other Party, net of any reasonable costs or expenses incurred by the first Party in procuring such refund.

18.  **Operation of the Business**.  Except as to (i) requirements from any Governmental Authority, including the Bankruptcy Court, (ii) situations wherein emergency action is taken in the face of risk to life, property, the environment and/or Lease termination or (iii) any matters otherwise consented to in writing by Buyer, which consent shall be in Buyer's sole discretion, from the Execution Date until the Closing Date, Seller: (a) will conduct its business related to the Assets (including the sale of Hydrocarbons) in the ordinary course consistent with Seller's past practices; (b) will not propose or agree in writing to any new operation reasonably anticipated by Seller to require future capital expenditures by the owner of the Assets in excess of Twenty Thousand Dollars ($20,000); (c) will keep Buyer apprised of any material field operations (including any drilling, completing, re-completing operations) proposed or conducted by Seller with respect to the Assets; (d) will not terminate or materially amend, violate or take action or inaction that results in a material breach or default under, any Contract or Lease; (e) will not execute any material agreement relating to the Assets; (f) will maintain insurance coverage on the Assets in the amounts and coverages and of the types in force as of the Execution Date; (g) will use commercially reasonable efforts to maintain in full force and effect all Leases that are presently held by production in paying quantities; (h) will notify Buyer if any Lease terminates or is being threatened to be terminated, promptly upon learning of such termination or threat; (i) will maintain all material permits, approvals, bonds and guaranties affecting the Assets, and make all filings that Seller is required to make under applicable Law with respect to the Assets; (j) will not transfer, sell, hypothecate, encumber or otherwise dispose of any Assets except for sales and dispositions of Hydrocarbons in the ordinary course of business consistent with past practices; (k) will not waive, compromise or settle any material right or claim with respect to any of the Properties; (l) will not otherwise incur liabilities or obligations with respect to the Assets for which Buyer would be responsible after Closing; (m) will comply in all material respects with all applicable Laws; and (n) will not enter into an agreement to take any actions prohibited by any of the foregoing.

19.  **Termination**.

(a)  Subject to <u>Section 19(b)</u>, this Agreement may be terminated at any time prior to the consummation of the Closing upon the occurrence of any one or more of the following:

(i)  by mutual written agreement of Seller and Buyer;

(ii)  by Seller or Buyer if the other Party has materially breached this Agreement and such breach causes any of the conditions to closing of the non-breaching Party set forth in <u>Sections 14</u> and <u>15</u>, respectively, not to be satisfied as of Closing; *provided, however*, that in the case of a breach that is capable of being cured, the breaching Party shall have until the later of (A) ten (10) days following notice of breach to attempt to cure the breach and (B) one (1) business day prior to the Outside Date;

(iii)  by Buyer if the Bankruptcy Court shall fail to enter the Sale Order on or prior to September 30, 2019 (the "<u>Outside Date</u>"); or

(iv)  by Buyer immediately upon an order of the Bankruptcy Court becoming final and non-appealable that declares this Agreement invalid or unenforceable in any material respect or that prevents the consummation of the transactions contemplated by this Agreement;

*provided, further, however*, that neither Party shall have the right to terminate this Agreement pursuant to clause (ii) or (iii) if such Party is at such time in material breach of any provision of this Agreement.

(b)     Remedies.

(i)     If Seller has the right to terminate this Agreement pursuant to Section 19(a)(ii) in a situation where the conditions to closing set forth in Section 15 have been satisfied or waived in writing by Buyer (excluding conditions that by their terms, cannot be satisfied until the Closing), and Seller has performed or is ready, willing and able to perform all of its agreements and covenants contained herein which are to be performed or observed at or prior to the Closing, then Seller shall, as its sole and exclusive remedy, be entitled to terminate this Agreement and retain the Deposit as liquidated damages.  The Parties recognize that actual damages for Buyer's breach would be difficult to ascertain with reasonably certainty and that the Deposit would be reasonable liquidated damages for such breach.

(ii)    If this Agreement terminates for any reason other than as set forth in Section 19(b)(i), then (A) the Parties shall have no liability or obligation hereunder as a result of such termination, (B) within three (3) Business Days of the date this Agreement is terminated, Seller shall return the Deposit to Buyer free and clear of any claims thereon by Seller, and (C) Seller shall be free immediately to enjoy all rights of ownership of the Assets and to sell, transfer, encumber or otherwise dispose of the Assets to any Person without any restriction under this Agreement.

(C)     NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, EACH PARTY'S RIGHTS CONTAINED IN THIS SECTION 19 CONSTITUTE THE SOLE AND EXCLUSIVE REMEDY FOR THE OCCURRENCE OF THE EVENTS DESCRIBED IN THIS SECTION 19, AND BOTH PARTIES HEREBY EXPRESSLY WAIVE ANY AND ALL OTHER RIGHTS OR REMEDIES WITH RESPECT THERETO; *PROVIDED, HOWEVER,* THAT, NOTHING HEREIN SHALL BE DEEMED A WAIVER OF EITHER PARTY'S RIGHT TO SEEK INJUNCTIVE RELIEF OR TO COMPEL SPECIFIC PERFORMANCE OF ANY COVENANT OR OBLIGATION OF THE OTHER PARTY.

20.     **Miscellaneous**.  The Parties further agree as follows:

(a)     Condemnation; Casualty Loss.  Notwithstanding anything herein to the contrary, from and after the execution of this Agreement, if Closing occurs, Buyer shall assume all risk of loss with respect to the depreciation of Assets due to ordinary wear and tear.  If, after the Execution Date but prior to or on the Closing Date, any portion of the Assets is destroyed by fire, explosion, hurricane, storm, weather events, earthquake, act of nature, civil unrest, or similar disorder, terrorist acts, war or any other hostilities or other casualty or is expropriated or taken in condemnation or under right of eminent domain by any Governmental Authority, whether or not fixed or repaired or in any way remediated (each a "***Casualty Loss***"), Buyer and Seller shall nevertheless be required to proceed with Closing.

To the extent Seller is entitled to recovery under any insurance policy on account of any Casualty Loss, Seller shall pay to Buyer the net amounts recovered under such policy (less any costs incurred by Seller to recover such amounts), if any.

(b)     Notices.  All communications required or permitted under this Agreement shall be in writing and any communication or delivery hereunder shall be deemed to have been fully made if actually delivered, if mailed by registered or certified mail, postage prepaid, delivered by recognized overnight courier service, to the address as set forth below:

| | |
|---|---|
| To Seller: | Weatherly Oil & Gas, LLC<br>777 Taylor Street, Suite 902<br>Fort Worth, Texas 76102<br>Attention: Dan Johnson<br>Email: Dan.Johnson@ankura.com |
| with a copy to (which shall not constitute notice): | Jackson Walker L.L.P.<br>Attention:  S. Jordan Smith<br>2323 Ross Ave., Suite 600<br>Dallas, Texas 75201<br>Phone:  (214) 953-5984<br>Email:  sjsmith@jw.com |
| To Buyer: | Aethon United BR LP<br>Attention:  Preston Phillips<br>12377 Merit Drive, Suite 1200<br>Dallas, Texas  75251<br>Email: pphillips@aethonenergy.com |

(c)     Assignment.  Neither Party shall assign its rights or obligations under this Agreement without the prior written consent of the other Party, which consent may be withheld for any reason in the sole discretion of the non-assigning Party; provided, however, Buyer may assign any or all of its rights and obligations hereunder to any one or more of its Affiliates, provided that such assignment shall not relieve Buyer of any of its obligations hereunder.

(d)     Governing Law; Venue; Waiver of Jury Trial.

(i)     EXCEPT TO THE EXTENT THE MANDATORY PROVISIONS OF THE BANKRUPTCY CODE APPLY, THIS AGREEMENT AND THE LEGAL RELATIONS BETWEEN SELLER AND BUYER SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, EXCLUDING ANY CONFLICTS OF LAW RULE OR PRINCIPLE THAT WOULD REQUIRE THE APPLICATION OF ANY OTHER LAW.

(ii)     WITHOUT LIMITATION OF ANY PARTY'S RIGHT TO APPEAL ANY ORDER OF THE BANKRUPTCY COURT, (I) THE BANKRUPTCY COURT SHALL RETAIN EXCLUSIVE JURISDICTION TO ENFORCE THE TERMS OF THIS AGREEMENT AND TO DECIDE ANY CLAIMS OR DISPUTES WHICH MAY ARISE OR RESULT FROM, OR BE CONNECTED WITH, THIS AGREEMENT, ANY BREACH OR DEFAULT HEREUNDER, OR THE TRANSACTIONS CONTEMPLATED HEREBY AND (II) ANY AND ALL CLAIMS RELATING TO THE FOREGOING SHALL BE FILED AND MAINTAINED ONLY IN THE BANKRUPTCY COURT,

AND THE PARTIES HEREBY CONSENT AND SUBMIT TO THE EXCLUSIVE JURISDICTION AND VENUE OF THE BANKRUPTCY COURT AND IRREVOCABLY WAIVE THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF ANY SUCH ACTION OR PROCEEDING; PROVIDED, HOWEVER, THAT, IF THE BANKRUPTCY CASE IS CLOSED, ALL ACTIONS AND PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE HEARD AND DETERMINED IN A TEXAS STATE COURT OR A FEDERAL COURT SITTING IN THE STATE OF TEXAS, AND THE PARTIES HEREBY IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION AND VENUE OF SUCH COURTS IN ANY SUCH ACTION OR PROCEEDING AND IRREVOCABLY WAIVE THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF ANY SUCH ACTION OR PROCEEDING.  THE PARTIES CONSENT TO SERVICE OF PROCESS BY MAIL OR ANY OTHER MANNER PERMITTED BY LAW.

(iii)    THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE ACTIONS OF SELLER, BUYER OR THEIR RESPECTIVE REPRESENTATIVES IN THE NEGOTIATION OR PERFORMANCE HEREOF.

(e)    <u>Wavier of Right to Recession</u>. The Parties acknowledge that, following the Closing, the payment of money, as limited by the terms of this Agreement, shall be adequate compensation for breach of any representation, warranty, covenant or agreement contained herein or for any other claim arising in connection with or with respect to the transactions contemplated by this Agreement. As the payment of money shall be adequate compensation, following the Closing, the Parties waive any right to rescind this Agreement or any of the transactions contemplated hereby.

(f)    <u>Parties in Interest</u>.  Notwithstanding anything contained in this Agreement to the contrary, nothing in this Agreement, express or implied, is intended to confer on any Person other than Seller and Buyer and their respective successors and permitted assigns, or the Parties' respective Indemnified Parties hereunder, any rights, remedies, obligations or liabilities under or by reason of this Agreement; provided that only a Party and its respective successors and permitted assigns will have the right to enforce the provisions of this Agreement on its own behalf or on behalf of any of its related Indemnified Parties (but shall not be obligated to do so).

(g)    <u>Amendment</u>.  This Agreement may be amended only by written instrument executed by both Parties.

(h)    <u>Counterparts; Treatment as Original</u>.  This Agreement may be executed in one or more counterparts, each of which will be deemed an original and all of which together shall constitute the same agreement, and any signature hereto delivered by a Party by facsimile or other electronic transmission (e.g., email) shall be deemed an original signature hereto for all purposes.

*    *    *    *    *

*[Signatures Follow on Next Page]*

IN WITNESS WHEREOF, this Agreement has been signed by each Party as of the Execution Date.

**SELLER:**

**Weatherly Oil & Gas, LLC**

By:_____
    Dan W. Johnson, Chief Executive Officer

**BUYER:**

**Aethon United BR LP**

By:    Aethon United BR GP LLC,
       its general partner

By:_____
Name:_____
Title:_____

**PEO Haynesville Holdco, LLC**

By:_____
Name:_____
Title:_____

## APPENDIX I

## Certain Defined Terms

"*Affiliate*" shall mean any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common control with, another Person.  The term "control" and its derivatives with respect to any Person, when used in the context of this definition, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise. For the avoidance of doubt, any lender of Seller shall not be considered an Affiliate of Seller.

"*Bankruptcy Code*" shall mean Title 11 of the United States Code, Sections 101 *et seq.*

"*Business Day*" shall mean a day (other than a Saturday or Sunday) on which commercial banks in Houston, Texas are generally open for business.

"*Environmental Laws*" shall mean any applicable Law relating to the protection of the environment.

"*Environmental Obligations*" means responsibility and liability for any of the following occurrences, events, conditions, and activities on, related to, or attributable to the condition of the Assets: (a) environmental pollution or contamination, including pollution or contamination of the soil, groundwater, or air by Hydrocarbons, drilling fluid and other chemicals, brine, produced water, NORM, asbestos containing materials, lead based paint, mercury, or any other substance; (b) underground injection activities and waste disposal; (c) clean-up responses, and the cost of remediation, control, assessment, or compliance with respect to surface and subsurface pollution caused by spills, pits, ponds, lagoons, or storage tanks; (d) failure of the Assets to comply with applicable land use, surface disturbance, licensing, or notification requirements or surface use agreements; (e) disposal on the Properties of any hazardous substances, wastes, materials, and products generated by or used in connection with the ownership, development, operation, or abandonment of any part of the Assets; and (f) any non-compliance with any Environmental Law.

"*Governmental Authority*" shall mean any federal, state, local, municipal, tribal or other government; any governmental, regulatory, arbitration or administrative agency, commission, body or other authority exercising or entitled to exercise any administrative, executive, judicial, legislative, arbitration, regulatory or taxing authority or power, and any court, arbitral or governmental tribunal, including any tribal authority having or asserting jurisdiction, including the Bankruptcy Court.

"*Hydrocarbons*" shall mean oil, condensate, gas, casinghead gas and other liquid or gaseous hydrocarbons.

"*Knowledge*" shall mean, with respect either Party, the knowledge of the officers of such Party after reasonable inquiry of personnel who would reasonably be expected to have actual knowledge of the fact, circumstance or condition in question.

"*Law*" shall mean any applicable statute, law (including common law), rule, regulation, ordinance, order, code, ruling, writ, injunction, decree or other official act of or by any Governmental Authority.

"*Person*" shall mean any individual, firm, corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization, Governmental Authority or any other entity.

19

"***Plugging and Abandonment Obligations***" means all decommissioning activities, obligations, costs and expenses with respect to the Assets as are required by Laws, any Contract, any Lease, this Agreement or any Governmental Authority and further including all well plugging, replugging and abandonment; facility dismantlement and removal of all abandoned Assets, junk and other personal property located on or comprising any part of the Assets; pipeline and flowline dismantlement and removal; dismantlement and removal of other property of any kind related to or associated with operations or activities conducted on the Properties; and site clearance, site restoration and site remediation and other activities associated therewith.

"***Property Costs***" shall mean all operating and production expenses (including costs of insurance, any bonds and other guarantees; rentals, shut-in payments and applicable burdens; title examination and curative actions; and gathering, processing and transportation costs) and all capital expenditures arising out of the ownership and operation of the Assets and any overhead costs charged by third party operators to the extent relating to the Assets, but excluding liabilities attributable to any Specified Obligations.

"***Records***" shall mean, excluding the Excluded Records, all of Seller's and its Affiliates' files, records and data (including electronic data) related to the Assets, including but not limited to: (i) lease files, land files, facility and well files, division order files, abstracts, title files (including title opinions and title curative documents), (ii) Contract files, (iii) correspondence, (iv) operations, environmental, health and safety, and pipeline safety records, (v) engineering and/or production files, (vi) maps, and (vii) Tax and accounting records, in each case, to the extent related to the ownership or operation of the Assets and in the possession of Seller or an Affiliate of Seller.

"***Sale Motion***" shall mean the motion or motions filed by Seller pursuant to, *inter alia*, sections 105, 363, and 365 of the Bankruptcy Code, as applicable, seeking entry of the Sale Order and approval of the transactions contemplated by this Agreement.

"***Sale Order***" shall mean the order of the Bankruptcy Court approving this Agreement and all of the terms and conditions hereof and approving and authorizing Seller to consummate the transactions contemplated hereby pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, as applicable.

*[END OF APPENDIX I]*

**Exhibit A – Leases**
**Attached to and made part of that certain Purchase and Sale Agreement by and between**
**Weatherly Oil & Gas, LLC, as Seller, and Aethon United BR LP and PEO Haynesville Holdco, LLC, as Buyers**

| Lease Number | Lessor | Lessee | Lease Date | Instrument No. | Book | Page | Parish | State |
|---|---|---|---|---|---|---|---|---|
| LA9260153-001 | A C, SKANNAL JR ET AL | UNION PRODUCING COMPANY | 7/19/1938 | 30381 | 139 | 349 | Bossier | LA |
| LA9260152-001 | A J MURFF, ET AL | UNITED GAS PUBLIC SERVICE CO | 8/10/1933 | 14512 | 109 | 301 | Bossier | LA |
| LA9260194-003 | AARON JEETER AND ED WEBB | H L SKANNAL | 12/14/1921 | 33288 | 57 | 355 | Bossier | LA |
| LA9260129-011 | ALBERT S. LEMONS | SLIGO HOLDINGS LLC | 10/14/2002 | 759700 | 1269 | | Bossier | LA |
| LA9260129-026 | ALFRED C. GLASSELL, JR. | SLIGO HOLDINGS LLC | 6/19/2002 | 752689 | 1262 | | Bossier | LA |
| LA9260101-000 | ALLEN/WILLIAMS CHILDREN TR | SLIGO HOLDINGS LLC | 12/15/2001 | 751456 | 1262 | | Bossier | LA |
| LA9260003-009 | ALTON LEON PICKARD | SLIGO HOLDINGS, LLC | 4/27/2002 | 751318 | 1262 | | Bossier | LA |
| LA9260003-005 | ANDREW B LAWRENCE JR | SLIGO HOLDINGS LLC | 7/15/2002 | 751827 | 1263 | | Bossier | LA |
| LA9260129-042 | ANNA BELLE ROBINSON WAINWRIGHT | SLIGO HOLDINGS LLC | 2/26/2002 | 751469 | 1262 | | Bossier | LA |
| LA9260002-002 | ATKINS LTD LLC, EDWARD J CRAWF | SLIGO HOLDINGS LLC | 5/2/2002 | 751440 | 1262 | | Bossier | LA |
| LA9260002-003 | ATKINS MINERALS L C | SLIGO HOLDINGS LLC | 4/17/2002 | 751441 | 1262 | | Bossier | LA |
| LA9260119-000 | AUDREY MURFF SHEPPARD | UNION PRODUCING COMPANY | 9/19/1938 | 751350 | 1262 | | Bossier | LA |
| LA9260155-003 | AUDREY MURFF SHEPPARD,  ET AL | UNION PRODUCING COMPANY | 9/19/1938 | 30292 | 139 | 306 | Bossier | LA |
| LA9260003-006 | BARBARA ANN LAWRENCE MCKENZIE | SLIGO HOLDINGS LLC | 7/10/2002 | 751462 | 1262 | | Bossier | LA |
| LA9260129-027 | BESS J. NOWERY | SLIGO HOLDINGS LLC | 2/27/2002 | 751476 | 1262 | | Bossier | LA |
| LA9260003-004 | BOBBYE LOU LAWRENCE PETTIT | SLIGO HOLDINGS LLC | 7/15/2002 | 752685 | 1264 | | Bossier | LA |
| LA9260129-012 | CARL L. LEMONS | SLIGO HOLDINGS LLC | 10/14/2002 | 759701 | 1269 | | Bossier | LA |
| LA9260129-007 | CAROL FLEMING MARKS | SLIGO HOLDINGS LLC | 4/4/2002 | 751484 | 1262 | | Bossier | LA |
| LA9260001-002 | CAROLYN JEAN CALO | SLIGO HOLDINGS LLC | 12/15/2001 | 751460 | 1262 | | Bossier | LA |
| LA9260001-009 | CASANDRA ANN CALO | SLIGO HOLDINGS LLC | 12/15/2001 | 751421 | 1262 | | Bossier | LA |
| LA9260129-021 | CHARLES R. SCHNEIDER | SLIGO HOLDINGS LLC | 6/25/2002 | 751467 | 1262 | | Bossier | LA |
| LA9260333-000 | CHESAPEAKE ROYALTY, L.L.C. | CHESAPEAKE LOUISIANA L P | 7/26/2008 | 937593 | 1458 | | Bossier | LA |
| LA9260337-000 | CHESAPEAKE ROYALTY, L.L.C. | CHESAPEAKE LOUISIANA L P | 7/26/2008 | 937592 | 1458 | | Bossier | LA |
| LA9260338-000 | CHESAPEAKE ROYALTY, L.L.C. | CHESAPEAKE LOUISIANA L P | 7/26/2008 | 937591 | 1458 | | Bossier | LA |
| LA9260001-011 | CHRISTINE HALL MEAD | SLIGO HOLDINGS LLC | 4/15/2002 | 751323 | 1262 | | Bossier | LA |
| LA9260129-008 | CLYDE FRANK & PAULA J VANCLEVE | SLIGO HOLDINGS LLC | 4/2/2002 | 751482 | 1262 | | Bossier | LA |
| LA9260128-000 | CONTINENTAL SECURITIES, ET AL | PRODUCERS OIL & GAS COMPANY IN | 11/3/1934 | | 117 | 266 | Bossier | LA |
| LA9260158-003 | CRAWFORD COLVIN JINKS MGMT TRU | PEPCO | 9/22/1993 | 569001 | 1046 | 140 | Bossier | LA |

| LA9260003-021 | D. DODDFORD HAWLEY | SLIGO HOLDINGS, LLC | 6/7/2002 | 751417 | 1262 | | Bossier | LA |
|---|---|---|---|---|---|---|---|---|
| LA9260003-001 | DAVID W LAWRENCE | SLIGO HOLDINGS LLC | 7/10/2002 | 752684 | 1264 | | Bossier | LA |
| LA9260129-016 | DONALD KEITH HUDDLESTON | SLIGO HOLDINGS LLC | 7/12/2002 | 752690 | 1262 | | Bossier | LA |
| LA9260129-039 | DONN G THOMPSON | DEVON ENERGY PRODUCTION COMPANY | 4/11/2001 | 723225 | 1234 | 196 | Bossier | LA |
| LA9260158-008 | DOROTHY COLVIN JORDAN | PEPCO | 9/22/1993 | 569000 | 1046 | 136 | Bossier | LA |
| LA9260176-000 | E A SCHULER | RW WILLIAMS | 7/20/1927 | 48814 | 84 | 400 | Bossier | LA |
| LA9260158-002 | ELEANOR H VALLHONRAT, ET AL | PEPCO | 9/24/1993 | 569002 | 1046 | 144 | Bossier | LA |
| LA9260051-002 | EMANUAL CHATMAN, ET AL | A C SKANNAL | 8/15/1933 | 14908 | 109 | 378 | Bossier | LA |
| LA9260001-007 | EMANUEL V BENJAMEN III | SLIGO HOLDINGS LLC | 12/15/2001 | 751457 | 1262 | | Bossier | LA |
| LA9260001-008 | EMOGENE C ATWATER F/B/O | SLIGO HOLDINGS LLC | 12/15/2001 | 751419 | 1262 | | Bossier | LA |
| LA9260129-038 | EVORENE MORGAN NOWERY | DEVON ENERGY PRODUCTION COMPANY | 4/27/2001 | 723226 | 1234 | 198 | Bossier | LA |
| LA9260188-003 | FELTON WAYNE SUMNER | PZL PRODUCING CO | 4/15/1978 | 313509 | 608 | 408 | Bossier | LA |
| LA9260201-001 | FLAME ROYALTIES, INC. | SLIGO HOLDINGS, L.L.C. | 5/1/2002 | 751439 | 1262 | | Bossier | LA |
| LA9260187-000 | FORD E. STINSON | UNION PRODUCING COMPANY | 12/28/1956 | 113940 | 281 | 107 | Bossier | LA |
| LA9260179-000 | FRANK B. TREAT, ET AL | TRIANGLE DRILLING CO, INC | 8/18/1930 | 8600 | 101 | 208 | Bossier | LA |
| LA9260001-012 | FRANK J HALL JR | SLIGO HOLDINGS LLC | 4/15/2002 | 751322 | 1262 | | Bossier | LA |
| LA9260129-019 | FREDERICA H. MAYER GRANTOR TRU | SLIGO HOLDINGS LLC | 5/6/2002 | 751468 | 1262 | | Bossier | LA |
| LA9260174-004 | G W SMITH | MAGNOLIA PETROLEUM COMPANY | 3/22/1927 | 47888 | 84 | 303 | Bossier | LA |
| LA0000069-001 | GAYLE K HAMILTON ET UX | HAROLD H HOLLENSHEAD | 6/20/2002 | 751416 | 1262 | | Bossier | LA |
| LA9260129-033 | GAYLE LUAN THOMPSON | SLIGO HOLDINGS LLC | 3/1/2002 | 751487 | 1262 | | Bossier | LA |
| LA9260105-000 | GIBBS COMPANY LLC | SLIGO HOLDINGS LLC | 3/18/2002 | 751142 | 1262 | | Bossier | LA |
| LA9260185-000 | H G FREEDMAN | UNITED GAS PUBLIC SERVICE CO | 1/18/1936 | 20605 | 120 | 405 | Bossier | LA |
| LA9260186-003 | H G FREEDMAN ET AL | UNION PRODUCING COMPANY | 11/27/1956 | 113323 | 281 | 29 | Bossier | LA |
| LA9260186-004 | H G FREEDMAN ET AL | UNION PRODUCING COMPANY | 11/25/1941 | 38187 | 152 | 100 | Bossier | LA |
| LA9260186-005 | H G FREEDMAN ET AL | UNION PRODUCING COMPANY | 11/25/1941 | 38188 | 152 | 110 | Bossier | LA |
| LA9260190-001 | H G FREEDMAN ET AL | UNION PRODUCING COMPANY | 11/25/1941 | 38186 | 152 | 91 | Bossier | LA |
| LA9260191-002 | H L SKANNAL | W H HODGES, JR | 1/1/1922 | 48294 | 84 | 349 | Bossier | LA |
| LA9260175-000 | H L, SKANNAL, ET AL | UNITED GAS PUBLIC SERVICE CO | 4/3/1935 | 18099 | 115 | 94 | Bossier | LA |
| LA9260195-000 | H L, SKANNAL, ET AL | UNION PRODUCING COMPANY | 7/23/1943 | 52816 | 158 | 512 | Bossier | LA |
| LA9260180-000 | H. L. SKANNAL, ET AL | TRIANGLE DRILLING CO, INC | 8/27/1934 | 16721 | 110 | 475 | Bossier | LA |
| LA9260129-030 | HARRIET PUCKETT PAYTON | DEVON ENERGY PRODUCTION COMPANY | 4/11/2001 | 723228 | 1234 | | Bossier | LA |
| LA9260186-001 | HENRY L SKANNAL | UNION PRODUCING COMPANY | 8/14/1946 | 52681 | 172 | 243 | Bossier | LA |
| LA9260001-013 | HOWARD H KARR F/B/O | SLIGO HOLDINGS | 12/15/2001 | 751458 | 1262 | | Bossier | LA |

| LA0000070-001 | J G MCDADE, ET AL | MRS HUEY P LONG, ET AL | 12/14/1938 | 31825 | 143 | 97 | Bossier | LA |
|---|---|---|---|---|---|---|---|---|
| LA9260183-002 | J S PATE, ET AL | WOODLEY PETROLEUM CO | 6/1/1985 | 8523 | 101 | 182 | Bossier | LA |
| LA9260129-009 | JACK V. THOMPSON | SLIGO HOLDINGS LLC | 3/7/2002 | 751481 | 1261 | | Bossier | LA |
| LA9260129-028 | JAMES B. NOWERY | SLIGO HOLDINGS LLC | 2/27/2002 | 751475 | 1262 | | Bossier | LA |
| LA9260158-007 | JAMES LUDWIG COLVIN | PEPCO | 9/21/1993 | 568998 | 1046 | 128 | Bossier | LA |
| LA9260003-020 | JAQUELINE M PRINGLE, REP BY | SLIGO HOLDINGS LLC | 4/27/2002 | 751445 | 1262 | | Bossier | LA |
| LA9260158-006 | JEANI M. MAGEE, ET AL | PEPCO | 10/7/1993 | 569009 | 1046 | 174 | Bossier | LA |
| LA9360002-000 | JOE & ELSIE BRUNSON BUTLER | ASHLEY ANN ENERGY, LLC | 5/23/2008 | 929910 | 1442 | | Bossier | LA |
| LA9260129-005 | JOHN F. WEMPLE | SLIGO HOLDINGS LLC | 3/19/2002 | 751490 | 1262 | | Bossier | LA |
| LA9260188-001 | JOHN LEWIS SUMNER | PZL PRODUCING CO | 4/14/1978 | 313507 | 608 | 400 | Bossier | LA |
| LA9260158-005 | JOHN MCRAE COLVIN JR | PEPCO | 9/27/1993 | 568999 | 1046 | 132 | Bossier | LA |
| LA9260158-004 | JOHN P HOFFMAN, ET AL | PEPCO | 9/21/1993 | 569003 | 1046 | 149 | Bossier | LA |
| LA9260003-017 | JOHN PICKETT ROGERS III | SLIGO HOLDINGS LLC | 4/27/2002 | 751435 | 1262 | | Bossier | LA |
| LA9260129-017 | JOHN STEWART SLACK, III | SLIGO HOLDINGS LLC | 7/16/2002 | 752688 | 1262 | | Bossier | LA |
| LA9260188-005 | JOHNNIE SUMNER LEWIS | PZL PRODUCING CO | 4/15/1978 | 313511 | 608 | 416 | Bossier | LA |
| LA9260001-003 | JOSEPH JAMES CALO | SLIGO HOLDINGS LLC | 12/15/2001 | 751422 | 1262 | | Bossier | LA |
| LA9260129-004 | JOYCE ANDRUS WAINWRIGHT | SLIGO HOLDINGS LLC | 3/19/2002 | 751473 | 1262 | | Bossier | LA |
| LA9260129-001 | KAREN SUE MILLER | SLIGO HOLDINGS LLC | 3/4/2002 | 751483 | 1262 | | Bossier | LA |
| LA9260001-005 | KATHARINE P HAYNE LABOUISSE TR | SLIGO HOLDINGS LLC | 6/6/2002 | 751447 | 1262 | | Bossier | LA |
| LA9260001-010 | KATHERINE HALL CHERRY | SLIGO HOLDINGS LLC | 4/15/2002 | 751320 | 1262 | | Bossier | LA |
| LA9260003-007 | KATHRYN LAWRENCE BECKHAM | SLIGO HOLDINGS LLC | 6/10/2002 | 751452 | 1262 | | Bossier | LA |
| LA9260129-029 | LAL E. ECHTEROFF | SLIGO HOLDINGS LLC | 7/17/2002 | 752691 | 1262 | | Bossier | LA |
| LA9260182-000 | LENA JACKSON SCHNITT, ET AL | UNITED GAS PUBLIC SERVICE CO | 4/8/1937 | 25912 | 131 | 158 | Bossier | LA |
| LA9260129-034 | LESCA LEE GRANT | SLIGO HOLDINGS LLC | 2/28/2002 | 754299 | 1265 | | Bossier | LA |
| LA9260129-031 | LLOYD MILLER FREY | DEVON ENERGY PRODUCTION COMPANY | 5/15/2001 | 723230 | 1234 | 206 | Bossier | LA |
| LA9260129-003 | LOUISE BENOIT & CONWAY HARRIS | SLIGO HOLDINGS LLC | 3/7/2002 | 751489 | 1262 | | Bossier | LA |
| LA9260129-032 | LOUISE C WATTS | DEVON ENERGY PRODUCTION COMPANY | 5/23/2001 | 723229 | 1234 | 206 | Bossier | LA |
| LA9260129-041 | LUCY WAINWRIGHT COLQUITT | SLIGO HOLDINGS LLC | 3/14/2002 | 751474 | 1262 | | Bossier | LA |
| LA9260129-006 | LYDIA WEMPLE MARANTO | SLIGO HOLDINGS LLC | 3/8/2002 | 751491 | 1262 | | Bossier | LA |
| LA9260001-014 | LYNN HALL LASITER | SLIGO HOLDINGS LLC | 4/15/2002 | 751321 | 1262 | | Bossier | LA |
| LA9260001-001 | MARILYN JEAN CALO | SLIGO HOLDINGS LLC | 12/15/2001 | 751420 | 1262 | | Bossier | LA |
| LA9260003-008 | MARJORY GREY LAWRENCE, ET AL | SLIGO HOLDINGS, LLC | 6/10/2002 | 751443 | 1262 | | Bossier | LA |
| LA9260104-001 | MARK MONTGOMERY, LLC | PETRO LAND SERVICES, INC | 2/22/2002 | 742069 | 1252 | 799 | Bossier | LA |

23

| LA9260129-037 | MARTHA WAINWRIGHT SHAW | PEPCO | 4/15/1998 | 654305 | 1155 | 143 | Bossier | LA |
|---|---|---|---|---|---|---|---|---|
| LA9260158-001 | MARTIN TIMBER COMPANY LLC | CLARK ENERGY COMPANY INC | 9/21/1993 | 568995 | 1046 | 119 | Bossier | LA |
| LA9260159-002 | MARY ANNE SHEPHERD SIMPSON QUA | DEVON ENERGY PRODUCTION COMPANY | 5/12/2000 | 702731 | 1212 | | Bossier | LA |
| LA9260155-002 | MARY C THIGPEN,  ET AL | UNITED GAS PUBLIC SERVICE CO | 3/13/1935 | 18020 | 115 | 69 | Bossier | LA |
| LA9260158-009 | MARY COLVIN DAVIS | PEPCO | 9/22/1993 | 569005 | 1046 | 155 | Bossier | LA |
| LA9260104-000 | MARY EDNA ELLEDGE | SLIGO HOLDINGS LLC | 5/22/2002 | 731463 | 1262 | | Bossier | LA |
| LA9260129-015 | MARY L WILSON, RUTH DAVIS | SLIGO HOLDINGS LLC | 5/1/2002 | 751480 | 1262 | | Bossier | LA |
| LA9260003-003 | MARY LOUISE LAWRENCE BURNEY | SLIGO HOLDINGS LLC | 6/10/2002 | 751451 | 1262 | | Bossier | LA |
| LA0000070-003 | MATTIE PORTER, ET AL | JACK BARTLETT JR | 7/19/1935 | 18778 | 117 | 567 | Bossier | LA |
| LA9260184-003 | MAYFLOWER COLORED BAPT CHURCH | UNION PRODUCING COMPANY | 1/10/1948 | 60202 | 186 | 350 | Bossier | LA |
| LA9260332-000 | MC MINERAL COMPANY LLC | CHESAPEAKE LOUISIANA L P | 2/20/2009 | 959745 | 1507 | | Bossier | LA |
| LA9260174-001 | MCDADE, LOYE, ET AL | UNITED GAS PUBLIC SERVICE CO | 10/16/1933 | 14758 | 109 | 365 | Bossier | LA |
| LA9260129-002 | MELVIN F. JOHNSON | SLIGO HOLDINGS LLC | 3/27/2002 | 751488 | 1262 | | Bossier | LA |
| LA9260003-013 | MERCER C ROGERS | SLIGO HOLDINGS LLC | 4/27/2002 | 751432 | 1262 | | Bossier | LA |
| LA9260154-001 | MERCER CANFIELD MURFF | UNION PRODUCING COMPANY | 9/25/1938 | 30427 | 139 | 369 | Bossier | LA |
| LA9260102-000 | MIRTHA G DUNN TEST. TR | SLIGO HOLDINGS LLC | 6/12/2002 | 751453 | 1262 | | Bossier | LA |
| LA9260197-002 | MOFFITT, L M, ET AL | UNITED GAS PUBLIC SERVICE CO | 12/30/1936 | 25972 | 131 | 183 | Bossier | LA |
| LA9260003-002 | NAN WILLIS LAWRENCE COWICK | SLIGO HOLDINGS LLC | 6/10/2002 | 751454 | 1262 | | Bossier | LA |
| LA9260001-006 | NATHAN GOLDSTEIN M D | SLIGO HOLDINGS LLC | 6/25/2002 | 751459 | 1262 | | Bossier | LA |
| LA9260002-004 | NATHANIEL P PHILLIPS JR | SLIGO HOLDINGS LLC | 6/3/2002 | 751423 | 1262 | | Bossier | LA |
| LA9260188-002 | NORMA SUMNER WHITE | PZL PRODUCING CO | 4/14/1978 | 313508 | 608 | 404 | Bossier | LA |
| LA9260126-000 | OAKLAND CEMETERY BY R WILSON | FRANK J HALL, ET AL | 11/13/1946 | | 179 | 575 | Bossier | LA |
| LA9260186-002 | OHIO OIL COMPANY | UNION PRODUCING COMPANY | 8/2/1946 | 53358 | 172 | 395 | Bossier | LA |
| LA9260001-004 | PAMELA RUST LONG TRUST | SLIGO HOLDINGS LLC | 6/6/2002 | 751449 | 1262 | | Bossier | LA |
| LA9260003-011 | PATRICIA A P WADE COUSINO | SLIGO HOLDINGS LLC | 4/27/2002 | 752687 | 1264 | | Bossier | LA |
| LA9260158-010 | PATTY COLVIN HALL, ET AL | PEPCO | 9/22/1993 | 569011 | 1046 | 183 | Bossier | LA |
| LA9260003-016 | PAUL CARTER ROGERS | SLIGO HOLDINGS LLC | 4/27/2002 | 751461 | 1262 | | Bossier | LA |
| LA9260003-010 | PAULA LYNN PICKARD | SLIGO HOLDINGS LLC | 4/27/2002 | 751446 | 1262 | | Bossier | LA |
| LA9260103-000 | PHILLIP C GEE | SLIGO HOLDINGS LLC | 7/17/2002 | 752686 | | | Bossier | LA |
| LA0000070-002 | R J O'BRIEN | D B MCCONNELL | 5/4/1939 | 31826 | 143 | 103 | Bossier | LA |
| LA9260198-000 | R V KERR,  ET AL | UNITED GAS PUBLIC SERVICE CO | 3/13/1935 | 18083 | 115 | 86 | Bossier | LA |
| LA9260197-001 | R V KERR, ET AL | UNITED GAS PUBLIC SERVICE CO | 3/13/1935 | 17956 | 115 | 60 | Bossier | LA |
| LA9260197-003 | R V KERR, ET AL | UNION PRODUCING COMPANY | 2/15/1940 | 33683 | 143 | 616 | Bossier | LA |

| LA9260194-002 | RACHEL WEBB, ET AL | UNITED GAS PUBLIC SERVICE CO | 10/24/1940 | 24939 | 126 | 459 | Bossier | LA |
|---|---|---|---|---|---|---|---|---|
| LA9260129-024 | ROBERT JEFFERIES VOSS | SLIGO HOLDINGS LLC | 4/30/2002 | 751478 | 1262 | | Bossier | LA |
| LA9260129-040 | ROBERT KENNETH ALLISON | DEVON ENERGY PRODUCTION COMPANY | 7/25/2001 | 726665 | 1237 | | Bossier | LA |
| LA9260129-025 | ROGER HARRISON VOSS | SLIGO HOLDINGS LLC | 4/30/2002 | 751479 | 1262 | | Bossier | LA |
| LA9260188-006 | ROSE JEANENE SUMNER BRYANT | PZL PRODUCING CO | 4/15/1978 | 313512 | 608 | 420 | Bossier | LA |
| LA9260155-004 | S L HEROLD ET AL | UNION PRODUCING COMPANY | 9/25/1938 | 30428 | 139 | 381 | Bossier | LA |
| LA9260173-000 | S L, HEROLD, ET AL | TRIANGLE DRILLING COMPANY INC | 1/12/1929 | 2707 | 84 | 684 | Bossier | LA |
| LA9260188-004 | SADALIA SUMNER HAMILTON | PZL PRODUCING CO | 4/15/1978 | 313510 | 608 | 412 | Bossier | LA |
| LA9260002-005 | SAGITTARIUS LLC, ET AL | SLIGO HOLDINGS LLC | 7/16/2002 | 753060 | 1264 | | Bossier | LA |
| LA9260129-023 | SALLY BALDWIN FOSTER | SLIGO HOLDINGS LLC | 6/25/2002 | 751507 | 1262 | | Bossier | LA |
| LA9260003-014 | SAMUEL CLAY ROGERS | SLIGO HOLDINGS LLC | 4/27/2002 | 751434 | 1262 | | Bossier | LA |
| LA9260003-018 | SCOTT CRICHTON | SLIGO HOLDINGS LLC | 4/27/2002 | 751436 | 1262 | | Bossier | LA |
| LA9260001-015 | SEYMOUR WEISS TR, ET AL | SLIGO HOLDINGS LLC | 6/6/2002 | 751448 | 1262 | | Bossier | LA |
| LA9260158-012 | SIDNEY HEROLD LAZARD ET UX | DEVON ENERGY PRODUCTION COMPANY | 12/27/1999 | 705542 | 1215 | 17 | Bossier | LA |
| LA9260158-013 | SIDNEY HEROLD LAZARD JR SUCCES | DEVON ENERGY PRODUCTION COMPANY | 5/10/2000 | 705543 | 1215 | 20 | Bossier | LA |
| LA9260051-003 | SKANNAL, A C , JR | UNITED GAS PUBLIC SERVICE CO | 8/15/1933 | 14991 | 109 | 395 | Bossier | LA |
| LA9260189-000 | STATE OF LOUISIANA - 10415 | PZL PRODUCING CO. | 9/8/1982 | 377173 | 733 | 715 | Bossier | LA |
| LA9260193-000 | STATE OF LOUISIANA - 249 | TRIANGLE DRILLING COMPANY | 4/15/1930 | 7521 | 94 | 477 | Bossier | LA |
| LA9260129-020 | STEPHEN W. SCHNEIDER | SLIGO HOLDINGS LLC | 4/3/2002 | 751493 | 1262 | | Bossier | LA |
| LA9260296-001 | STUART ODEN | CHESAPEAKE EXPLORATION LP | 10/1/2006 | 899074 | 1407 | | Bossier | LA |
| LA9260129-018 | SUE DREYER SLACK | SLIGO HOLDINGS LLC | 5/29/2002 | 751477 | 1262 | | Bossier | LA |
| LA9260129-022 | SUSAN BALDWIN PATTON | SLIGO HOLDINGS LLC | 6/25/2002 | 752692 | 1264 | | Bossier | LA |
| LA9260127-000 | T S NEAL | PRODUCERS OIL & GAS CO INC | 1/29/1935 | 17596 | 117 | 267 | Bossier | LA |
| LA9260129-036 | THAIS RAY SOES | DEVON ENERGY PRODUCTION COMPANY | 5/13/2001 | 723231 | 1234 | 208 | Bossier | LA |
| LA9260174-002 | THIGPEN & HEROLD ET AL | UNITED GAS PUBLIC SERVICE CO | 8/27/1934 | 16678 | 110 | 466 | Bossier | LA |
| LA9260003-019 | THOMAS CRICHTON IV | SLIGO HOLDINGS LLC | 4/27/2002 | 751437 | 1262 | | Bossier | LA |
| LA9260003-015 | THOMAS M ROGERS | SLIGO HOLDINGS LLC | 4/27/2002 | 751433 | 1262 | | Bossier | LA |
| LA9260174-005 | THOMAS ROSCOE, ET AL | UNITED GAS PUBLIC SERVICE CO | 10/20/1936 | 23950 | 126 | 148 | Bossier | LA |
| LA0050041-000 | TONY L KEY | TWIN CITIES DEVELOPMENT, LLC | 3/20/2008 | 925953 | | | Bossier | LA |
| LA0000065-001 | TRINITY ROYALTY CO, INC | SLIGO HOLDINGS LLC | 5/1/2002 | 751319 | 1262 | | Bossier | LA |
| LA9260183-001 | UNOCAL EXPLORATION CORP | PENNZOIL EXPLORATION | 10/1/1990 | 517924 | 977 | 369 | Bossier | LA |
| LA9260201-000 | VALERIE K ROOS ET AL | UNITED GAS PUBLIC SERVICE CO | 5/8/1936 | 21784 | 124 | 119 | Bossier | LA |
| LA9260181-000 | VALERIE K. ROOS, ET AL | UNION PRODUCING COMPANY | 12/31/1951 | 77215 | 219 | 250 | Bossier | LA |

25

| LA9260184-002 | VALERIE K. ROOS, ET AL | UNION PRODUCING COMPANY | 12/5/1947 | 59870 | 186 | 175 | Bossier | LA |
| LA9260002-007 | VWM-LA PROPERTIES | SLIGO HOLDINGS LLC | 6/4/2002 | 751450 | 1262 | | Bossier | LA |
| LA0000070-004 | W E HALL, ET AL | J R BOZEMAN | 3/14/1946 | 54194 | 172 | 553 | Bossier | LA |
| LA9260184-001 | W L SUMNER, ET AL | UNION PRODUCING COMPANY | 12/2/1947 | 59371 | 186 | 33 | Bossier | LA |
| LA9260002-001 | WEBB FAMILY TR, JOHN & MOLLIE | SLIGO HOLDING LLC | 4/19/2002 | 751438 | 1262 | | Bossier | LA |
| LA9260129-014 | WILBERT A. LEMONS | SLIGO HOLDINGS LLC | 6/27/2002 | 751494 | 1262 | | Bossier | LA |
| LA9260002-006 | WILCOX 1992 ACQUISITION FUND | SLIGO HOLDINGS LLC | 6/3/2002 | 751444 | 1262 | | Bossier | LA |
| LA9260129-035 | WILLIAM BRUCE THOMPSON | SLIGO HOLDINGS LLC | 2/28/2002 | 753059 | 1264 | | Bossier | LA |
| LA9260194-005 | WILLIAM PAUL LAWRENCE, II | CHESAPEAKE LOUISIANA, L P | 6/1/2004 | 937398 | 1458 | | Bossier | LA |
| LA9260003-012 | WILLIAM R PICKARD | SLIGO HOLDINGS LLC | 4/27/2002 | 751455 | 1262 | | Bossier | LA |
| LA9260129-013 | WILLIAM T. LEMONS | SLIGO HOLDINGS LLC | 6/7/2002 | 751492 | 1262 | | Bossier | LA |

**END OF EXHIBIT A**

**Exhibit A-2 – Wells**
**Attached to and made part of that certain Purchase and Sale Agreement by and between**
**Weatherly Oil & Gas, LLC, as Seller, and Aethon United BR LP and PEO Haynesville Holdco, LLC, as Buyers**

| PROPERTY NO. | LA SERIAL NO. | PROPERTY NAME | API NO. | COUNTY/PARISH | STATE | BPO WI | BPO NRI | APO WI | APO NRI | ORRI | ALLOCATED VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 590180 | 18559 38113 | A J MURFF A-1 A J MURFF A-1-D | 17-015-01355 | BOSSIER | LA | 1.00000000 | .87333300 | 1.00000000 | .87333300 | | |
| 590196 | 140786 | CHATMAN 1 | 17-015-20380 | BOSSIER | LA | .62500000 | .55093728 | .62500000 | .55093728 | | |
| 590193 | 23948 | CHATMAN 2 | 17-015-02276 | BOSSIER | LA | 1.00000000 | .89333300 | 1.00000000 | .89333300 | | |
| 590215 | 225718 226592 | CHATMAN 18-1 CHATMAN 18-1-D-ALT | 17-015-23165 | BOSSIER | LA | .90625000 | .79765603 | .90625000 | .79765603 | | |
| 522098 | 230819 | CHATMAN 18-2 ALT | 17-015-23682 | BOSSIER | LA | .57500000 | .50255000 | .57500000 | .50255000 | | |
| 590379 | 230743 | CHATMAN 18-3 ALT | 17-015-23670 | BOSSIER | LA | .60000000 | .52440000 | .57500000 | .50255000 | | |
| 522237 | 231998 | CHATMAN 18-4 ALT | 17-015-23811 | BOSSIER | LA | .57500000 | .50255000 | .57500000 | .50255000 | | |
| 613336 | 234762 | CHATMAN 18-5 ALT | 17-015-24110 | BOSSIER | LA | .95000000 | .87518749 | .58437500 | .51074375 | | |
| 590293 | 228894 229449 | CHESAPEAKE FEE 14-1-ALT CHESAPEAKE FEE 14-1-D-ALT | 17-015-23423 | BOSSIER | LA | .93750000 | .82697797 | .93750000 | .82697797 | | |
| 590342 | 229197 | CHESAPEAKE FEE 14-2-ALT | 17-015-23463 | BOSSIER | LA | .93750000 | .82700537 | .93750000 | .82700537 | | |
| 611597 | 234544 | COI 20-1-ALT | 17-015-24083 | BOSSIER | LA | .95000000 | .75819919 | .92542729 | .73432363 | | |
| 522099 | 230718 | FREEDMAN 15-1-ALT | 17-015-23659 | BOSSIER | LA | .95000000 | .82671184 | .95000000 | .82671184 | | |
| 522100 | 230590 | FREEDMAN 15-2-ALT | 17-015-23638 | BOSSIER | LA | .95000000 | .82671184 | .95000000 | .82671184 | | |
| 590252 | 76467 30861 | FREEDMAN UNIT A-1 FREEDMAN UNIT A-1-D | 17-015-01656 | BOSSIER | LA | 1.00000000 | .87022300 | 1.00000000 | .87022300 | | |
| 590337 | 973153 | GREYSTONE PETROLEUM LLC SWD 1 | 17-015-88087 | BOSSIER | LA | 1.00000000 | .00000000 | 1.00000000 | .00000000 | | |
| 590254 | 19586 | H G FREEDMAN 1 | 17-015-01661 | BOSSIER | LA | 1.00000000 | .87132100 | 1.00000000 | .87132100 | | |
| 522101 | 230620 | HALL 17-1 ALT | 17-015-23645 | BOSSIER | LA | .95000000 | .63584053 | .95000000 | .63584053 | .06835938 | |
| 590217 | 227430 | HALL 20-1 | 17-015-23299 | BOSSIER | LA | .97239312 | .77049766 | .97239312 | .77049766 | | |
| 611595 | 233743 | HALL 20-2 ALT | 17-015-24001 | BOSSIER | LA | .95000000 | .75819921 | .92846144 | .73666074 | | |
| 611596 | 233868 | HALL 20-3 ALT | 17-015-24017 | BOSSIER | LA | .95000000 | .75819919 | .92542729 | .73432377 | | |
| 590290 | 228419 | JAMERSON 24-1-ALT | 17-015-23374 | BOSSIER | LA | 1.00000000 | .87682000 | 1.00000000 | .87682000 | | |
| 590246 | 49110 | JETER 1-D | 17-015-01617 | BOSSIER | LA | 1.00000000 | .88642700 | 1.00000000 | .88642700 | | |
| 522050 | 229956 229990 | JETER 23-1 JETER 23-1-D-ALT | 17-015-23567 | BOSSIER | LA | .95000000 | .75141148 | .95000000 | .75141148 | | |

| 522102 | 231516 | JETER 23-2 ALT | 17-015-23753 | BOSSIER | LA | .95000000 | .75141147 | .95000000 | .75141147 | | |
| 522204 | 231639 | JETER 23-3 ALT | 17-015-23765 | BOSSIER | LA | .95000000 | .83032227 | .95000000 | .83032227 | | |
| 522083 | 230608 | JETER 24-1 ALT | 17-015-23640 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 522189 | 231472 | JETER 24-2 ALT | 17-015-23745 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 590236 | 19872 | JETER A-1 | 17-015-01560 | BOSSIER | LA | 1.00000000 | .87883450 | 1.00000000 | .87883450 | | |
| 590235 | 78904 | JETER A-2 | 17-015-01559 | BOSSIER | LA | 1.00000000 | .87883450 | 1.00000000 | .87883450 | | |
| 590288 | 228270 | JOHNSON 24 1-ALT | 17-015-23355 | BOSSIER | LA | 1.00000000 | .87682000 | 1.00000000 | .87682000 | | |
| 522105 | 230992 | KERR 24-1 ALT | 17-015-23701 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 522104 | 230723 | KERR 24-2 ALT | 17-015-23664 | BOSSIER | LA | .95000000 | .83124999 | .95000000 | .83124999 | | |
| 522106 | 231072 | KERR 24-3 ALT | 17-015-23708 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 615192 | 235196 | KERR 24-4 ALT | 17-015-24167 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 522190 | 235339 | KERR 24-5 ALT | 17-015-24182 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 590346 | 49067 | KERR A-6 RE | 17-015-01554 | BOSSIER | LA | 1.00000000 | .76785130 | 1.00000000 | .76785130 | | |
| 590345 | 26148<br>41314 | KERR C-1<br>KERR C-1-D | 17-015-01548 | BOSSIER | LA | 1.00000000 | .87682000 | 1.00000000 | .87682000 | | |
| 610784 | 232916 | KERR ETAL 24 1 ALT | 17-015-23910 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 590274 | 217318 | L M MOFFITT ETAL 1-ALT | 17-015-22740 | BOSSIER | LA | 1.00000000 | .87655900 | 1.00000000 | .87655900 | | |
| 590289 | 228418 | LAWRENCE ET AL 24-1-ALT | 17-015-23373 | BOSSIER | LA | 1.00000000 | .87682000 | 1.00000000 | .87682000 | | |
| 612207 | 234417 | LAWRENCE ET AL 24-2 ALT | 17-015-24074 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 522197 | 231539 | LEMON HEIRS 20-1 ALT | 17-015-23755 | BOSSIER | LA | .92846142 | .73666074 | .92846142 | .73666074 | | |
| 590242 | 19932<br>46008 | LENA SCHNITT 3-ALT<br>LENA SCHNITT 3-D | 17-015-01598 | BOSSIER | LA | .93750000 | .82763920 | .93750000 | .82763920 | | |
| 590206 | 218077 | MARTIN TIMBER CO 1 | 17-015-22767 | BOSSIER | LA | 1.00000000 | .81224367 | 1.00000000 | .81224367 | | |
| 590214 | 225605 | MARTIN TIMBER CO 2 | 17-015-23158 | BOSSIER | LA | 1.00000000 | .80756833 | 1.00000000 | .80756833 | | |
| 610786 | 234194 | MARTIN TIMBER CO 3-ALT | 17-015-23911 | BOSSIER | LA | .95000000 | .76718991 | .95000000 | .76718991 | | |
| 610789 | 232918 | MARTIN TIMBER CO 4-ALT | 17-015-23912 | BOSSIER | LA | .95000000 | .76718991 | .95000000 | .76718991 | | |
| 613756 | 234795 | MARTIN TIMBER CO 5 ALT | 17-015-24115 | BOSSIER | LA | .95000000 | .76718991 | .95000000 | .76718991 | | |
| 590287 | 227964 | MCGUIRE 13-1-ALT | 17-015-23328 | BOSSIER | LA | 1.00000000 | .86132800 | 1.00000000 | .86132800 | .01367200 | |
| 590292 | 228701<br>229305 | MCGUIRE 13-2-ALT<br>MCGUIRE 13-2-D-ALT | 17-015-23412 | BOSSIER | LA | 1.00000000 | .86132800 | 1.00000000 | .86132800 | .01367200 | |
| 522124 | 230621 | MCGUIRE 13-3 ALT | 17-015-23646 | BOSSIER | LA | .95000000 | .81826160 | .95000000 | .81826160 | .01367200 | |
| 522240 | 232000 | MCGUIRE 13-4 ALT | 17-015-23813 | BOSSIER | LA | .95000000 | .81826160 | .95000000 | .81826160 | .01367200 | |

| 612454 | 234528 | MCGUIRE 13-5 ALT | 17-015-24081 | BOSSIER | LA | .95000000 | .81826160 | .95000000 | .81826160 | .01367200 | |
| 613783 | 235118 | MCGUIRE 13-6 ALT | 17-015-24160 | BOSSIER | LA | .95000000 | .81826160 | .95000000 | .81826160 | .01367200 | |
| 613784 | 235119 | MCGUIRE 13-7 ALT | 17-015-24161 | BOSSIER | LA | .95000000 | .81826160 | .95000000 | .81826160 | .01367200 | |
| 590218 | 228094 | MURFF 17-1-ALT | 17-015-23335 | BOSSIER | LA | 1.00000000 | .66930583 | 1.00000000 | .66930583 | .06835938 | |
| 590086 | 228161 | MURFF 19-1-ALT | 17-015-23344 | BOSSIER | LA | 1.00000000 | .87500000 | 1.00000000 | .87500000 | | |
| 590209 | 220028 | MURFF 1-ALT | 17-015-22834 | BOSSIER | LA | 1.00000000 | .75000000 | 1.00000000 | .75000000 | .12500000 | |
| 590216 | 226232 | MURFF 2-ALT | 17-015-23202 | BOSSIER | LA | 1.00000000 | .75000000 | 1.00000000 | .75000000 | .12500000 | |
| 590184 | 20240 41115 | MURFF A-2 MURFF A-2-D | 17-015-01397 | BOSSIER | LA | 1.00000000 | .87333300 | 1.00000000 | .87333300 | | |
| 590181 | 71391 72768 | MURFF A-3 MURFF A-3-D | 17-015-01361 | BOSSIER | LA | 1.00000000 | .87333300 | 1.00000000 | .87333300 | | |
| 590182 | 78632 79592 | MURFF B-2 MURFF B-2-D | 17-015-01362 | BOSSIER | LA | 1.00000000 | .87321500 | 1.00000000 | .87321500 | | |
| 590186 | 41105 41637 | MURFF C-1 MURFF C-1-D | 17-015-01411 | BOSSIER | LA | 1.00000000 | .87416700 | 1.00000000 | .87416700 | | |
| 590204 | 217158 | MURFF C-2-ALT | 17-015-22725 | BOSSIER | LA | .62500000 | .55156228 | .62500000 | .55156228 | | |
| 590222 | 228930 229329 | MURFF HEIRS 17-2-ALT MURFF HEIRS 17-2-D-ALT | 17-015-23432 | BOSSIER | LA | 1.00000000 | .66930583 | 1.00000000 | .66930583 | .06835938 | |
| 590087 | 229198 229560 | MURFF HEIRS 17-3-ALT MURFF HEIRS 17-3-D-ALT | 17-015-23464 | BOSSIER | LA | 1.00000000 | .66930583 | 1.00000000 | .66930583 | .06835938 | |
| 522095 | 230403 | MURFF HEIRS 17-4-ALT | 17-015-23618 | BOSSIER | LA | .95000000 | .70419991 | .95000000 | .70419991 | | |
| 522109 | 230988 | MURFF HEIRS 17-5-ALT | 17-015-23700 | BOSSIER | LA | .95000000 | .63584053 | .95000000 | .63584053 | .06835938 | |
| 613526 | 234530 235175 | MURFF HEIRS 17-8-ALT MURFF HEIRS 17-8-D-ALT | 17-015-24082 | BOSSIER | LA | .95000000 | .63584053 | .95000000 | .63584053 | .06835938 | |
| 612208 | 234120 235264 | MURFF HEIRS 17-9-ALT MURFF HEIRS 17-9-D-ALT | 17-015-24052 | BOSSIER | LA | .95000000 | .63584053 | .95000000 | .63584053 | .06835938 | |
| 590325 | 229675 229676 | MURFF HEIRS 18-1-ALT MURFF HEIRS 18-1-D-ALT | 17-015-23523 | BOSSIER | LA | .57500000 | .50255000 | .57500000 | .50255000 | | |
| 611594 | 233762 | MURFF HEIRS 18-2-ALT | 17-015-24002 | BOSSIER | LA | .57500000 | .50255000 | .57500000 | .50255000 | | |
| 522067 | 230120 230315 | MURFF HEIRS 18-3-ALT MURFF HEIRS 18-3-D-ALT | 17-015-23586 | BOSSIER | LA | .57500000 | .50255000 | .57500000 | .50255000 | | |
| 611593 | 233763 | MURFF HEIRS 18-4-ALT | 17-015-24003 | BOSSIER | LA | .57500000 | .50255000 | .57500000 | .50255000 | | |
| 612457 | 234697 | MURFF HEIRS 18-5-ALT | 17-015-24100 | BOSSIER | LA | .57500000 | .50255000 | .57500000 | .50255000 | | |
| 610980 | 233081 | MURFF HEIRS 19-1-ALT | 17-015-23934 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 613339 | 234680 | MURFF HEIRS 19-2-ALT | 17-015-24099 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |

| 522110 | 230749 | MURFF HEIRS 19-3-ALT | 17-015-23672 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 522111 | 230763 | MURFF HEIRS 19-4-ALT | 17-015-23674 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 522225 | 232501 | MURFF HEIRS 19-5-ALT | 17-015-23881 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 613338 | 234796 | MURFF HEIRS 19-8 ALT | 17-015-24116 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 590187 | 37540 37882 | MURFF SKANNAL 1 MURFF SKANNAL 1-D | 17-015-01417 | BOSSIER | LA | 1.00000000 | .89333300 | 1.00000000 | .89333300 | | |
| 522113 | 230780 | PAGE 18-1-ALT | 17-015-23678 | BOSSIER | LA | .57500000 | .50255000 | .57500000 | .50255000 | | |
| 522094 | 230404 | PETTIT HEIRS 17-1-ALT | 17-015-23619 | BOSSIER | LA | .95000000 | .63584053 | .63584053 | .63584053 | .06835938 | |
| 522114 | 230721 | PETTIT HEIRS 17-2-ALT | 17-015-23662 | BOSSIER | LA | .95000000 | .70419991 | .95000000 | .70419991 | | |
| 522115 | 230820 | PETTIT HEIRS 17-3-ALT | 17-015-23683 | BOSSIER | LA | .95000000 | .63584053 | .63584053 | .63584053 | .06835938 | |
| 522116 | 230993 | PETTIT HEIRS 17-4 | 17-015-23702 | BOSSIER | LA | .95000000 | .77573557 | .44412555 | .33309538 | | |
| 522045 | 229954 229955 | R O ROY 18-1-ALT R O ROY 18-1-D-ALT | 17-015-23566 | BOSSIER | LA | .57500000 | .50255000 | .57500000 | .50255000 | | |
| 590099 | 229566 229567 | R O ROY 18-2-ALT R O ROY 18-2-D-ALT | 17-015-23504 | BOSSIER | LA | .62500000 | .54625000 | .62500000 | .54625000 | | |
| 522066 | 230121 | R O ROY 18-3-ALT | 17-015-23587 | BOSSIER | LA | .57500000 | .50255000 | .57500000 | .50255000 | | |
| 522205 | 230948 | R O ROY 18-4-ALT | 17-015-23697 | BOSSIER | LA | .57500000 | .50255000 | .57500000 | .50255000 | | |
| 522241 | 231999 | R O ROY 18-5-ALT | 17-015-23812 | BOSSIER | LA | .57500000 | .50255000 | .57500000 | .50255000 | | |
| 522236 | 232021 | R O ROY 18-6-ALT | 17-015-23816 | BOSSIER | LA | .57500000 | .50255000 | .57500000 | .50255000 | | |
| 613337 | 234803 | R O ROY 18-8-ALT | 17-015-24117 | BOSSIER | LA | .95000000 | .87518749 | .58437500 | .51074375 | | |
| 614630 | 235039 | R O ROY 18-9-ALT | 17-015-24154 | BOSSIER | LA | .95000000 | .87518749 | .58437500 | .51074375 | | |
| 590207 | 218102 | R O ROY 1-ALT | 17-015-22769 | BOSSIER | LA | .62500000 | .55156228 | .62500000 | .55156228 | | |
| 590276 | 218208 | R V KERR ETAL 1 | 17-015-22774 | BOSSIER | LA | 1.00000000 | .87682000 | 1.00000000 | .87682000 | | |
| 590240 | 19200 | ROOS 1 | 17-015-01593 | BOSSIER | LA | 1.00000000 | .87500000 | 1.00000000 | .87500000 | | |
| 590286 | 227882 | ROOS 14-1-ALT | 17-015-23323 | BOSSIER | LA | .93750000 | .82697797 | .93750000 | .82697797 | | |
| 522117 | 230880 | ROOS 14-2-ALT | 17-015-23690 | BOSSIER | LA | .89375000 | .78277111 | .88766556 | .77670737 | | |
| 590291 | 228660 229276 | ROSCOE 14-1-ALT ROSCOE 14-1-D | 17-015-23405 | BOSSIER | LA | .93750000 | .82697797 | .93750000 | .82697797 | | |
| 590088 | 229445 229608 | ROSCOE 14-2 ROSCOE 14-2-D-ALT | 17-015-23492 | BOSSIER | LA | .93750000 | .82031250 | .93750000 | .82031250 | | |
| 522085 | 230249 | ROSCOE 14-3-ALT | 17-015-23602 | BOSSIER | LA | .88831968 | .77727969 | .88831968 | .77727969 | | |
| 522118 | 230728 | ROSCOE 14-4 | 17-015-23669 | BOSSIER | LA | .88783112 | .77685224 | .88783112 | .77685224 | | |
| 590241 | 26169 46066 | ROSCOE A-1 ROSCOE A-1-D | 17-015-01596 | BOSSIER | LA | 1.00000000 | .87500000 | 1.00000000 | .87500000 | | |

| 590341 | 22172 | SANDIDGE 1 | 17-015-01614 | BOSSIER | LA | 1.00000000 | .80000000 | 1.00000000 | .80000000 | | |
| 522119 | 230744 | SCHNITT 14-1-ALT | 17-015-23671 | BOSSIER | LA | .89375000 | .78277111 | .88766556 | .77670737 | | |
| 522238 | 232027 | SCHNITT 14-2-ALT | 17-015-23818 | BOSSIER | LA | .97500000 | .85312509 | .88750000 | .77656250 | | |
| 590258 | 126420 | SCHNITT 4 | 17-015-20112 | BOSSIER | LA | 1.00000000 | .87500000 | 1.00000000 | .87500000 | | |
| 590230 | 29118 81832 | SCHULER A-3-ALT SCHULER A-3-D | 17-015-01510 | BOSSIER | LA | 1.00000000 | .87500000 | 1.00000000 | .87500000 | | |
| 590096 | 38295 45051 | SECTION 13-1-ALT SECTION 13-1-D | 17-015-01525 | BOSSIER | LA | 1.00000000 | .86132800 | 1.00000000 | .86132800 | .01367200 | |
| 590231 | 65065 66276 | SECTION 13-2-D SECTION 13-2-ALT | 17-015-01524 | BOSSIER | LA | 1.00000000 | .87500000 | 1.00000000 | .87500000 | | |
| 590255 | 71375 72792 | SECTION 13-3 SECTION 13-3-D | 17-015-02258 | BOSSIER | LA | 1.00000000 | .87500000 | 1.00000000 | .87500000 | | |
| 590340 | 71985 72769 | SECTION 13-4 SECTION 13-4-D | 17-015-01542 | BOSSIER | LA | 1.00000000 | .87500000 | 1.00000000 | .87500000 | | |
| 590243 | 45101 45749 | SECTION 14-1-ALT SECTION 14-1-D | 17-015-01604 | BOSSIER | LA | .93750000 | .82031560 | .93750000 | .82031560 | | |
| 590245 | 71618 | SECTION 14-2 | 17-015-01613 | BOSSIER | LA | .88888900 | .71111008 | .88888900 | .71111008 | | |
| 590343 | 135374 | SECTION 14-A-2 | 17-015-20311 | BOSSIER | LA | .93750000 | .82670230 | .93750000 | .82670230 | | |
| 590264 | 155870 | SECTION 14-A-3 | 17-015-21063 | BOSSIER | LA | .95312500 | .78832844 | .95312500 | .78832844 | | |
| 590253 | 71376 | SECTION 15-22-J-1 | 17-015-01657 | BOSSIER | LA | 1.00000000 | .87132100 | 1.00000000 | .87132100 | | |
| 590198 | 174327 | SECTION 17-2-ALT | 17-015-21635 | BOSSIER | LA | 1.00000000 | .73766521 | 1.00000000 | .73766521 | | |
| 590188 | 63382 65094 | SECTION 18-1 SECTION 18-1-D-ALT | 17-015-01419 | BOSSIER | LA | .62500000 | .55093728 | .62500000 | .55093728 | | |
| 590185 | 69832 71617 | SECTION 19 SECTION 19-1-D | 17-015-01403 | BOSSIER | LA | 1.00000000 | .87355900 | 1.00000000 | .87355900 | | |
| 590197 | 160411 | SECTION 19-2-ALT | 17-015-21154 | BOSSIER | LA | 1.00000000 | .87355900 | 1.00000000 | .87355900 | | |
| 590338 | 171267 | SECTION 20-2 | 17-015-21540 | BOSSIER | LA | 1.00000000 | .80000000 | 1.00000000 | .80000000 | | |
| 590344 | 80614 | SECTION 23-1 | 17-015-01622 | BOSSIER | LA | 1.00000000 | .87500000 | 1.00000000 | .87500000 | | |
| 590263 | 155869 | SECTION 24-1-ALT | 17-015-21062 | BOSSIER | LA | 1.00000000 | .87655900 | 1.00000000 | .87655900 | | |
| 590347 | 37027 37388 | SECTION 25-1 SECTION 25-1-D | 17-015-01561 | BOSSIER | LA | 1.00000000 | .82000000 | 1.00000000 | .82000000 | | |
| 522193 | 231555 | SHEPPARD 19-1-ALT | 17-015-23756 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 522194 | 231942 | SHEPPARD 19-2-ALT | 17-015-23802 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 522120 | 230853 231640 | SHEPPARD 20-1-ALT SHEPPARD 20-1-D-ALT | 17-015-23688 | BOSSIER | LA | .92846142 | .73666077 | .92846142 | .73666077 | | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 522187 | 231556 | SHEPPARD 20-2-ALT | 17-015-23757 | BOSSIER | LA | .92846142 | .73666072 | .92846142 | .73666072 | | |
| 590295 | 229283 229510 | SKANNAL 13-1-ALT SKANNAL 13-1-D-ALT | 17-015-23474 | BOSSIER | LA | 1.00000000 | .86132800 | 1.00000000 | .86132800 | .01367200 | |
| 590100 | 229594 229835 | SKANNAL 13-2-ALT SKANNAL 13-2-D-ALT | 17-015-23515 | BOSSIER | LA | 1.00000000 | .86132800 | 1.00000000 | .86132800 | .01367200 | |
| 522047 | 229741 229876 | SKANNAL 13-3-ALT SKANNAL 13-3-D-ALT | 17-015-23527 | BOSSIER | LA | .95000000 | .81826160 | .95000000 | .81826160 | .01367200 | |
| 522046 | 229830 229841 | SKANNAL 13-4-ALT SKANNAL 13-4-D-ALT | 17-015-23542 | BOSSIER | LA | .95000000 | .81826160 | .95000000 | .81826160 | .01367200 | |
| 522091 | 231416 | SKANNAL 13-5-ALT | 17-015-23610 | BOSSIER | LA | .95000000 | .81826160 | .95000000 | .81826160 | .01367200 | |
| 522092 | 230313 230506 | SKANNAL 13-6-ALT SKANNAL 13-6-D-ALT | 17-015-23611 | BOSSIER | LA | .95000000 | .81826160 | .95000000 | .81826160 | .01367200 | |
| 522096 | 230405 | SKANNAL 13-7-ALT | 17-015-23620 | BOSSIER | LA | .95000000 | .81826160 | .95000000 | .81826160 | .01367200 | |
| 611592 | 233958 | SKANNAL 13-8-ALT | 17-015-24027 | BOSSIER | LA | .95000000 | .81826160 | .95000000 | .81826160 | .01367200 | |
| 611598 | 234119 | SKANNAL 13-9-ALT | 17-015-24051 | BOSSIER | LA | .95000000 | .81826160 | .95000000 | .81826160 | .01367200 | |
| 612455 | 234562 | SKANNAL 13-10-ALT | 17-015-24084 | BOSSIER | LA | .95000000 | .81826160 | .95000000 | .81826160 | .01367200 | |
| 522049 | 230122 230591 | SKANNAL 14-1-ALT SKANNAL 14-1-D-ALT | 17-015-23588 | BOSSIER | LA | .88831968 | .77728564 | .88831968 | .77728564 | | |
| 522198 | 233520 | SKANNAL 14-2-ALT | 17-015-23880 | BOSSIER | LA | .88750000 | .77656250 | .88750000 | .77656250 | | |
| 522244 | 232029 | SKANNAL 14-3-ALT | 17-015-23819 | BOSSIER | LA | .88750000 | .77656250 | .88750000 | .77656250 | | |
| 590221 | 228923 229450 | SKANNAL 19-1-ALT SKANNAL 19-1-D-ALT | 17-015-23430 | BOSSIER | LA | 1.00000000 | .87500000 | 1.00000000 | .87500000 | | |
| 590090 | 229397 229511 | SKANNAL 19-2-ALT SKANNAL 19-2-D-ALT | 17-015-23490 | BOSSIER | LA | 1.00000000 | .87500000 | 1.00000000 | .87500000 | | |
| 522084 | 230314 230504 | SKANNAL 19-3-ALT SKANNAL 19-3-D-ALT | 17-015-23612 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 522186 | 231565 | SKANNAL 19-4-ALT | 17-015-23759 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 614672 | 235276 | SKANNAL 19-5-ALT | 17-015-24178 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 611591 | 233939 | SKANNAL 19-9-ALT | 17-015-24023 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 590262 | 141169 | SKANNAL 5 | 17-015-20403 | BOSSIER | LA | 1.00000000 | .86132800 | 1.00000000 | .86132800 | .01367200 | |
| 590269 | 209878 | SKANNAL 6-ALT | 17-015-22519 | BOSSIER | LA | 1.00000000 | .87500000 | 1.00000000 | .87500000 | | |
| 590275 | 217319 | SKANNAL 7-ALT | 17-015-22741 | BOSSIER | LA | 1.00000000 | .86132800 | 1.00000000 | .86132800 | .01367200 | |
| 590233 | 16434 | SKANNAL A-1 | 17-015-01540 | BOSSIER | LA | 1.00000000 | .87500000 | 1.00000000 | .87500000 | | |
| 590256 | 125610 | SKANNAL A-3 | 17-015-20106 | BOSSIER | LA | 1.00000000 | .87500000 | 1.00000000 | .87500000 | | |
| 590244 | 17231 | SKANNAL B-1 | 17-015-01608 | BOSSIER | LA | .88888890 | .79027900 | .88888890 | .79027900 | | |

| 590257 | 125707 | SKANNAL C-4 | 17-015-20107 | BOSSIER | LA | 1.00000000 | .87500000 | 1.00000000 | .87500000 | | |
| 613823 | 235509 | SMITH 19-1-ALT | 17-015-24196 | BOSSIER | LA | .95000000 | .83125000 | .95000000 | .83125000 | | |
| 590285 | 225950 226556 | THIGPEN 13-1-ALT THIGPEN 13-1-D-ALT | 17-015-23187 | BOSSIER | LA | 1.00000000 | .86132800 | 1.00000000 | .86132800 | .01367200 | |
| 590091 | 229430 229514 | THIGPEN 13-2-ALT THIGPEN 13-2-D-ALT | 17-015-23491 | BOSSIER | LA | 1.00000000 | .86132800 | 1.00000000 | .86132800 | .01367200 | |
| 522121 | 230922 231845 | THIGPEN 13-3-ALT THIGPEN 13-3-D-ALT | 17-015-23695 | BOSSIER | LA | .95000000 | .81826160 | .95000000 | .81826160 | .01367200 | |
| 522239 | 232001 | THIGPEN 13-4-ALT | 17-015-23814 | BOSSIER | LA | .95000000 | .83193360 | .95000000 | .83193360 | | |
| 590203 | 216811 | THIGPEN-HEROLD C-1-ALT | 17-015-22705 | BOSSIER | LA | 1.00000000 | .87355900 | 1.00000000 | .87355900 | | |
| 590220 | 228357 | TLC ENTERPRISES 29-1-ALT | 17-015-23366 | BOSSIER | LA | 1.00000000 | .80756833 | 1.00000000 | .80756833 | | |
| 522051 | 229875 229930 | TREAT 14-1-ALT TREAT 14-1-D-ALT | 17-015-23551 | BOSSIER | LA | .90395144 | .79095751 | .88832644 | .77728564 | | |
| 590273 | 217270 | WEBB A-2 | 17-015-22733 | BOSSIER | LA | 1.00000000 | .79735344 | 1.00000000 | .79735344 | | |
| 522122 | 230921 | WEBB A-3-ALT | 17-015-23694 | BOSSIER | LA | .95000000 | .75141148 | .94932360 | .75141148 | | |
| 522103 | 231818 | WRIGHT 20-1 SWD | 17-015-23684 | BOSSIER | LA | .95000000 | .00000000 | .95000000 | .00000000 | | |

**END OF EXHIBIT A-2**

**Exhibit A-3 – Contracts**
**Attached to and made part of that certain Purchase and Sale Agreement by and between**
**Weatherly Oil & Gas, LLC, as Seller, and Aethon United BR LP and PEO Haynesville Holdco, LLC, as Buyers**

| AGREEMENT NO. | AGREEMENT TYPE | FIRST PARTY | SECOND PARTY | DATE | PARISH | STATE |
|---|---|---|---|---|---|---|
| JOA 000-0002 | OPERATING AGREEMENT | CHESAPEAKE LOUISIANA L P | CHESAPEAKE INVESTMENTS | 1/15/2008 | BOSSIER | LA |
| JOA 926-0002 | OPERATING AGREEMENT | UNION PRODUCING COMPANY | ARKANSAS LOUISIANA GAS CO | 1/1/1957 | BOSSIER | LA |
| JOA 926-0004 | OPERATING AGREEMENT | UNION PRODUCING COMPANY | A J HODGES, ET AL | 6/2/1958 | BOSSIER | LA |
| JOA 926-0005 | JOINT OPERATING AGREEMENT | ARKANSAS LOUISIANA GAS COMPANY | MURPHY CORPORATION ETAL | 10/1/1956 | BOSSIER | LA |
| | OPERATING AGREEMENT | ARKANSAS LOUISIANA GAS COMPANY | MURPHY CORPORATION ETAL | 2/1/1961 | BOSSIER | LA |
| | SALE AND PURCHASE OF NATURAL GAS | TEXLA ENERGY MANAGEMENT, INC | WEATHERLY OIL & GAS, LLC | 9/5/2006 | BOSSIER | LA |
| | SALE AND PURCHASE OF CRUDE OIL & CONDENSATE | GENESIS CRUDE OIL, L.P. | CHESAPEAKE OPERATING INC. | 8/25/2004 | BOSSIER | LA |
| Contract #21615 | COMPRESSOR AGREEMENTS | J-W POWER COMPANY | WEATHERLY OIL & GAS, LLC | 10/1/2017 | BOSSIER | LA |
| Contract #21839 | COMPRESSOR AGREEMENTS | J-W POWER COMPANY | WEATHERLY OIL & GAS, LLC | 1/26/2018 | BOSSIER | LA |

| AGREEMENT NO. | GRANTOR | GRANTEE | DATE | PARISH | STATE | BOOK | PAGE | ENTRY |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| LA9990321-000 | A C SKANNAL JR ET AL | UNITED GAS PIPE LINE COMPANY | 1/7/1949 | BOSSIER | LA | 199 | 2 | |
| LA9990396-000 | A J MURFF JR & S DORMAN MURFF & SALLIE L BEVILL & MRS A J MURFF & MRS MARGARET M ROGERS & MRS FANNIE M KINCAIDE & MRS ROXA M BROWNING & MRS KATE MURFF LAWRENCE & MRS AUDREY MURFF SHEPPARD | UNITED GAS PIPE LINE CO | 1/27/1940 | BOSSIER | LA | 143 | 561 | 33476 |
| LA9990446-000 | ANDREW JACKSON MURFF, JR, ET AL | UNITED GAS PIPE LINE CO | 9/19/1950 | BOSSIER | LA | 217 | 336 | 76313 |
| LA9990621-000 | ANDY PROPERTIES, LLC | CHESAPEAKE OPERATING INC. | 2/14/2005 | BOSSIER | LA | 1331 | | 826861 |
| LA9990968-000 | ARDIS WILLIAMS JR | CHESAPEAKE ENERGY MARKETING, INC. | 12/11/2004 | BOSSIER | LA | 1329 | 225 | 825476 |
| LA9990974-000 | ARTHUR B SINGLETON | CHESAPEAKE ENERGY MARKETING, INC. | 1/3/2005 | BOSSIER | LA | 1329 | 246 | 825482 |
| LA9990983-000 | BANK ONE TRUST CO. N.A. TRUSTEE UNDER THE WILL OF RALPH M. CLOUD | CHESAPEAKE ENERGY MARKETING, INC. | 2/11/2005 | BOSSIER | LA | 1336 | 133 | 831566 |

| LA9990984-000 | BANK ONE TRUST CO., NA | CHESAPEAKE ENERGY MARKETING, INC. | 2/14/2005 | BOSSIER | LA | C1336 | 149 | 831569 |
|---|---|---|---|---|---|---|---|---|
| LA9990301-000 | BARBARA MONTEILH | CORNERSTONE NATURAL GAS COMPANY | 5/23/1990 | BOSSIER | LA | 964 | 460 | 510633 |
| LA9990276-000 | BETTY JEAN HALL | CORNERSTONE NATURAL GAS COMPANY | 4/2/1990 | BOSSIER | LA | 958 | 472 | 506581 |
| LA9990287-000 | BETTY MIMS OLIVER | CORNERSTONE NATURAL GAS COMPANY | 2/8/1990 | BOSSIER | LA | 959 | 151 | 507453 |
| LA9990975-000 | BILLIE FAYE WILLIS DUPUY & S DENISE SIMS | CHESAPEAKE ENERGY MARKETING, INC. | 12/24/2004 | BOSSIER | LA | 1329 | 250 | 825483 |
| LA9990265-000 | BILLIE SUE MIMS ALFORD | CORNERSTONE NATURAL GAS COMPANY | 5/14/1990 | BOSSIER | LA | 965 | 111 | 511010 |
| LA9990609-000 | BILLY FOSTER PROPERTIES, INC | CHESAPEAKE OPERATING INC. | 2/1/2005 | BOSSIER | LA | 1331 | | 826858 |
| LA9990956-000 | BOBBE NELL HIBLER TOOKE PROTECTIVE TRUST | CHESAPEAKE ENERGY MARKETING, INC. | 9/23/1988 | BOSSIER | LA | 1329 | 141 | 825430 |
| LA9990299-000 | BOOKER T WASHINGTON | CORNERSTONE NATURAL GAS COMPANY | 10/4/1990 | BOSSIER | LA | 969 | 929 | 513242 |
| LA9990970-000 | BRENDA HAYWARD | CHESAPEAKE ENERGY MARKETING, INC. | 11/9/2004 | BOSSIER | LA | 1329 | 235 | 825479 |
| LA9990365-001 | CALVIN BROWN & JOE BROWN & BENJAMIN BROWN & WILLIAM BROWN & MARY ANN BROWN & H K BROWN | UNITED GAS PIPE LINE CO | 10/11/1939 | BOSSIER | LA | 143 | 371 | 32758 |
| LA9990252-000 | CATHERINE DALE LUSK | GREYSTONE PETROLEUM LLC | 6/13/2002 | BOSSIER | LA | 1266 | 531 | 750145 |
| | CEMI | CHESAPEAKE MIDSTREAM GAS SERVICES, L.L.C. | 2/11/2005 | BOSSIER | LA | 1483 | 570 | |
| LA9990286-000 | CHARITY MIMS & MATTHEW MIMS & ANNIE MIMS SMITH | CORNERSTONE NATURAL GAS COMPANY | 2/2/1990 | BOSSIER | LA | 959 | 143 | 507451 |
| LA9990636-000 | CHARLES E, JR & KELLI J PITTS | CHESAPEAKE OPERATING INC. | 6/6/2005 | BOSSIER | LA | 1350 | | 846607 |
| LA9990314-000 | CHARLES M ROBINSON | CORNERSTONE NATURAL GAS COMPANY | 2/8/1990 | BOSSIER | LA | 958 | 514 | 506592 |
| LA9990262-000 | CHARLES VERLON HALL | CORNERSTONE NATURAL GAS COMPANY | 7/24/1990 | BOSSIER | LA | 969 | 921 | 513240 |
| LA9990966-000 | CHARLIE WILLIAMS | CHESAPEAKE ENERGY MARKETING, INC. | 1/6/2004 | BOSSIER | LA | 1329 | 219 | 825474 |
| | CHESAPEAKE LOUISIANA LP; CHESAPEAKE OPERATING, INC. | MID-AMERICA MIDSTREAM GAS SERVICES, L.L.C. | 2/11/2005 | BOSSIER | LA | 1568 | 871 | |
| LA9990650-000 | CHESAPEAKE OPERATING INC. | WEYERHAEUSER COMPANY | 12/15/2004 | BOSSIER | LA | 1331 | | 826865 |
| LA9990596-000 | CHESAPEAKE OPERATING INC. | KELVIN VAN ARSDALE | 12/2/2004 | BOSSIER | LA | 1331 | | 826853 |

| LA9990597-000 | CHESAPEAKE OPERATING INC. | DOROTHY ROLLINS | 12/7/2004 | BOSSIER | LA | 1331 | | 826847 |
|---|---|---|---|---|---|---|---|---|
| LA9990600-000 | CHESAPEAKE OPERATING INC. | LESLIE VAN | 12/20/2004 | BOSSIER | LA | 1331 | | 826862 |
| LA9990601-000 | CHESAPEAKE OPERATING INC. | RONALD L VAN | 12/6/2004 | BOSSIER | LA | 1331 | | 826850 |
| LA9990605-000 | CHESAPEAKE OPERATING INC. | HAROLD VAN ARSDALE | 12/2/2004 | BOSSIER | LA | 1331 | | 826854 |
| LA9990606-000 | CHESAPEAKE OPERATING INC. | ALEAN HUNTER | 1/18/2005 | BOSSIER | LA | 1331 | | 826860 |
| LA9990607-000 | CHESAPEAKE OPERATING INC. | CONNIE RIVERS | 12/2/2004 | BOSSIER | LA | 1331 | | 826852 |
| LA9990617-000 | CHESAPEAKE OPERATING INC. | JAMES E & CATHRERINE D LUSK | 11/15/2005 | BOSSIER | LA | 1357 | | 853586 |
| LA9990618-000 | CHESAPEAKE OPERATING INC. | ANDY PROPERTIES, LLC | 2/28/2005 | BOSSIER | LA | 1350 | | 846608 |
| LA9990619-000 | CHESAPEAKE OPERATING INC. | ROY D & TERRI C BANES | 3/30/2005 | BOSSIER | LA | 1350 | | 846624 |
| LA9990620-000 | CHESAPEAKE OPERATING INC. | ANDY PROPERTIES, LLC | 2/5/2005 | BOSSIER | LA | 1350 | | 846609 |
| LA9990289-000 | CLAIRA MIMS SULLIVAN | CORNERSTONE NATURAL GAS COMPANY | 10/2/1990 | BOSSIER | LA | 1059 | 833 | 580416 |
| LA9990971-000 | CLAUDE A DANCE JR | CHESAPEAKE ENERGY MARKETING, INC. | 12/18/2004 | BOSSIER | LA | 1329 | 238 | 825480 |
| LA9990673-000 | CLYDE HANLEY, JR & NANCY | CHESAPEAKE OPERATING INC | 5/12/2006 | BOSSIER | LA | | | |
| | CMGS | MID-AMERICA MIDSTREAM GAS SERVICES, L.L.C. | 12/12/2003 | BOSSIER | LA | 1527 | 236 | |
| LA9990994-000 | COLUMBUS K MORRIS & CLEOPHUS MORRIS HEIRS OF THE WILL AND THEO MORRIS ESTATE | CHESAPEAKE ENERGY MARKETING, INC. | 10/21/2004 | BOSSIER | LA | C1336 | 92 | 831558 |
| | CONRAD C. ISOM; VIRGINIA HEARD ISOM | GULF STATES PIPELINE CORPORATION | 9/12/1988 | BOSSIER | LA | 915 | 663 | |
| LA9990349-001 | CORNERSTONE NATURAL GAS CO | FOSTER S TEAGUE | 2/7/1990 | BOSSIER | LA | | 609 | 506623 |
| LA9994143-000 | CORNERSTONE NATURAL GAS CO | MARY EVELYN BELL MCGUIRE ET AL | 1/23/1990 | BOSSIER | LA | 958 | 598 | 506620 |
| LA9990349-003 | CORNERSTONE NATURAL GAS CO. | ELSA JANE TEAGUE LAMPKIN | 2/6/1990 | BOSSIER | LA | | 603 | 506621 |
| LA9990350-000 | CORNERSTONE NATURAL GAS CO. | PREMIER BANK TRUSTEE | 2/20/1990 | BOSSIER | LA | | 595 | 506619 |
| LA9990349-002 | CORNERTSTONE NATURAL GAS CO. | ANN SCOTT MORRIS | 2/15/1990 | BOSSIER | LA | | 606 | 506622 |
| LA9991002-000 | DANNIE GLENN BATES & FELICIDAD R BATES | CHESAPEAKE ENERGY MARKETING, INC. | 1/3/2005 | BOSSIER | LA | 1329 | 290 | 825493 |
| LA9990960-000 | DAVID VAN BROWN & LETA MICHEAL HALL BROWN | CHESAPEAKE ENERGY MARKETING, INC. | 10/22/2004 | BOSSIER | LA | 1329 | 158 | 825434 |
| LA9990292-000 | DAVIS JAMES JR & JANE B JAMES | CORNERSTONE NATURAL GAS COMPANY | 6/1/1990 | BOSSIER | LA | 958 | 619 | 506627 |
| LA9990318-000 | DEPARTMENT OF THE AIR FORCE BARKSDALE AIR FORCE BASE | GREYSTONE PETROLEUM LLC | 1/28/2003 | BOSSIER | LA | 589 | 3 | |
| LA9994142-000 | DONALD H HERRON & JAYNE ANN HERRON | CORNERSTONE NATURAL GAS COMPANY | 12/29/1989 | BOSSIER | LA | 958 | 572 | 506612 |
| LA9990266-000 | DORIS MARIE HALL HARRIS | CORNERSTONE NATURAL GAS COMPANY | 5/21/1990 | BOSSIER | LA | 965 | 107 | 511009 |

| LA9990284-000 | DOROTHY D MIMS | CORNERSTONE NATURAL GAS COMPANY | 2/7/1990 | BOSSIER | LA | 959 | 147 | 507452 |
|---|---|---|---|---|---|---|---|---|
| LA9990297-000 | DOROTHY MORELY TAYLOR | CORNERSTONE NATURAL GAS CO | 2/22/1989 | BOSSIER | LA | | 553 | 506604 |
| LA9990315-000 | DOROTHY ROBINSON DAVIS & RAYFIELD ROBINSON & JOYCE LEE ROBINSON | CORNERSTONE NATURAL GAS COMPANY | 2/6/1990 | BOSSIER | LA | 958 | 511 | 506591 |
| LA9990355-000 | DOUGLAS LEE NUEHRING & PENNY NUEHRING | CORNERSTONE NATURAL GAS COMPANY | 2/16/1990 | BOSSIER | LA | 958 | 565 | 506608 |
| LA9990977-000 | DR JEAN C BRIERRE | CHESAPEAKE ENERGY MARKETING, INC. | 10/18/2004 | BOSSIER | LA | 1329 | 258 | 825485 |
| LA9990363-001 | E G CRAVATH | UNITED GAS PIPE LINE CO | 10/13/1939 | BOSSIER | LA | 143 | 375 | 32781 |
| LA9990259-000 | EARL W BARTON & KAREN TONEY BARTON | CORNERSTONE NATURAL GAS COMPANY | 3/7/1990 | BOSSIER | LA | 959 | 163 | 507456 |
| LA9990976-000 | EARNESTINE SMALLWOOD MONROE | CHESAPEAKE ENERGY MARKETING, INC. | 1/3/2004 | BOSSIER | LA | 1329 | 254 | 825484 |
| LA9990954-000 | ELIZABETH BUSCH MILLER | CHESAPEAKE ENERGY MARKETING, INC. | 9/21/1988 | BOSSIER | LA | 1329 | 134 | 825428 |
| LA9990295-000 | ELLEN TIPPETT POWERS | CORNERSTONE NATURAL GAS COMPANY | 6/1/1990 | BOSSIER | LA | 958 | 622 | 506628 |
| LA9990973-000 | ELM GROVE PLANTATION INC | CHESAPEAKE ENERGY MARKETING, INC. | 1/31/2005 | BOSSIER | LA | 1330 | 175 | 826495 |
| LA9990352-008 | ELNORA WILLIAMS BURKS | CORNERSTONE NATURAL GAS COMPANY | 12/19/1989 | BOSSIER | LA | 958 | 578 | 506614 |
| LA9990283-000 | EMMA LEE HOGAN WOODSON | CORNERSTONE NATURAL GAS COMPANY | 4/27/1990 | BOSSIER | LA | 958 | 444 | 506574 |
| LA9990298-000 | ERNEST L & BETTY BROWN | CORNERSTONE NATURAL GAS CO | 12/6/1989 | BOSSIER | LA | 958 | 550 | 506603 |
| LA9990278-000 | ERNESTINE HALL | CORNERSTONE NATURAL GAS COMPANY | 4/5/1990 | BOSSIER | LA | 958 | 464 | 506579 |
| LA9990261-000 | ERNESTINE MOORE BODY | CORNERSTONE NATURAL GAS COMPANY | 5/21/1990 | BOSSIER | LA | 969 | 925 | 513241 |
| LA9990271-000 | ESSIE MAE BRYANT | CORNERSTONE NATURAL GAS COMPANY | 4/3/1990 | BOSSIER | LA | 958 | 492 | 506586 |
| LA9990370-000 | ESTATE OF J L HODGES | UNITED GAS PIPE LINE CO | 10/9/1939 | BOSSIER | LA | 143 | 367 | 32756 |
| LA9990366-000 | ESTATE OF J Y SNYDER | UNITED GAS PIPE LINE CO | 10/16/1939 | BOSSIER | LA | 143 | 387 | 32810 |
| LA9990263-000 | ESTELLA HOGAN PRICE | CORNERSTONE NATURAL GAS COMPANY | 4/3/1990 | BOSSIER | LA | 965 | 119 | 511012 |

| LA9990373-000 | EUGENE WILLIAMS & LURENER WILLIAMS | UNITED GAS PIPE LINE CO | 9/21/1939 | BOSSIER | LA | 143 | 328 | 32613 |
|---|---|---|---|---|---|---|---|---|
| LA9990309-000 | F B SANDERS | CORNERSTONE NATURAL GAS COMPANY | 2/14/1990 | BOSSIER | LA | 958 | 530 | 506597 |
| LA9990599-000 | FLOYD & MIRA V ODOM | CHESAPEAKE OPERATING INC. | 11/22/2004 | BOSSIER | LA | 1331 | | 826855 |
| LA9990603-000 | FLOYD & MIRA V ODOM | CHESAPEAKE OPERATING INC. | 4/10/2005 | BOSSIER | LA | 1350 | | 846605 |
| LA9990961-000 | FORCAP INVESTMENTS LP | CHESAPEAKE ENERGY MARKETING, INC. | 12/20/2004 | BOSSIER | LA | 1329 | 162 | 825435 |
| LA9990610-000 | FRANK SCOTT MORAN | CHESAPEAKE OPERATING INC. | 7/15/2004 | BOSSIER | LA | 1318 | | 815384 |
| LA9990614-000 | FRANK SCOTT MORAN | CHESAPEAKE OPERATING INC. | 7/15/2004 | BOSSIER | LA | 1318 | | 815385 |
| LA9990644-000 | FRANK SCOTT MORAN | CHESAPEAKE OPERATING INC. | 9/14/2004 | BOSSIER | LA | 1320 | | 817070 |
| LA9990305-000 | GEORGE C & HATTIE HOWELL | CORNERSTONE NATURAL GAS CO | 12/11/1989 | BOSSIER | LA | | 542 | 506601 |
| LA9990277-000 | GEORGE HAROLD MIMS | CORNERSTONE NATURAL GAS COMPANY | 4/6/1990 | BOSSIER | LA | 958 | 468 | 506580 |
| LA9990684-000 | GEORGE O WILLIAMSON | CHESAPEAKE OPERATING INC. | 10/12/2006 | BOSSIER | LA | | | |
| LA9998925-000 | GEORGE O WILLIAMSON | CHESAPEAKE OPERATING INC. | 10/12/2006 | BOSSIER | LA | C1397 | 14 | 889946 |
| LA9990660-000 | GERALDINE MURRAY CHANDLER | CHESAPEAKE OPERATING INC. | 5/12/2006 | BOSSIER | LA | | | |
| LA9990300-000 | GERTHA S MOSELEY | CORNERSTONE NATURAL GAS COMPANY | 7/31/1990 | BOSSIER | LA | 964 | 463 | 510634 |
| LA9990274-000 | GLORIA JEAN HALL RICHMOND | CORNERSTONE NATURAL GAS COMPANY | 4/3/1990 | BOSSIER | LA | 958 | 480 | 506583 |
| LA9990953-000 | GORDON C WARD & DOROTHY L MAULDIN WARD | CHESAPEAKE ENERGY MARKETING, INC. | 9/20/1988 | BOSSIER | LA | 1329 | 130 | 825427 |
| LA9990993-000 | GRACIE COOPER & ELMORE MORRIS & IDA  & JIMMIE LEE FRENCH & MARSHA, MELANCON HEIRS OF THE WILL AND THEO MORRIS ESTATE | CHESAPEAKE ENERGY MARKETING, INC. | 10/21/2004 | BOSSIER | LA | C1336 | 96 | 831559 |
| LA9990952-000 | GREGORY L LIBKE & KATHLEEN W LIBKE | CHESAPEAKE ENERGY MARKETING, INC. | 9/19/1988 | BOSSIER | LA | 1329 | 127 | 825425 |
| LA9994134-000 | GULF SOUTH PIPELINE COMPANY LP | GREYSTONE PETROLEUM LLC | 12/12/2003 | BOSSIER | LA | 1297 | 546 | 793421 |
| LA9994145-000 | GULF SOUTH PIPELINE COMPANY LP | GREYSTONE PETROLEUM LLC | 9/18/1988 | BOSSIER | LA | C1297 | 709 | 793578 |
| | GULF SOUTH PIPELINE COMPANY LP; CHESAPEAKE LOUISIANA LP; | MID-AMERICA MIDSTREAM GAS SERVICES, L.L.C. | 12/12/2003 | BOSSIER | LA | 1570 | 503 | |
| | GULF STATES PIPELINE CORPORATION | GULF STATES PIPELINE CORPORATION | 9/13/1988 | BOSSIER | LA | 1305 | 963 | |
| LA9990375-000 | H A TOOKE & H J TOOKE | UNITED GAS PIPE LINE CO | 9/20/1939 | BOSSIER | LA | 143 | 324 | 32611 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| LA9990398-000 | H L SKANNAL | UNITED GAS PIPE LINE CO | 2/12/1940 | BOSSIER | LA | 143 | 628 | 33697 |
| LA9990365-002 | H T BROWN | UNITED GAS PIPE LINE CO | 10/17/1939 | BOSSIER | LA | 143 | 377 | 32782 |
| LA9990279-000 | HARNEY S BOGAN JR | CORNERSTONE NATURAL GAS COMPANY | 3/30/1990 | BOSSIER | LA | 958 | 460 | 506578 |
| LA9990964-000 | HENRY JOHNSON JR & SHELIA JOHNSON & JOHN C WILLIAMS & IDA WILLIAMS | CHESAPEAKE ENERGY MARKETING, INC. | 11/20/2004 | BOSSIER | LA | 1329 | 215 | 825473 |
| LA9990372-000 | I V WILLIAMS | UNITED GAS PIPE LINE CO | 9/21/1939 | BOSSIER | LA | 143 | 326 | 32612 |
| LA9990312-000 | IDA SANDERS FARLEY | CORNERSTONE NATURAL GAS COMPANY | 2/15/1990 | BOSSIER | LA | 958 | 521 | 506594 |
| LA9990969-000 | IRMA WILLIAMS MALONE | CHESAPEAKE ENERGY MARKETING, INC. | 1/7/2005 | BOSSIER | LA | 1329 | 232 | 825478 |
| | ISOM FARMS, LLC | GULF STATES PIPELINE CORPORATION | 9/14/1988 | BOSSIER | LA | 1355 | 175 | |
| | ISOM FARMS, LLC | REGENCY INTRASTATE GAS, LLC | 9/15/1988 | BOSSIER | LA | 1308 | 335 | |
| | ISOM FARMS, LLC | REGENCY INTRASTATE GAS, LLC | 9/16/1988 | BOSSIER | LA | 1510 | 142 | |
| | ISOM FARMS, LLC | REGENCY INTRASTATE GAS, LLC | 9/17/1988 | BOSSIER | LA | 1517 | 878 | |
| LA9990360-000 | J S MCCULLOUGH & MARY C THIGPEN & S L HEROLD & SKANNAL H L & ESTATE OF J Y SNYDER & W H HODGES JR | UNITED GAS PIPE LINE CO | 10/17/1939 | BOSSIER | LA | 143 | 383 | 32808 |
| LA9990374-000 | J S MCCULLOUGH & MARY C THIGPEN & S L HEROLD & SKANNAL H L & ESTATE OF J Y SNYDER & W H HODGES JR | UNITED GAS PIPE LINE CO | 10/17/1939 | BOSSIER | LA | 143 | 385 | 32809 |
| LA9990323-000 | J.E. CHILDERS | UNITED GAS PIPE LINE COMPANY | 11/9/1945 | BOSSIER | LA | 167 | 599 | |
| LA9990369-002 | J.S. WILLIAMS, ET AL | UNITED GAS PIPE LINE COMPANY | 10/27/1939 | BOSSIER | LA | 143 | 418 | 32907 |
| LA9990681-000 | JACK B & OLA M MCCORMICK | CHESAPEAKE OPERATING INC. | 5/12/2006 | BOSSIER | LA | | | |
| LA9990613-000 | JAMES E & CATHERINE D LUSK | CHESAPEAKE OPERATING INC. | 11/15/2005 | BOSSIER | LA | 1357 | | 853587 |
| LA9990291-000 | JAMES ROBERT CORRALES & RHONDA FLEMING CORRALES | CORNERSTONE NATURAL GAS COMPANY | 1/3/1990 | BOSSIER | LA | 958 | 559 | 506606 |
| LA9990290-000 | JAMES STEVEN NUEHRING & LINDA NUEHRING | CORNERSTONE NATURAL GAS COMPANY | 1/17/1990 | BOSSIER | LA | 958 | 562 | 506607 |
| LA9990963-000 | JERRELL D CLARK | CHESAPEAKE ENERGY MARKETING, INC. | 12/20/2004 | BOSSIER | LA | 1329 | 172 | 825437 |
| LA9990658-000 | JERRY & BREGITTE GREER | CHESAPEAKE EXPLORATION LP | 5/12/2006 | BOSSIER | LA | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| LA9990281-000 | JERRY WAYNE HALL | CORNERSTONE NATURAL GAS COMPANY | 4/10/1990 | BOSSIER | LA | 958 | 452 | 506576 |
| LA9990275-000 | JESSIE LEWIS | CORNERSTONE NATURAL GAS COMPANY | 4/5/1990 | BOSSIER | LA | 958 | 476 | 506582 |
| LA9990272-000 | JOE MIMS JR | CORNERSTONE NATURAL GAS COMPANY | 4/5/1990 | BOSSIER | LA | 958 | 488 | 506585 |
| LA9990304-000 | JOESEPHINE HOWELL BROWN | CORNERSTONE NATURAL GAS CO | 12/8/1989 | BOSSIER | LA | | 546 | 506602 |
| LA9990248-000 | JOHN F HICKS | GREYSTONE PETROLEUM LLC | 6/18/2002 | BOSSIER | LA | 1260 | 543 | 750149 |
| LA9990352-002 | JOHN JOHNSON | CORNERSTONE NATURAL GAS COMPANY | 7/28/1990 | BOSSIER | LA | 964 | 469 | 510636 |
| LA9990990-000 | JOHN MURRY LEGRAND JR & CHRISTINE TUMINELLO LEGRAND | CHESAPEAKE ENERGY MARKETING, INC. | 10/26/2004 | BOSSIER | LA | 1329 | 277 | 825490 |
| LA9990545-000 | JORDAN BURKS | CHESAPEAKE OPERATING INC. | 3/30/2005 | BOSSIER | LA | | | |
| LA9990264-000 | JORDAN MIMS III | CORNERSTONE NATURAL GAS COMPANY | 5/11/1990 | BOSSIER | LA | 965 | 115 | 511011 |
| LA9990258-000 | JORETTA ROBINSON | CORNERSTONE NATURAL GAS COMPANY | 1/5/1990 | BOSSIER | LA | 958 | 508 | 506590 |
| LA9990433-000 | JOSEPH L HODGES ET AL | UNITED GAS PIPE LINE CO | 7/6/1956 | BOSSIER | LA | 264 | 406 | 110514 |
| LA9990991-000 | JUANITA BIGGS JOLLY | CHESAPEAKE ENERGY MARKETING, INC. | 12/17/2004 | BOSSIER | LA | C1343 | 190 | 838883 |
| LA9990972-000 | JULIA E MCCORMICK & JAMES H JONES & DIXIE ALFORD JONES | CHESAPEAKE ENERGY MARKETING, INC. | 10/26/2004 | BOSSIER | LA | 1329 | 242 | 825481 |
| LA9990955-000 | KELLY DIANE TOOKE KELLY HENDERSON | CHESAPEAKE ENERGY MARKETING, INC. | 9/22/1988 | BOSSIER | LA | 1329 | 137 | 825429 |
| LA9990663-000 | KEVIN DALE BARNES | CHESAPEAKE OPERATING INC. | 5/12/2006 | BOSSIER | LA | C1384 | 117 | 879155 |
| LA9990962-000 | KORAN BAPTIST CHURCH INC | CHESAPEAKE ENERGY MARKETING, INC. | 12/19/2004 | BOSSIER | LA | 1329 | 168 | 825436 |
| LA9990965-000 | L C WILLIAMS & ESSIE WILLIAMS | CHESAPEAKE ENERGY MARKETING, INC. | 12/13/2004 | BOSSIER | LA | C1329 | 228 | 825477 |
| LA9990352-001 | LAURA JONES | CORNERSTONE NATURAL GAS COMPANY | 6/13/1990 | BOSSIER | LA | 965 | 96 | 511006 |
| LA9990351-000 | LAWRENCE & COMPANY INC | CORNERSTONE NATURAL GAS COMPANY | 2/27/1990 | BOSSIER | LA | 958 | 590 | 506618 |
| LA9990662-000 | LAWRENCE H & JOYCE Q WALKER | CHESAPEAKE OPERATING INC | 5/12/2006 | BOSSIER | LA | C1384 | 113 | 879154 |
| LA9990367-002 | LAWRENCE S HOBDY | UNITED GAS PIPE LINE CO | 10/18/1939 | BOSSIER | LA | 143 | 391 | 32846 |

| LA9991004-000 | LISA JUNE READHIMER GARRETT & DARRYL D GARRETT | CHESAPEAKE ENERGY MARKETING, INC. | 11/30/2004 | BOSSIER | LA | 1329 | 273 | 825489 |
| LA9990348-000 | LORRAINE SANDERS WINFREY | CORNERSTONE NATURAL GAS COMPANY | 6/7/1990 | BOSSIER | LA | 964 | 451 | 510630 |
| LA9990999-000 | LOUISE MARSHALL WOODS AN HEIR OF THE WILL AND THEO MORRIS ESTATE | CHESAPEAKE ENERGY MARKETING, INC. | 10/26/2004 | BOSSIER | LA | C1336 | 173 | 831574 |
| LA9990270-000 | LUCILLE BOGAN URBAS | CORNERSTONE NATURAL GAS COMPANY | 4/3/1990 | BOSSIER | LA | 958 | 496 | 506587 |
| LA9990306-000 | MARCI MCLEMORE | CORNERSTONE NATURAL GAS COMPANY | 5/14/1990 | BOSSIER | LA | 958 | 539 | 506600 |
| LA9990302-000 | MARGUERITE S FORD | CORNERSTONE NATURAL GAS COMPANY | 6/25/1990 | BOSSIER | LA | 964 | 457 | 510632 |
| LA9990255-000 | MARIANNE HAMITER WILLIAMS | GREYSTONE PETROLEUM LLC | 4/1/2004 | BOSSIER | LA | C1310 | 26 | 806187 |
| LA9990982-000 | MARIANNE HAMITER WILLIAMS | CHESAPEAKE ENERGY MARKETING, INC. | 3/2/2005 | BOSSIER | LA | C1336 | 115 | 831563 |
| LA9990307-000 | MARIE RIGGINS | CORNERSTONE NATURAL GAS COMPANY | 5/23/1990 | BOSSIER | LA | 958 | 536 | 506599 |
| LA9990267-000 | MARILYN HALL HARRIS | CORNERSTONE NATURAL GAS COMPANY | 5/29/1990 | BOSSIER | LA | 965 | 103 | 511008 |
| LA9990664-000 | MARION CASS GAIENNE RAMSEL | CHESAPEAKE ENERGY MARKETING INC | 5/12/2006 | BOSSIER | LA | C1384 | 101 | 879151 |
| LA9991003-000 | MARK L MONTGOMERY LLC | CHESAPEAKE ENERGY MARKETING, INC. | 12/8/2004 | BOSSIER | LA | 1329 | 294 | 825494 |
| LA9990988-000 | MARTIN TIMBER COMPANY LLC & JANE COLVIN HUBBARD & GUS W COLVIN JR & PATTY COLVIN HALL | CHESAPEAKE ENERGY MARKETING, INC. | 5/6/2005 | BOSSIER | LA | 1343 | 184 | 838882 |
| LA9991005-000 | MARTIN TIMBER COMPANY LLC | CHESAPEAKE ENERGY MARKETING, INC. | 5/6/2005 | BOSSIER | LA | 1343 | 174 | 838880 |
| LA9990269-000 | MARY EMMA MIMS | CORNERSTONE NATURAL GAS COMPANY | 4/6/1990 | BOSSIER | LA | 958 | 500 | 506588 |
| LA9990288-000 | MARY ETTA HALL | CORNERSTONE NATURAL GAS COMPANY | 5/2/1990 | BOSSIER | LA | 958 | 440 | 506573 |
| LA9990404-000 | MARY WEBB & ANNIE DELL ROBERSON & JOSEPH ROBERSON & TOMMIE BURKS & ELNORA ROBINSON | UNITED GAS PIPE LINE CO | 1/19/1940 | BOSSIER | LA | 143 | 525 | 33360 |

| LA9990403-000 | MATTIE WEBB & LITTLE FORD & ANN HILL & ALEX LAWSON & TAFT MILLER & ADDIE LEE ROBERSON & MOZELL COOPER ROBERSON & AARON PARISH & CLARENCE PARISH & ALICE LAWSON & LIZZIE PARISH & NAOMI DURHAM | UNITED GAS PIPE LINE CO | 10/19/1939 | BOSSIER | LA | 143 | 420 | 32908 |
|---|---|---|---|---|---|---|---|---|
| LA9990322-000 | MATTIE WEBB, ET AL | UNITED GAS PIPE LINE COMPANY | 1/17/1940 | BOSSIER | LA | 143 | 521 | |
| LA9990995-000 | MERCY BUTCHER AN HEIR OF THE WILL AND THEO MORRIS ESTATE | CHESAPEAKE ENERGY MARKETING, INC. | 10/20/2004 | BOSSIER | LA | C1336 | 157 | 831570 |
| LA9990293-000 | MICHAEL WAYNE HALLEMAN | CORNERSTONE NATURAL GAS COMPANY | 6/1/1990 | BOSSIER | LA | 958 | 616 | 506626 |
| LA9990378-000 | MILTON F SMITH | UNITED GAS PIPE LINE CO | 9/25/1939 | BOSSIER | LA | 143 | 333 | 32660 |
| LA9990352-006 | MINNIE LEE RUSSELL | CORNERSTONE NATURAL GAS COMPANY | 3/19/1990 | BOSSIER | LA | 958 | 584 | 506616 |
| LA9990364-000 | MOSE BROWN | UNITED GAS PIPE LINE CO | 10/6/1939 | BOSSIER | LA | 143 | 351 | 32734 |
| LA9994140-000 | MRS AUDREY MURFF SHEPPARD | UNITED GAS PIPE LINE CO | 10/4/1939 | BOSSIER | LA | 143 | 404 | |
| LA9990362-000 | MRS C W BIGGS & MRS ANNIE MAY YARBROUGH & ABNEY D SCANLAN INDIVIDUALLY AND ATTORNEY-IN-FACT FOR THE HEIRS OF MRS ADELAIDE A SCANLAND & HEIRS OF J M SCANLAND | UNITED GAS PIPE LINE CO | 10/5/1939 | BOSSIER | LA | 143 | 349 | 32733 |
| LA9990363-002 | MRS C W BODENHEIMER | UNITED GAS PIPE LINE CO | 10/12/1939 | BOSSIER | LA | 143 | 374 | 32780 |
| LA9990376-000 | MRS E N MORESI | UNITED GAS PIPE LINE CO | 10/18/1939 | BOSSIER | LA | 143 | 389 | 32811 |
| LA9990368-000 | MRS HATTIE D GRIFFITH & MRS ELMIRA C DICKSON & M E DODD FOUNDATION INC | UNITED GAS PIPE LINE CO | 10/18/1939 | BOSSIER | LA | 143 | 381 | 32807 |
| LA9990367-001 | MRS W C HAMITER & MRS C E BOWEN & ANNA HOBDY | UNITED GAS PIPE LINE CO | 10/9/1939 | BOSSIER | LA | 143 | 366 | 32755 |
| LA9990320-000 | MRS. C.D. HUNTER | UNITED GAS PIPE LINE COMPANY | 10/25/1946 | BOSSIER | LA | 172 | 618 | |
| LA9990316-000 | NADIE TERRELL | CORNERSTONE NATURAL GAS CO | 1/2/1990 | BOSSIER | LA | | 504 | 506589 |
| LA9990313-000 | NEANETTER SANDERS CLOUTIER | CORNERSTONE NATURAL GAS COMPANY | 2/17/1990 | BOSSIER | LA | 958 | 517 | 506593 |
| LA9990369-001 | NELL E DOLES & MARY E ROSS | UNITED GAS PIPE LINE CO | 10/19/1939 | BOSSIER | LA | 143 | 379 | 32806 |

| LA9990273-000 | NORA MAE BROWN MIMS | CORNERSTONE NATURAL GAS COMPANY | 4/6/1990 | BOSSIER | LA | 958 | 484 | 506584 |
|---|---|---|---|---|---|---|---|---|
| LA9990303-000 | O'DEA SANDERS | CORNERSTONE NATURAL GAS COMPANY | 5/12/1990 | BOSSIER | LA | 964 | 454 | 510631 |
| LA9991000-000 | ODESSA ROBERSON AN HEIR OF THE WILL AND THEO MORRIS ESTATE | CHESAPEAKE ENERGY MARKETING, INC. | 5/2/2005 | BOSSIER | LA | C1343 | 180 | 838881 |
| LA9990633-000 | OLDE OAK DEVELOPMENT, LLC | CHESAPEAKE OPERATING INC. | 9/20/2005 | BOSSIER | LA | 1357 | | 853583 |
| LA9990371-000 | P M ELSTON | UNITED GAS PIPE LINE CO | 10/3/1939 | BOSSIER | LA | 143 | 357 | 32738 |
| LA9990249-000 | PAUL J SCHAFFNER | GREYSTONE PETROLEUM LLC | 6/11/2002 | BOSSIER | LA | 1260 | 537 | 750147 |
| LA9990294-000 | PAUL, JOHN & THOMAS ROGERS | CORNERSTONE NATURAL GAS CO | 2/7/1990 | BOSSIER | LA | 1059 | 839 | 580417 |
| LA9990680-000 | PEGGY ANN & REX LLOYD GILLHAM | CHESAPEAKE OPERATING INC | 5/12/2006 | BOSSIER | LA | | | |
| LA9990986-000 | PEGGY PONDER WHITE | CHESAPEAKE ENERGY MARKETING, INC. | 12/20/2004 | BOSSIER | LA | 1336 | 105 | 831561 |
| LA9991006-000 | PEGGY PONDER WHITE | CHESAPEAKE ENERGY MARKETING, INC. | 12/20/2004 | BOSSIER | LA | C1336 | 127 | 831565 |
| LA9990352-003 | PERLIE MAE JOHNSON FORD | CORNERSTONE NATURAL GAS COMPANY | 7/28/1990 | BOSSIER | LA | 964 | 466 | 510635 |
| LA9990365-003 | PETER BROWN | UNITED GAS PIPE LINE CO | 10/27/1939 | BOSSIER | LA | 143 | 413 | 32880 |
| LA9990365-004 | PHILIP BROWN | UNITED GAS PIPE LINE CO | 10/31/1939 | BOSSIER | LA | 143 | 415 | 32881 |
| LA9990998-000 | PHILLIP MORRIS AN HEIR OF THE WILL AND THEO MORRIS ESTATE | CHESAPEAKE ENERGY MARKETING, INC. | 10/22/2004 | BOSSIER | LA | C1336 | 169 | 831573 |
| LA9990359-000 | R C THOMPSON | UNITED GAS PIPE LINE CO | 10/10/1939 | BOSSIER | LA | 143 | 369 | 32757 |
| LA9990383-000 | R V KERR | UNITED GAS PIPE LINE CO | 10/4/1939 | BOSSIER | LA | 143 | 323 | 32610 |
| LA9990402-000 | R V KERR | UNITED GAS PIPE LINE CO | 11/16/1939 | BOSSIER | LA | 143 | 458 | 33011 |
| LA9990285-000 | RALSTON L MIMS JR | CORNERSTONE NATURAL GAS COMPANY | 2/8/1990 | BOSSIER | LA | 959 | 155 | 507454 |
| LA9990661-000 | RAYMOND D & NELDA S GERMANY | CHESAPEAKE OPERATING, INC. | 5/12/2006 | BOSSIER | LA | C1384 | 109 | 879153 |
| LA9990959-000 | RICHARD LYNN HALL & ROXANN A HADWIN HALL | CHESAPEAKE ENERGY MARKETING, INC. | 10/10/2004 | BOSSIER | LA | 1329 | 154 | 825433 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| LA9990352-005 | ROBERT EDWARD TAYLOR | CORNERSTONE NATURAL GAS COMPANY | 3/3/1990 | BOSSIER | LA | 958 | 587 | 506617 |
| LA9990354-000 | ROBERT LEE SCHEIDLER & KYONG SUN KIM SCHEIDLER | CORNERSTONE NATURAL GAS COMPANY | 1/4/1990 | BOSSIER | LA | 958 | 569 | 506611 |
| LA9990679-000 | ROBERT W & GWENDA J ROE | CHESAPEAKE OPERATING INC | 5/12/2006 | BOSSIER | LA | | | |
| LA9990989-000 | RODNEY RAY READHIMER | CHESAPEAKE ENERGY MARKETING, INC. | 12/17/2004 | BOSSIER | LA | 1329 | 269 | 825488 |
| LA9990377-000 | ROGER E WHELESS & J W MURRAY & MRS ALICE A MEYER | UNITED GAS PIPE LINE CO | 10/9/1939 | BOSSIER | LA | 143 | 416 | 32882 |
| LA9990634-000 | ROOS PROPERTIES, LLC | CHESAPEAKE OPERATING INC. | 2/15/2005 | BOSSIER | LA | 1331 | | 826863 |
| LA9990997-000 | RUBY BRUTON AN HEIR OF THE WILL AND THEO MORRIS ESTATE | CHESAPEAKE ENERGY MARKETING, INC. | 10/27/2004 | BOSSIER | LA | C1336 | 165 | 831572 |
| LA9990253-000 | RUBY SIMPSON CLAYTON | GREYSTONE PETROLEUM LLC | 6/5/2002 | BOSSIER | LA | 1279 | 15 | 770176 |
| LA9990397-000 | S L HEROLD ET AL | UNITED GAS PIPE LINE CO | 2/13/1940 | BOSSIER | LA | 143 | 626 | 33696 |
| LA9990979-000 | SANDRA S BROOKS | CHESAPEAKE ENERGY MARKETING, INC. | 11/17/2004 | BOSSIER | LA | 1329 | 266 | 825487 |
| LA9990992-000 | SCOTT J PEAVY, IND & TRUSTEE OF MARGARET JORDAN PEAVY TRUST; WILLIAM A PEAVY, III, IND & TRUSTEE OF MARGARET JORDAN PEAVY TRUST | CHESAPEAKE ENERGY MARKETING, INC. | 12/15/2004 | BOSSIER | LA | C1329 | 280 | 825491 |
| LA9990674-000 | SIMON WEISS PROPERTIES, LLC | CHESAPEAKE OPERATING INC | 5/12/2006 | BOSSIER | LA | | | |
| LA9990296-000 | STANLEY RUSSELL TAYLOR | CORNERSTONE NATURAL GAS CO | 2/24/1990 | BOSSIER | LA | 958 | 556 | 506605 |
| LA9990260-000 | SYLVIA WRIGHT INDIVIDUALLY AND USUGRUCTUARY OF ESTATE OF WILLIAM C WRIGHT & RONALD D WRIGHT | CORNERSTONE NATURAL GAS COMPANY | 3/14/1990 | BOSSIER | LA | 959 | 159 | 507455 |
| LA9990401-000 | T H LAWRENCE | UNITED GAS PIPE LINE CO | 10/19/1939 | BOSSIER | LA | 143 | 411 | 32879 |
| LA9990256-000 | TARGET RESOURCES, INC. | GREYSTONE PETROLEUM LLC | 4/1/2004 | BOSSIER | LA | C1310 | 26 | 806188 |
| LA9990985-000 | TARGET RESOURCES, INC. | CHESAPEAKE ENERGY MARKETING, INC. | 12/20/2004 | BOSSIER | LA | 1336 | 100 | 831560 |
| LA9990987-000 | TARGET RESOURCES, INC. | CHESAPEAKE ENERGY MARKETING, INC. | 12/20/2004 | BOSSIER | LA | 1336 | 121 | 831564 |
| LA9990645-000 | TEDDY R & JO LYNN L TODD | CHESAPEAKE OPERATING INC. | 8/14/2004 | BOSSIER | LA | 1318 | | 815382 |
| LA9990978-000 | THE BALISTINE W HOPKINS REVOCABLE LIVING TRUST | CHESAPEAKE ENERGY MARKETING, INC. | 11/18/2004 | BOSSIER | LA | 1329 | 262 | 825486 |
| LA9990627-000 | TIMOTHY E HAMBLIN | CHESAPEAKE OPERATING INC. | 4/10/2005 | BOSSIER | LA | 1350 | | 846604 |

| LA9990308-000 | TINY B WYNNE | CORNERSTONE NATURAL GAS COMPANY | 2/16/1990 | BOSSIER | LA | 958 | 533 | 506598 |
|---|---|---|---|---|---|---|---|---|
| LA9990405-000 | UNITED GAS PIPE LINE COMPANY | ESTATE OF J Y SYNDER | 11/10/1939 | BOSSIER | LA | 143 | 460 | 33012 |
| LA9990411-000 | UNITED GAS PIPE LINE COMPANY | CHARLIE F SKANNAL | 11/16/1972 | BOSSIER | LA | 492 | 246 | 248446 |
| LA9990425-000 | UNITED GAS PIPE LINE COMPANY | E FOSTER SCHULER, ET AL | 8/27/1958 | BOSSIER | LA | 283 | 638 | 124520 |
| LA9990441-000 | UNITED GAS PIPE LINE COMPANY | E F SCHULER ET AL | 5/8/1952 | BOSSIER | LA | 233 | 410 | 85826 |
| LA9990442-000 | UNITED GAS PIPE LINE COMPANY | SYBIL MCDADE, ET AL | 5/8/1952 | BOSSIER | LA | 233 | 411 | 85827 |
| LA9990384-000 | UNITED GAS PIPELINE COMPANY | CHARLIE F SKANNAL | 8/26/1958 | BOSSIER | LA | 294 | 76 | 124383 |
| LA9990247-000 | VICTORINO R & PEGGY SUE LARA | GREYSTONE PETROLEUM LLC | 6/18/2002 | BOSSIER | LA | 1260 | 540 | 750148 |
| LA9990311-000 | VIRGIE LEE SANDERS YOUNG | CORNERSTONE NATURAL GAS COMPANY | 2/15/1990 | BOSSIER | LA | 958 | 524 | 506595 |
| LA9990282-000 | VIRGINIA BOGAN GILMORE | CORNERSTONE NATURAL GAS COMPANY | 4/20/1990 | BOSSIER | LA | 958 | 448 | 506575 |
| LA9990280-000 | W C SMITH JR | CORNERSTONE NATURAL GAS COMPANY | 4/1/1990 | BOSSIER | LA | 958 | 456 | 506577 |
| LA9990996-000 | WALTER B MORRIS AN HEIR OF THE WILL AND THEO MORRIS ESTATE | CHESAPEAKE ENERGY MARKETING, INC. | 10/21/2004 | BOSSIER | LA | C1336 | 161 | 831571 |
| LA9990967-000 | WAYNE HAYWARD | CHESAPEAKE ENERGY MARKETING, INC. | 11/29/2004 | BOSSIER | LA | 1329 | 222 | 825475 |
| LA9990611-000 | WESLEY D & MAUREEN MCKISSACK | CHESAPEAKE OPERATING INC. | 11/5/2004 | BOSSIER | LA | 1331 | | 826851 |
| LA9990612-000 | WESLEY D & MAUREEN MCKISSACK | CHESAPEAKE OPERATING INC. | 11/5/2004 | BOSSIER | LA | 1331 | | 826849 |
| LA9990981-000 | WEYERHAEUSER COMPANY | CHESAPEAKE ENERGY MARKETING, INC. | 3/28/2005 | BOSSIER | LA | 1336 | 138 | 831567 |
| LA9990361-000 | WILL MORIS | UNITED GAS PIPE LINE CO | 10/6/1939 | BOSSIER | LA | 143 | 352 | 32735 |
| LA9990268-000 | WILLA MAE SUTTER LOGAN AKA WILLA MAE SUDDUTH | CORNERSTONE NATURAL GAS COMPANY | 5/21/1990 | BOSSIER | LA | 965 | 99 | 511007 |
| LA9990317-000 | WILLAMETTE INDUSTRIES, INC. | CORNERSTONE NATURAL GAS CO | 6/14/1990 | BOSSIER | LA | | 472 | 510637 |
| LA9990957-000 | WILLIAM G LOWERY & SHARON STERLING LOWERY | CHESAPEAKE ENERGY MARKETING, INC. | 10/15/2004 | BOSSIER | LA | 1329 | 146 | 825431 |
| LA9990353-000 | WILLIAM H HUGHART & DOROTHY POWERS HUGHART | CORNERSTONE NATURAL GAS COMPANY | 1/5/1990 | BOSSIER | LA | 958 | 575 | 506613 |
| LA9990251-000 | WILLIAM H. HUGHART, ET AL | GREYSTONE PETROLEUM, LLC | 6/10/2002 | BOSSIER | LA | 1260 | 534 | 750146 |
| LA9990250-000 | WILLIAM R AND SYLVIA B MAGEE | GREYSTONE PETROLEUM LLC | 9/19/2002 | BOSSIER | LA | 1269 | 698 | 759290 |

| LA9990958-000 | WILLIAM RAY ARRANT & SHERYL MARIE STRAUB ARRANT | CHESAPEAKE ENERGY MARKETING, INC. | 10/10/2004 | BOSSIER | LA | 1329 | 150 | 825432 |
| LA9990352-007 | WILLIE BELL HARDY | CORNERSTONE NATURAL GAS COMPANY | 4/9/1990 | BOSSIER | LA | 958 | 581 | 506615 |
| LA9991001-000 | WILLIE GENE MARSHALL & SHARON M WRIGHT & DONALD RAY MARSHALL | CHESAPEAKE ENERGY MARKETING, INC. | 10/27/2004 | BOSSIER | LA | 1329 | 286 | 825492 |
| LA9990310-000 | ZENOBIA SANDERS ORR | CORNERSTONE NATURAL GAS COMPANY | 2/16/1990 | BOSSIER | LA | 958 | 527 | 506596 |

**END OF EXHIBIT A-3**

**Exhibit B**

**Attached to and made part of that certain Purchase and Sale Agreement by and between Weatherly Oil & Gas, LLC, as Seller, and Aethon United BR LP and PEO Haynesville Holdco, LLC, as Buyer**

FORM OF ASSIGNMENT

## ASSIGNMENT, BILL OF SALE, AND CONVEYANCE

| | | |
|---|---|---|
| STATE OF LOUISIANA | § | |
| | § | |
| PARISH OF BOSSIER | § | |

This ASSIGNMENT, BILL OF SALE, AND CONVEYANCE (this "***Assignment***") is executed to be effective for all purposes as of July 1, 2019, at 12:01 a.m., Central Time (the "***Effective Time***"), and is from Weatherly Oil & Gas, LLC, a Delaware limited liability company ("***Assignor***"), having as its address at 777 Taylor Street, Suite 902, Fort Worth, Texas, 76102, to Aethon United BR LP, a Delaware limited partnership ("***Aethon***"), having its address at 12377 Merit Drive, Suite 1200, Dallas, Texas 75251, and PEO Haynesville Holdco, LLC, a Delaware limited liability company ("***PEO***" and collectively with Aethon, "***Assignee***"), having as its address at 12377 Merit Drive, Suite 1200, Dallas, Texas 75251.  Assignor and Assignee are each referred to herein as a "***Party***", and Assignor and Assignee, collectively, as the "***Parties***".

## I.
## GRANTING, RESERVATION, AND HABENDUM CLAUSES

1.1     Grant.     For One Hundred Dollars ($100.00) and other good and valuable consideration, the receipt and sufficiency of which Assignor hereby acknowledges, Assignor has transferred and assigned, and does hereby transfer and assign, to (x) Aethon, a 90% undivided interest in and to, and (y) PEO, a 10% undivided interest in and to, effective as of the Effective Time, all of Assignor's rights, title and interests in and to the following properties and assets (less and except the Excluded Assets (as defined below), collectively, the "***Assets***"):

(a)     all oil and gas leases and oil, gas and mineral leases, subleases and other leaseholds, royalties, overriding royalties, net profits interests, production payments, carried interests, options and other rights to Hydrocarbons in place, in each case, whether producing or non-producing, as more particularly described in Exhibit A-1 (collectively, the "***Leases***"), together with (A) any and all other rights, titles and interests of Assignor in and to the lands covered or burdened thereby, and (B) all other interests of Assignor of any kind or character in and to the Leases;

(b)     all presently existing unitization, pooling and/or communitization agreements, orders, declarations or designations and statutorily, judicially or administratively created drilling, spacing and/or production units, whether recorded or unrecorded, insofar as the same are attributable or allocated to the Leases, and all of Assignor's interest in and to the properties covered or such units created thereby (collectively, the "***Units***"; and, together with the Leases, the "***Oil and Gas Interests***");

(c)     all wells located upon the Leases or Units or otherwise used in connection with the ownership or operation of the Assets, whether plugged and abandoned, including the wells set forth in Exhibit A-2 (the "***Wells***" and together with the Oil and Gas Interests, the "***Properties***");

(d)     all easements, surface leases, permits, licenses, servitudes, rights of way, surface use agreements and all other rights and appurtenances located on or primarily used in connection with the Properties (the "***Surface Rights***");

(e)     all tangible personal, movable and mixed property, equipment, machinery, fixtures and improvements, including all injection wells, salt water disposal facilities, well heads, well equipment, casing, manifolds, tubing, pumps, motors, gauges, valves, heaters, treaters, water lines, vessels, tanks, boilers, separators, treating equipment, compressors, pipelines, flow lines, gathering systems, processing and separation facilities, pads, structures, other equipment, automation systems including meters and related telemetry on wells, power lines, telephone and communication lines and other appurtenances, network equipment and associated peripherals, radio and telephone equipment (including cellular telephones), SCADA, telemetry and other measurement technology, and well communication devices, in each case, to the extent located on or primarily used in connection with the ownership or operation of the other Assets;

(f)     all contracts and agreements to the extent which all or any portion of the Properties or Surface Rights is subject, including the contracts and agreements set forth in Exhibit A-3 (the "***Contracts***");

(g)     all Hydrocarbons in, on, under or produced from or allocated to any of the Properties from and after the Effective Time, and all Hydrocarbons for which Assignor receives an adjustment to the Purchase Price under the  Agreement, and in each case, the proceeds thereof;

(h)     all rights, benefits and obligations arising from or in connection with any Imbalances attributable to of the Properties, existing as of or arising after the Effective Time;

(i)     the Records; and

(j)     except to the extent related to the Excluded Assets or Specified Obligations, any rights, claims, causes, causes of action, claims for relief, choses in action, rights of recovery, rights of set-off, rights of indemnity, contribution or recoupment, counter-claims, cross-claims and defenses of Assignor relating to the Assets described in items (a)-(i) above.

It is the intent of Assignor to convey to Assignee all of Assignor's right, title and interest in the Assets, from and after the Effective Time, regardless of whether or not the Assets have been correctly and fully described or identified herein, including but not limited to omission of any lease or leases, errors in description, any incorrect or misspelled names or any incorrectly transcribed or incorrect recording references.  Upon request by Assignee, Assignor agrees to execute and deliver, or cause to be executed and delivered, from time to time such further instruments of conveyance and transfer, and shall take such other actions as Assignee may reasonably request, to convey and

deliver the Assets to Assignee and to accomplish the orderly transfer of the Assets to Assignee in the manner contemplated by the Purchase Agreement.

TO HAVE AND TO HOLD, subject to the terms, exceptions and other provisions herein stated, the Assets, together with all rights, privileges and appurtenances thereto, unto Assignee and its successors and assigns forever.

1.2     Excluded Assets.  There is expressly excluded from this Assignment, and Assignor expressly excepts and reserves to itself, the following assets (the "**Excluded Assets**"): (a) all of Assignor's corporate minute books and corporate financial records that relate to Assignor's business generally; (b) all trade credits, all accounts, receivables, if any, and all other proceeds, income or revenues attributable to the Assets with respect to any period of time prior to the Effective Time; (c) all claims, causes of action, manufacturers' and contractors' warranties and other rights of Assignor arising under or with respect to (i) any Assets that are attributable to periods of time prior to the Effective Time including claims for adjustments or refunds, and (ii) any other Excluded Assets; (d) all Hydrocarbons produced from the Assets with respect to all periods prior to the Effective Time, other than those Hydrocarbons produced from or allocated to the Assets and in storage or existing in stock tanks, pipelines or plants (including inventory) as of the Effective Time for which the Purchase Price under the Agreement was adjusted upward at Closing; (e) all amounts held by Assignor in suspense that are attributable to sales of Hydrocarbons produced from the Assets, as applicable (including any amounts subject to escheat obligations pursuant to applicable Law); (f) all personal computers, network equipment and associated peripherals; (g) all drilling rigs, and all trucks, cars and vehicles; (h) all master services agreements or similar contracts; (i) all easements, rights-of-way, surface rights, equipment, pipe and inventory (in each case, whether located on or off the lands covered by the Leases or lands pooled or unitized therewith) not currently being used or held for use in connection with the ownership or operation of the Assets (other than the Surface Rights and any surface rights granted under any of the Leases); (j) all of Assignor's proprietary computer software, patents, trade secrets, copyrights, names, trademarks, logos and other intellectual property; (k) legal records and legal files of Assignor, including all work product of and attorney-client communications with Assignor's legal counsel or any other documents or instruments that may be protected by an attorney-client privilege or the attorney work-product doctrine, but excluding any title opinions covering the Oil and Gas Interests; (l) all documents and instruments and other data or information that cannot be disclosed to Assignee as a result of confidentiality arrangements under agreements with third parties; (m) all audit rights arising under any of the Contracts or otherwise with respect to (i) any period prior to the Effective Time, with respect to the Assets or (ii) any of the Excluded Assets; (n) all well data and geophysical and other seismic and related technical data and information relating to the Assets; (o) all oil and gas fee interests or mineral fee interests of Assignor and its Affiliates other than any directly relating to the Oil & Gas Interests or the lands covered thereby; (p) all claims of Assignor or any of its Affiliates for refunds of, rights to receive funds from any Governmental Authorities, or loss carry forwards or credits with respect to (i) any and all taxes imposed by any applicable Law on, or allocable to, Assignor or any of its Affiliates, or any combined, unitary or consolidated group of which any of the foregoing is or was a member, (ii) any taxes imposed on or with respect to the ownership or operation of the Excluded Assets, and (iii) any and all other taxes imposed on or with respect to the ownership or operation of the Assets for any tax period (or portion thereof) ending before the Effective Time and (q) any Contract that contains any firm transportation obligation, minimum volume commitment or similar obligation.

49

## II.
## DISCLAIMERS

2.1   <u>Special Warranty of Title</u>.  Assignor hereby agrees to warrant and defend title to the Wells shown on <u>Exhibit A-2</u>, to the extent of the interests shown on <u>Exhibit A-2</u>, unto Assignee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under Assignor or its Affiliates, but not otherwise.  Except as set forth in the preceding sentence of this <u>Section 2.1</u>, Assignor makes no warranty or representation, express, implied, statutory or otherwise, with respect to Assignor's title to any of the Assets.

2.2   <u>Subrogation</u>. Assignor hereby assigns to Assignee all rights, claims and causes of action under title warranties given or made by Assignor's predecessors in interest with respect to the Assets, and Assignee is specifically subrogated to all rights which Assignor may have against such predecessors in interest, in each case, to the extent Assignor may legally transfer such rights and grant such subrogation.

2.3   <u>Disclaimers</u>.

(a)   **EXCEPT AS AND TO THE LIMITED EXTENT EXPRESSLY SET FORTH IN SECTION 12 OF THE AGREEMENT OR IN THIS ASSIGNMENT, ASSIGNOR MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS, STATUTORY OR IMPLIED, AND ASSIGNOR EXPRESSLY DISCLAIMS ALL LIABILITY AND RESPONSIBILITY FOR ANY REPRESENTATION, WARRANTY, STATEMENT OR INFORMATION MADE OR COMMUNICATED (ORALLY OR IN WRITING) TO ASSIGNEE OR ANY ASSIGNEE REPRESENTATIVE (INCLUDING ANY OPINION, INFORMATION, PROJECTION OR ADVICE THAT MAY HAVE BEEN PROVIDED TO ASSIGNEE).  WITHOUT LIMITING THE GENERALITY OF THE FOREGOING PROVISIONS AND SUBJECT TO THE EXCEPTIONS SET FORTH THEREIN, ASSIGNOR EXPRESSLY DISCLAIMS ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY OR IMPLIED, AS TO (I) TITLE TO ANY OF THE ASSETS, (II) THE CONTENTS, CHARACTER OR NATURE OF ANY REPORT OF ANY PETROLEUM ENGINEERING CONSULTANT, OR ANY ENGINEERING, GEOLOGICAL OR SEISMIC DATA OR INTERPRETATION, RELATING TO THE PROPERTIES, (III) THE QUANTITY, QUALITY OR RECOVERABILITY OF HYDROCARBONS IN OR FROM THE PROPERTIES, (IV) ANY ESTIMATES OF THE VALUE OF THE ASSETS OR FUTURE REVENUES GENERATED BY THE ASSETS, (V) THE PRODUCTION OF HYDROCARBONS FROM THE PROPERTIES, (VI) THE MAINTENANCE, STATE OF REPAIR, CONDITION, QUALITY, SUITABILITY, DESIGN OR MARKETABILITY OF THE ASSETS, (VII) THE CONTENT, CHARACTER OR NATURE OF ANY INFORMATION, MEMORANDUM, REPORTS, BROCHURES, CHARTS OR STATEMENTS PREPARED BY OR ON BEHALF OF ASSIGNOR OR THIRD PARTIES WITH RESPECT TO THE ASSETS, (VIII) ANY OTHER MATERIALS OR INFORMATION THAT MAY HAVE BEEN MADE AVAILABLE TO ASSIGNEE OR ANY BUYER REPRESENTATIVE IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THE AGREEMENT OR ANY**

DISCUSSION OR PRESENTATION RELATING THERETO AND (IX) ANY IMPLIED OR EXPRESS WARRANTY OF FREEDOM FROM PATENT OR TRADEMARK INFRINGEMENT. ASSIGNOR FURTHER DISCLAIMS ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY OR IMPLIED, OF MERCHANTABILITY, FREEDOM FROM LATENT VICES OR DEFECTS OR REDHIBITORY DEFECTS, FITNESS FOR A PARTICULAR PURPOSE OR CONFORMITY TO MODELS OR SAMPLES OF MATERIALS OF ANY ASSETS, RIGHTS OF A PURCHASER UNDER LAW TO CLAIM DIMINUTION OF CONSIDERATION OR RETURN OF THE PURCHASE PRICE OR CONSIDERATION, IT BEING EXPRESSLY UNDERSTOOD AND AGREED BY THE PARTIES THAT (A) ASSIGNEE SHALL BE DEEMED TO BE ACQUIRING THE ASSETS IN THEIR PRESENT STATUS, CONDITION AND STATE OF REPAIR, "AS IS," "WHERE IS" AND WITH ALL FAULTS AND DEFECTS (KNOWN OR UNKNOWN, LATENT, DISCOVERABLE OR UNDISCOVERABLE), AND (B) ASSIGNEE HAS MADE OR CAUSED TO BE MADE SUCH INSPECTIONS AS ASSIGNEE DEEMS APPROPRIATE. ASSIGNOR HAS NOT AND WILL NOT MAKE ANY REPRESENTATION OR WARRANTY REGARDING ANY MATTER OR CIRCUMSTANCE RELATING TO ENVIRONMENTAL LAWS, THE RELEASE OF HAZARDOUS MATERIALS OR OTHER MATERIALS INTO THE ENVIRONMENT OR THE PROTECTION OF HUMAN HEALTH, SAFETY, NATURAL RESOURCES OR THE ENVIRONMENT, OR ANY OTHER ENVIRONMENTAL CONDITION OF THE ASSETS, AND NOTHING IN THIS ASSIGNMENT, IN THE AGREEMENT OR OTHERWISE SHALL BE CONSTRUED AS SUCH A REPRESENTATION OR WARRANTY.

(b)     THE PARTIES CERTIFY THAT THEY ARE NOT "CONSUMERS" WITHIN THE MEANING OF THE TEXAS DECEPTIVE TRADE PRACTICES (CONSUMER PROTECTION) ACT, SUBCHAPTER E OF CHAPTER 17, SECTIONS 17.41, ET SEQ. OF THE TEXAS BUSINESS AND COMMERCE CODE, AS AMENDED ("DTPA"). THE PARTIES COVENANT, FOR THEMSELVES AND FOR AND ON BEHALF OF ANY SUCCESSOR OR ASSIGNEE, THAT IF THE DTPA IS APPLICABLE TO THIS ASSIGNMENT: (1) THE PARTIES ARE "BUSINESS CONSUMERS" AS THAT TERM IS DEFINED IN THE DTPA; (2) EACH PARTY HEREBY WAIVES AND RELEASES ALL OF ITS RIGHTS AND REMEDIES THEREUNDER AS APPLICABLE TO THE OTHER PARTY AND ITS SUCCESSORS AND ASSIGNS; AND (3) EACH PARTY SHALL DEFEND AND INDEMNIFY THE OTHER PARTY FROM AND AGAINST ANY AND ALL CLAIMS OF OR BY THE INDEMNIFYING PARTY OR ANY OF ITS SUCCESSORS OR ASSIGNS OR ANY OF ITS OR THEIR AFFILIATES BASED IN WHOLE OR IN PART ON THE DTPA AND ARISING OUT OF OR IN CONNECTION WITH THIS ASSIGNMENT.

(c)     ASSIGNOR AND ASSIGNEE AGREE THAT, TO THE EXTENT REQUIRED BY APPLICABLE LAW TO BE EFFECTIVE, THE DISCLAIMERS OF CERTAIN REPRESENTATIONS AND

**WARRANTIES CONTAINED IN THIS <u>SECTION 2.3</u> ARE CONSPICUOUS DISCLAIMERS FOR THE PURPOSE OF ANY APPLICABLE LAW.**

### III.
### MISCELLANEOUS

3.1     <u>Purchase and Sale Agreement; Sale Order</u>.  This Assignment is expressly made subject to the terms of that certain Purchase and Sale Agreement between Assignor and Assignee dated August [__], 2019 (the "***Agreement***") and that certain Sale Order dated [_____] a copy of which is attached hereto as <u>Exhibit B</u> (the "***Sale Order***").  The delivery of this Assignment shall not affect, enlarge, diminish, or otherwise impair any of the representations, warranties, covenants, conditions, indemnities, terms, or provisions of the Agreement or the Sale Order.   The representations, warranties, covenants, conditions, indemnities, terms, and provisions contained in the Agreement or the Sale Order shall not be merged with or into this Assignment but shall survive the execution and delivery of this Assignment to the extent, and in the manner, set forth in the Agreement and the Sale Order, respectively.  In the event that any provision of this Assignment is construed to conflict with any provision of the Agreement, the provisions of the Agreement shall be deemed controlling to the extent of such conflict.  Any capitalized terms used but not defined in this Assignment shall have the meanings ascribed to those terms in the Agreement.

3.2     <u>Successors and Assigns</u>.  The provisions of this Assignment shall bind and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

3.3     <u>**GOVERNING LAW**</u>**.  EXCEPT TO THE EXTENT THE MANDATORY PROVISIONS OF THE BANKRUPTCY CODE APPLY, THIS ASSIGNMENT AND THE LEGAL RELATIONS BETWEEN ASSIGNOR AND ASSIGNEE HEREUNDER SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, EXCLUDING ANY CONFLICTS OF LAW RULE OR PRINCIPLE THAT MIGHT REFER CONSTRUCTION OF SUCH PROVISIONS TO THE LAWS OF ANOTHER JURISDICTION.**

3.4     <u>Exhibits; Recordation</u>.  All exhibits attached hereto are hereby made a part hereof and incorporated herein by this reference.  References in such exhibits to instruments on file in the public records are notice of such instruments for all purposes.  Unless provided otherwise, all recording references in such exhibits are to the appropriate records of the counties in which the Assets are located. To facilitate recordation, there may be omitted from the exhibits to this Assignment in certain counterparts descriptions of property located in recording jurisdictions other than the jurisdiction in which the particular counterpart is to be filed or recorded.

3.5     <u>Captions</u>.  The captions and article and section numbers in this Assignment are for convenience only and shall not be considered a part of or affect the construction or interpretation of any provision of this Assignment.  References in this Assignment to articles and sections are to articles and sections of this Assignment unless otherwise specified.

3.6     <u>Counterparts</u>.  This Assignment may be executed in one or more originals, but all of which together shall constitute one and the same instrument. Any signature delivered by a Party by facsimile or other electronic transmission shall be deemed an original signature hereto for all purposes.

**IN WITNESS WHEREOF**, this Assignment has been executed by each of the Parties as of the dates of the acknowledgments below but shall be effective for all purposes as of the Effective Time.

<u>**ASSIGNOR:**</u>

**WEATHERLY OIL & GAS, LLC**

By: _____
  Dan W. Johnson, CEO

<u>Witnesses</u>:

_____

_____

**ACKNOWLEDGEMENT**

STATE OF _____           §
COUNTY OF _____           §

This Assignment was acknowledged before me on this ___ day of August, 2019, by Dan W. Johnson, as CEO of **Weatherly Oil & Gas, LLC**, a Delaware limited liability company, on behalf of said company.

_____

Printed Name: _____

Notary Public for the State of _____
County of _____
Commission No: _____

 My commission expires: _____

STATE OF_____           §
COUNTY OF_____           §

On this ___ day of August, 2019, before me, the undersigned authority, personally appeared _____, to me known to be the person described in and who executed the foregoing instrument, in the capacity therein stated and acknowledged that he/she executed the same as his/her free act and deed.

_____

Printed Name: _____

Notary Public for the State of _____
County of _____
Commission No: _____

My commission expires: _____

STATE OF_____          §
COUNTY OF_____          §

On this ___ day of August, 2019, before me, the undersigned authority, personally appeared _____, to me known to be the person described in and who executed the foregoing instrument, in the capacity therein stated and acknowledged that he/she executed the same as his/her free act and deed.

_____

Printed Name: _____

Notary Public for the State of _____
County of _____
Commission No: _____

My commission expires: _____

54

**IN WITNESS WHEREOF**, this Assignment has been executed by each of the Parties as of the dates of the acknowledgments below but shall be effective for all purposes as of the Effective Time.

<u>**ASSIGNEES:**</u>

**Aethon United BR LP**

By:    Aethon United BR GP LLC,
        its general partner


By:_____
Name:_____
Title:_____

<u>Witnesses</u>:

_____


_____




**PEO Haynesville Holdco, LLC**


By:_____
Name:_____
Title:_____

<u>Witnesses</u>:

_____


_____

## ACKNOWLEDGEMENTS

STATE OF TEXAS                              §
COUNTY OF _____                        §

      This Assignment was acknowledged before me on this __ day of _____, 2019, by _____, as _____ of Aethon United BR GP LLC, as General Partner of **Aethon United BR LP**, a Delaware limited partnership, on behalf of said limited partnership.

_____

Printed Name: _____

Notary Public for the State of _____
County of _____
Commission No: _____

  My commission expires: _____

STATE OF_____                   §
COUNTY OF_____                    §

On this __ day of August, 2019, before me, the undersigned authority, personally appeared _____, to me known to be the person described in and who executed the foregoing instrument, in the capacity therein stated and acknowledged that he/she executed the same as his/her free act and deed.

_____

Printed Name: _____

Notary Public for the State of _____
County of _____
Commission No: _____

  My commission expires: _____

STATE OF_____                   §
COUNTY OF_____                    §

On this __ day of August, 2019, before me, the undersigned authority, personally appeared _____, to me known to be the person described in and who executed the foregoing instrument, in the capacity therein stated and acknowledged that he/she executed the same as his/her free act and deed.

_____

Printed Name: _____

Notary Public for the State of _____
County of _____
Commission No: _____

  My commission expires: _____

STATE OF TEXAS                              §
COUNTY OF _____                        §

       This Assignment was acknowledged before me on this __ day of _____, 2019, by
_____, as _____ of **PEO Haynesville
Holdco, LLC**, a Delaware limited liability company, on behalf of said company.

                                       _____

                                     Printed Name: _____

                                     Notary Public for the State of _____
                                     County of _____
                                     Commission No: _____

  My commission expires: _____

STATE OF_____                    §
COUNTY OF_____                    §

On this __ day of August, 2019, before me, the undersigned authority, personally appeared
_____, to me known to be the person described in and who executed the foregoing
instrument, in the capacity therein stated and acknowledged that he/she executed the same as his/her
free act and deed.

                                         _____

                                     Printed Name: _____

                                     Notary Public for the State of _____
                                     County of _____
                                     Commission No: _____

  My commission expires: _____

STATE OF_____                    §
COUNTY OF_____                    §

On this __ day of August, 2019, before me, the undersigned authority, personally appeared
_____, to me known to be the person described in and who executed the foregoing
instrument, in the capacity therein stated and acknowledged that he/she executed the same as his/her
free act and deed.

                                         _____

                                     Printed Name: _____

                                     Notary Public for the State of _____
                                     County of _____
                                     Commission No: _____

  My commission expires: _____

**Schedule 12(e)**

**Attached to and made part of that certain Purchase and Sale Agreement
by and between Weatherly Oil & Gas, LLC, as Seller, and
Aethon United BR LP and PEO Haynesville Holdco, LLC, as Buyers**

<u>Consents to Assign & Preferential Purchase Rights</u>

<u>Consents to Assign</u>:

| Lease Number | Lessor | Lessee | Lease Date |
|---|---|---|---|
| LA9260333-000 | CHESAPEAKE ROYALTY, L.L.C. | CHESAPEAKE LOUISIANA L P | 7/26/2008 |
| LA9260337-000 | CHESAPEAKE ROYALTY, L.L.C. | CHESAPEAKE LOUISIANA L P | 7/26/2008 |
| LA9260338-000 | CHESAPEAKE ROYALTY, L.L.C. | CHESAPEAKE LOUISIANA L P | 7/26/2008 |
| LA9260001-005 | KATHARINE P HAYNE LABOUISSE TR | SLIGO HOLDINGS LLC | 6/6/2002 |
| LA9260158-001 | MARTIN TIMBER COMPANY LLC | CLARK ENERGY COMPANY INC | 9/21/1993 |
| LA9260001-004 | PAMELA RUST LONG TRUST | SLIGO HOLDINGS LLC | 6/6/2002 |
| LA9260001-015 | SEYMOUR WEISS TR, ET AL | SLIGO HOLDINGS LLC | 6/6/2002 |
| LA9260189-000 | STATE OF LOUISIANA - 10415 | PZL PRODUCING CO. | 9/8/1982 |
| LA9260193-000 | STATE OF LOUISIANA - 249 | TRIANGLE DRILLING COMPANY | 4/15/1930 |

<u>Preferential Rights to Purchase</u>:

     None.

# **EXHIBIT 2**

## **CURE SCHEDULE**

**Sligo South - Amended Contract Cure Schedule**

| AGREEMENT NO. | AGREEMENT TYPE | FIRST PARTY | SECOND PARTY | DATE | PARISH | STATE | CURE AMOUNT AS OF 8/20/2019 |
|---|---|---|---|---|---|---|---|
| JOA 000-0002 | OPERATING AGREEMENT | CHESAPEAKE LOUISIANA L P | CHESAPEAKE INVESTMENTS | 1/15/2008 | BOSSIER | LA | $0.00 |
| JOA 926-0002 | OPERATING AGREEMENT | UNION PRODUCING COMPANY | ARKANSAS LOUISIANA GAS CO | 1/1/1957 | BOSSIER | LA | $0.00 |
| JOA 926-0004 | OPERATING AGREEMENT | UNION PRODUCING COMPANY | A J HODGES, ET AL | 6/2/1958 | BOSSIER | LA | $0.00 |
| | SALE AND PURCHASE OF NATURAL GAS | TEXLA ENERGY MANAGEMENT, INC | WEATHERLY OIL & GAS, LLC | 9/5/2006 | BOSSIER | LA | $0.00 |
| | SALE AND PURCHASE OF CRUDE OIL & CONDENSATE | GENESIS CRUDE OIL, L.P. | CHESAPEAKE OPERATING INC. | 8/25/2004 | BOSSIER | LA | $0.00 |
| Contract #21615 | COMPRESSOR AGREEMENTS | J-W POWER COMPANY | WEATHERLY OIL & GAS, LLC | 10/1/2017 | BOSSIER | LA | $0.00 |
| Contract #21839 | COMPRESSOR AGREEMENTS | J-W POWER COMPANY | WEATHERLY OIL & GAS, LLC | 1/26/2018 | BOSSIER | LA | 47,545.44 |
| Contract #22232 | COMPRESSOR AGREEMENTS | J-W POWER COMPANY | WEATHERLY OIL & GAS, LLC | | BOSSIER | LA | $   24,909.72 |